PENACHIO MALARA LLP
245 Main Street, Suite 450
White Plains, NY 10601
(914) 946-2889

Anne Penachio, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

In re                                                CHAPTER 11

    PEGGY NESTOR,                       CASE NO.: 23-10627-mew

          Debtor.

------------------------------------------X

## DECLARATION OF DEBTOR PURSUANT TO
## LOCAL BANKRUPTCY RULE 1007-2

PEGGY NESTOR, hereby declares and states the following under penalties of perjury:

1. I am an individual who has been engaged in various business activities involving production, managing and licensing deals for individuals and entities in the fashion and entertainment industries.

2. My current financial predicament emanates from highly contentious disputes in the probate proceeding in the probate estate pending of the fashion icon Oleg Cassini ("Oleg") in New York State Surrogate's Court, Nassau County. The circumstances that compelled me to file for bankruptcy relief are well documented and may be presented to the Court at a later date. This pleading is meant to provide the Court with an overview.

3. I invoked the protections of this Court on an emergency basis to stay

1

the foreclosure of my home for the past 39 years - a townhouse at 15 East 63rd St., New York, NY (the "Townhouse"). I have owned the Townhouse jointly with my sister, Marianne Nestor ("Marianne") since February 23, 1984. Marianne, who is Oleg's widow, never resided in the Townhouse and did not pay the mortgage and related expenses. In 2016, Marianne signed her interest in the Townhouse over to me. I understand that the deed may not have been recorded.

4. The lower levels of the Townhouse were used to operate Marianne's businesses, Oleg Cassini, Inc. ("OCI") and Cassini Parfums Ltd. ("CPL") (together, the "Cassini Businesses").

5. The Townhouse is encumbered by 3 mortgages. The senior mortgage is held by Emigrant Mortgage with an outstanding balance of approximately $3.5 million. I am current with payments. Lynx Asset Management ("Lynx") holds a junior mortgage with a balance due of approximately $17 million. The original amount borrowed (approximately $9.5 million) blossomed to the current amount allegedly due. The proceeds of the Lynx loan were used primarily to fund business operations.

6. Marianne served as the director and officer of the Cassini Businesses which we operated together pursuant to a management agreement. She was 50% shareholder of OCI and the sole shareholder of CPL.

7. After Oleg's death, litigation ensued over his estate and the Cassini Business even though Marianne and I operated them for decades under a management agreement. Marianne and I were effectively prevented from operating the Cassini Businesses after the appointment of a temporary receiver (the "Receiver") in the

probate proceeding of Oleg's estate (the "Cassini Estate"). The Cassini Businesses suffered greatly as a result of the receivership which commenced on July 1, 2016. Although the order directing the receivership was vacated by the Appellate Division Second Department on February 13, 2020, the Surrogate of Nassau re-appointed the Receiver. As a result of my loss of revenue generated by the Cassini Companies, I was unable to pay Lynx.

8. Lynx commenced a foreclosure proceeding. It holds a judgment of foreclosure and sale in the amount of approximately $19 million. A sale is scheduled for April 26, 2023.

9. Prime Loans holds a junior lien with a balance in the range of approximately $1 million.

10. I have received various commitment letters to re-finance the mortgage encumbering the Townhouse. However, my efforts have been unsuccessful due primarily to an ex parte order of attachment against Marianne entered by the Surrogate (the "Attachment") only days of after the Appellate Division vacated the prior order of attachment. It is my position that the Attachment is improper and of tenuous, if any, legal effect. It was effectively rendered null and void by the Appellate Division 2nd Department. Moreover, I have been advised that the Attachment may fail to comply with various provisions of NY law. Shockingly, no bond appears to have been posted.

11. The Cassini Estate and the Receiver owe me and/or Gemeaux considerable sums. I am hopeful that I can recover what is due.

12. My goal in this case is to avoid seizure of the Townhouse at a

foreclosure sale and to satisfy the obligation to Lynx either through a re-financing or, if that cannot reasonably be achieved, through a sale of the property through an experienced broker.

13. I wish to collect the funds due to me from the Cassini Businesses that have been a success due, in large part, to my skills, ingenuity, expertise, creativity and hard work. I wish to pay my legitimate creditors and emerge from Chapter 11 s soon as practical.

14. A list of my secured creditors is annexed to my bankruptcy petition and include Emigrant Mortgage Co., Lynx and Prime Plus.

15. My assets consist primarily of the Townhouse, my interest in Gemeaux and my claims against the Cassini Businesses and others.

16. None of my property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity. However, as noted, I am entitled to funds collected by the Cassini Businesses, the Receiver and/or others.

17 My income is presently limited. I rely on family and friends for assistance. However, I am hopeful that my income will increase after I commence operating Gemeaux and collect what is due to me from the Receiver, the Cassini Estate and/or others.

18. My business books and records are maintained in my home, various attorneys offices and with the Receiver.

19. I am not a party to any litigation that I am aware of other than the foreclosure action commenced by Lynx.

Dated: White Plains, NY
April 24, 2023

_Peggy Nestor_
Peggy Nestor