UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

PEGGY NESTOR,

                                     Debtor.

Chapter 11
Case No. 23-10627-mew

------------------------------------------------------------------X

ROSALIA BAIAMONTE, ESQ., as the
court-appointed receiver for Oleg Cassini, Inc.
and Cassini Parfums, Ltd., and THE PUBLIC
ADMINISTRATOR OF NASSAU COUNTY, as
Administrator CTA of the Estate of Oleg Cassini,

                                  Plaintiffs,

           -against-

PEGGY NESTOR,

                                Defendant.

Adv. Pro. No.: 23-_____-mew

------------------------------------------------------------------x

## COMPLAINT

Plaintiffs ROSALIA BAIAMONTE, ESQ., as the court-appointed receiver (the "Receiver") for Oleg Cassini, Inc. ("OCI") and Cassini Parfums, Ltd. ("CPL") (collectively, the "Companies"), and THE PUBLIC ADMINISTRATOR OF NASSAU COUNTY (the "Public Administrator"), as Administrator CTA of the Estate of Oleg Cassini, by their attorneys, complaining of defendant PEGGY NESTOR ("Peggy" or the "Debtor"), allege as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction of this proceeding pursuant to Sections 157 and 1334 of Title 28 of the United States Code, 28 U.S.C. § 1, *et seq.* (the "Judiciary Code").

2. Venue is proper in this Court pursuant to § 1409(a) of the Judiciary Code.

3. This is a core proceeding pursuant to § 157(b)(2)(I) of the Judiciary Code.

4. Plaintiffs are creditors of the Debtor.

5. Relief is sought herein pursuant to § 523 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code")

## THE PARTIES

6. Plaintiff Rosalia Baiamonte, Esq., is the receiver appointed by the Nassau County Surrogate's Court in the Estate of Oleg Cassini (the "Cassini Estate") to manage and operate the Companies. The Receiver's offices are located at 666 Old Country Road, Garden City, New York 11530.

7. Plaintiff the Public Administrator is the administrator CTA[1] of the Cassini Estate, having been appointed as such by the Nassau County Surrogate's Court on November 3, 2014. The Public Administrator's offices are located at 240 Old Country Road, Mineola, New York 11501.

8. Upon information and belief, Defendant Peggy Nestor is an individual residing in New York City and is a citizen of the State of New York.

## BACKGROUND

**The Cassini Estate Proceedings Prior to the Receiver's Appointment**

9. Oleg Cassini was a famous fashion designer who died in 2006, and Marianne Nestor Cassini ("Marianne") is his surviving spouse. The Debtor is Marianne's sister, and together, they own Gemeaux, Ltd. ("Gemeaux").

---

[1] An "Administrator CTA" is appointed when the will's designated executor cannot act due to death, incapacity or otherwise, or if the executor resigns or her letters testamentary are revoked by the Surrogate's Court. The abbreviation "CTA" stands for "cum testamento annexo," which means "with the will annexed."

2

10. Following Mr. Cassini's death in 2006, Marianne was appointed as executor of the Cassini Estate and, together with her sister Peggy Nestor (the Debtor and Defendant herein), a nominated successor executor, they managed and operated the Companies.

11. By Decision and Order dated March 13, 2014, and a Decree dated November 3, 2014, as a result of Marianne's dilatory conduct and accusations against the Debtor, then-Surrogate McCarty removed Marianne as executor, declined to appoint the Debtor as successor executor, appointed the Public Administrator to administer the Cassini Estate, and severely limited the use of OCI's and CPL's funds by Marianne and the Debtor. Among other things, Surrogate McCarty found that Marianne had "filed numerous contradictory statements with the court regarding the ownership of estate assets," claimed to have no estate records, "that they were lost in a fire and that she had not made any effort to recover the records," established a trust "in contravention to the decedent's wishes and without court permission," and "paid herself the balance of [a] supplemental needs trust . . . by claiming that the funds were her own and not the decedent's."

12. By Decision dated June 23, 2015, and an Order dated August 3, 2015 (the "August 3 Order"), and upon a motion to appoint a temporary receiver, Surrogate McCarty removed Marianne and the Debtor from operating OCI and CPL entirely and appointed Plaintiff the Public Administrator to run the day-to-day business operations of the Companies. Surrogate McCarty found that Marianne and the Debtor had engaged in self-dealing in "administering" OCI and CPL, which included usurping corporate opportunities and transferring corporate assets to their company, Gemeaux.

13. More specifically, in the August 3 Order, Surrogate McCarty ordered that "**any authority or power of Marianne Nestor Cassini and Peggy Nestor to perform any acts as**

3

**managers, directors and/or officers of Oleg Cassini, Inc. and Cassini Parfums, Ltd. is hereby suspended, and they shall henceforth during such suspension have no powers to bind the corporations in any way or to sign any corporate checks or documents**." (emphasis added).

14. Accordingly, as of August 3, 2015, any amounts taken from the Companies by the Debtor were patently improper unless expressly authorized by the Public Administrator – which authorization was never given.

15. By Decision dated October 9, 2015 and an Order dated November 5, 2015, Surrogate McCarty determined that OCI and CPL (among other property) did not belong to Marianne personally but were instead "assets of the Decedent's Estate." Marianne, who had repeatedly claimed (and continues to claim in the Cassini Estate proceedings) that she personally owns the Companies, was directed "to turn over all stock certificates, financial and banking records for [the Companies] to the Public Administrator, as Administrator c.t.a. of the Decedent's Estate."

16. Surrogate McCarty's November 5, 2015 order, in which he determined the Companies were assets of the Cassini Estate, was affirmed by the Appellate Division, Second Department. *See Matter of Cassini*, 180 A.D.3d 775, 778 (2d Dep't 2020).

**The Receiver's Appointment**

17. In January of 2016, counsel for John J. Barnosky, Esq. and Alexandre Cassini Belmont, as Executors of the Estate of Christina Cassini and as Successor Administrators of the Estate of Daria Cassini (the "Objectants"),[2] made a motion in the Cassini Estate proceedings for the appointment of a receiver for OCI and CPL. As noted above, Surrogate McCarty had already

---

[2] Objectants are other interested parties in Mr. Cassini's Estate and entitled to receive at least 50% of the Cassini Estate.

4

removed Marianne and the Debtor from operating the Companies and appointed the Public Administrator to handle the day-to-day business operations in 2015.

18. By Decision dated June 29, 2016, Surrogate Reilly granted the Objectants' motion for the appointment of a receiver, finding that Marianne "has taken actions which put the value of OCI and CPL at risk."

19. By Order dated July 1, 2016, Plaintiff Rosalia Baiamonte, Esq. was appointed as the receiver of the Companies.[3]

**The Probate Turnover Proceeding**

20. Notwithstanding the Debtor's 2015 removal from the Companies and the Surrogate Court's 2016 appointment of a Receiver, the Debtor (as well as Marianne and Gemeaux) continued to secretly run the Companies and withdrew millions of dollars from the Companies' bank accounts without any authority to do so. (This conduct ultimately led to a finding of contempt as against Marianne and her subsequent arrest for refusing to comply with court orders or purge her contempt).

21. After the Receiver finally gained control of the Companies in 2018, she learned of these illicit transfers.

22. In August 2018, the Receiver, together with the Public Administrator, commenced the Probate Turnover Proceeding in the Surrogate's Court against the Debtor, Marianne, and Gemeaux.

---

[3] The Appellate Division, Second Department subsequently vacated any orders, decisions, and judgments entered "between March 14, 2016 and July 25, 2016" on procedural grounds. *See Matter of Cassini*, 182 A.D.3d 13, 57 (2d Dep't 2020). This included the Receiver's July 2016 appointment, but the Second Department concluded that "based on the evidentiary showing made on the cross motion by the objectants [*i.e.*, the bad acts engaged in by Marianne and the Debtor], the receiver should remain in place as a temporary receiver pending a new determination" of Objectants' motion. *Id.* Upon remand and a renewed motion by Objectants, Ms. Baiamonte was (again) appointed as the Receiver on October 27, 2020.

23.     As set forth in Plaintiffs' Verified Amended Petition (filed in the Surrogate's Court proceedings) dated February 8, 2019, Plaintiffs are seeking to recover the funds and assets of OCI and CPL improperly converted by the Debtor, Marianne, and Gemeaux.  This includes substantial amounts that were taken *after* Surrogate McCarty removed the Debtor and Marianne from operating the Companies in 2015 and *after* Surrogate Reilly appointed the Receiver to run the Companies in 2016 and forms the basis of the proofs of claim filed by Plaintiffs in this bankruptcy proceeding.

24.     Although there has not yet been any discovery in the Probate Turnover Proceeding, the Companies' QuickBooks records, which are currently maintained by the Receiver, reflect that from March 17, 2006 (the date of Mr. Cassini's death) to December 31, 2019, the Debtor received checks from OCI totaling $2,180,796.77, while at the same time, she deposited only $414,016.65 in OCI's bank accounts.  **Thus, on a net basis, the Debtor withdrew $1,766,780.12 from OCI, including hundreds of thousands of dollars taken in 2016, 2017, and 2018, *after* the Debtor had been removed from operating the Companies and *after* the Receiver was appointed**.

25.     The Companies' QuickBooks records also reflect that during the same time period, Gemeaux received checks from OCI totaling $9,552,433.29, while at the same time, it deposited only $1,657,583.44 in OCI's bank accounts.  **Thus, on a net basis, Gemeaux (the Debtor's company) withdrew $7,894,849.85 from OCI, including several million dollars taken in 2016, 2017, and 2018.**  To the extent that discovery reveals these amounts were then paid to the Debtor (a 50% owner of Gemeaux), these are claims against the Debtor.

26.     The Debtor and Gemeaux have claimed that they were entitled to certain amounts under purported agreements between Gemeaux and OCI entered into nearly 40 years ago, **but**

6

**the validity of those agreements is at issue in the Probate Turnover Proceeding.** In other words, if those agreements are found to be invalid, then the Debtor had no basis to take any amounts from the Companies, including for the period of time *before* she was removed from the Companies in 2015 and the Receiver was appointed in 2016.

27. Of course, regardless of whether these agreements are valid (which Plaintiffs contest), there can be no dispute that each and every payment to the Debtor and Gemeaux after the Debtor and Marianne were removed from operating the Companies in 2015 were patently improper.

## AS AND FOR A FIRST CLAIM FOR RELIEF
## AGAINST DEFENDANT UNDER 11 U.S.C. § 523(a)(2)(A)

28. Plaintiffs repeat and reallege each and every allegation in the paragraphs above as if such allegations were fully set forth herein.

29. Following entry of the August 3 Order, the Debtor had no authority to withdraw or receive any amounts from the Companies absent the express authorization of the Public Administrator, and after her 2016 appointment, the Receiver.

30. Neither the Public Administrator nor the Receiver ever authorized the Debtor, Marianne, or Gemeaux to be paid any amounts from the Companies after August 3, 2015.

31. Despite having no authority to withdraw or receive any amounts from the Companies after August 3, 2015, the Debtor secretly siphoned off millions of dollars from the Companies' bank accounts for herself and her company, Gemeaux.

32. The Debtor attempted to conceal her wrongdoing by refusing to cooperate with the Receiver and turn over the Companies' books and records to avoid discovery of her wrongdoing.

33. Even prior to the Debtor's removal from the Companies and the appointment of the Receiver, the Debtor had no basis to withdraw millions of dollars from the Companies for herself and her company, Gemeaux.

34. The Debtor has claimed that she was entitled to these amounts under agreements purportedly entered into more than 40 years ago, the validity of which are at issue in the Probate Turnover Proceeding.

35. Should the Surrogate's Court determine the agreements are invalid, then the Debtor had no basis to take any amounts from the Companies, not just the funds taken after she was removed from the Companies in 2015 and the Receiver was appointed in 2016.

36. This conduct by the Debtor constitutes the taking of money or property by means of false pretenses, false representations, and fraud.

37. As a result of the foregoing, any debt owed to Plaintiffs as a result of the Probate Turnover Proceeding is not dischargeable under 11 U.S.C. § 523(a)(2)(A).

**AS AND FOR A SECOND CLAIM FOR RELIEF
AGAINST DEFENDANT UNDER 11 U.S.C. § 523(a)(4)**

38. Plaintiffs repeat and reallege each and every allegation in the paragraphs above as if such allegations were fully set forth herein.

39. Following entry of the August 3 Order, the Debtor had no authority to withdraw or receive any amounts from the Companies absent the express authorization of the Public Administrator, and after her 2016 appointment, the Receiver.

40. Neither the Public Administrator nor the Receiver ever authorized the Debtor, Marianne, or Gemeaux to be paid any amounts from the Companies after August 3, 2015.

41. Despite having no authority to withdraw or receive any amounts from the Companies after August 3, 2015, the Debtor secretly siphoned off millions of dollars from the Companies' bank accounts for herself and her company, Gemeaux.

42. The Debtor's withdrawal of these amounts is not just contrary to court orders – it is outright theft.

43. Even prior to the Debtor's removal from the Companies and the appointment of the Receiver, the Debtor had no basis to withdraw millions of dollars from the Companies for herself and her company, Gemeaux.

44. The Debtor has claimed that she was entitled to these amounts under agreements purportedly entered into more than 40 years ago, the validity of which are at issue in the Probate Turnover Proceeding.

45. Should the Surrogate's Court determine the agreements are invalid, then the Debtor had no basis to take any amounts from the Companies, not just the funds taken after she was removed from the Companies in 2015 and the Receiver was appointed in 2016.

46. This conduct by the Debtor constitutes fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

47. As a result of the foregoing any debt owed to Plaintiffs as a result of the Probate Turnover Proceeding is not dischargeable under 11 U.S.C. § 523(a)(4).

### AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST DEFENDANT UNDER 11 U.S.C. § 523(a)(6)

48. Plaintiffs repeat and reallege each and every allegation in the paragraphs above as if such allegations were fully set forth herein.

9

49. The Debtor's fraudulent, illegal, and wrongful actions in diverting millions of dollars from the Companies was willful and malicious, causing financial injury to the Estate, whose assets Plaintiffs were appointed to marshal, preserve, and protect.

50. As a result of the foregoing any debt owed to Plaintiffs as a result of the Probate Turnover Proceeding is not dischargeable under 11 U.S.C. § 523(a)(6).

**WHEREFORE**, Plaintiffs respectfully request that their objection to the discharge of the Debtor's debts to Plaintiff be granted, that the Debtor's indebtedness to Plaintiffs be declared non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6), and that this Court grant such and further relief as the Court deems appropriate.

| | |
|---|---|
| Dated: Uniondale, New York<br>July 31, 2023 | Dated: Garden City South, New York<br>July 31, 2023 |
| WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN, LLP | MAHON, MAHON KERINS & O'BRIEN, LLC |
| By: /s/ Jeffrey A. Miller<br>Jeffrey A. Miller<br>1201 RXR Plaza<br>Uniondale, New York 11556<br>*Attorneys for Rosalia Baiamonte, Esq., as the court-appointed Receiver* | By: /s/ Kenneth P. Mahon<br>Kenneth P. Mahon<br>254 Nassau Blvd.<br>Garden City South, New York 11530<br>*Attorneys for the Public Administrator of Nassau County* |

02840581