

**PATRICK COLLINS**

Direct Dial: 516.227.0649                                                      400 RXR Plaza
Direct Fax: 516.336.2232                                                       Uniondale, NY 11556
pcollins@farrellfritz.com                                                      www.farrellfritz.com

Our File No.
25959-100

August 1, 2023

**BY ECF**
Hon. Michael E. Wiles
United States Bankruptcy Court
 Southern District of New York
One Bowling Green
New York, New York 10004-1408

Re:     **In re Peggy Nestor; Ch. 11 Case No. 23-10627**

Dear Judge Wiles:

Enclosed is a document entitled "Joint Statement Concerning Status of Oleg Cassini Probate
Proceeding" and which has been signed by counsel for (i) my clients, John J. Barnosky, Esq.
and Alexandre Cassini  Belmont, as Executors of the Estate of Christine Cassini and Successor
Administrators of the Estate of Daria Cassini, (ii) the Public Administrator of Nassau County and
(iii) Rosalia Baiamonte, the court-appointed receiver for Oleg Cassini, Inc. and Cassini Parfums,
Inc.

The document reflects contributions and edits from Debtor's counsel, Anne Penachio, but has
not yet been signed by her.  Ms. Penachio indicated earlier today that the Debtor was reviewing
the latest draft of the Joint Statement, which I had circulated last night (Monday), but that it was
unlikely that the document would be fully reviewed by the Debtor today (Tuesday).

Respectfully submitted,

Patrick Collins

Enclosure (Joint Statement signed by three of four parties)

cc:     Anne Penachio
        Jeffrey A. Miller
        William C. Heuer
        Kenneth P. Mahon
        Heather Callaghan

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

In re:                                              CHAPTER 11

PEGGY NESTOR,                                       CASE NO.: 23-10627-mew

                          Debtor.

------------------------------------------X

## JOINT STATEMENT CONCERNING STATUS
## OF OLEG CASSINI PROBATE PROCEEDING

This Joint Statement is submitted by the undersigned parties at the request of the Court.

## THE PARTIES

1.    **PEGGY NESTOR** (the "Debtor) represented by Anne Penachio, Penachio Malara LLP.

2.    **ROSALIA BAIAMONTE, ESQ.**, the receiver appointed by the Surrogate of Nassau County (the "Receiver") over the businesses of the late Oleg Cassini.   She is represented by   Jeffrey A. Miller, Esq., Westerman Ball Ederer Miller Zucker & Sharfstein LLP.

3.    **PUBLIC ADMINISTRATOR OF NASSAU COUNTY** (the "Public Administrator") represented by Kenneth P. Mahon, Esq., Mahon Mahon Kerins & O'Brien LLC.

4.    **JOHN J. BARNOSKY, ESQ.** ("Barnosky") and **ALEXANDRE CASSINI BELMONT** ("Cassini Belmont"), as Executors of the Estate of Christina Cassini ("Christina") and as Successor Administrators of the Estate of Daria Cassini ("Daria"), represented by Patrick Collins of Farrell Fritz, P.C. in the bankruptcy case and by Robert M. Harper of Farrell Fritz, P.C. in the probate proceeding.

1

## BACKGROUND

5.  The Debtor is the sister of **MARIANNE NESTOR** ("Marianne").

6.  Marianne is the widow of **OLEG CASSINI** ("Oleg") who died on March 17, 2006.

7.  Oleg was a prominent fashion designer.

8.  Oleg and Marianne were married for approximately 35 years.

9.  Oleg was divorced from the late actress Gene Tierney.

7.  Oleg has been determined to be the father of two children with Ms. Tierney, Daria and Christina.

8.  Daria, who was disabled, is deceased.  She had no children.

9.  Christina is deceased.  She is survived by Cassini Belmont and three other children.

10.  Barnosky and Cassini Belmont are the fiduciaries of Daria and Christina's estates.

## THE PROBATE PROCEEDING

11.  Following Oleg's death, his last will and testament was offered probate by Marianne in New York State Surrogate's Court, Nassau County.   It was assigned File Number 343100 by the Surrogate's Court (the "Probate Proceeding").

12.  Under the Will, Marianne was the primary beneficiary, inheriting the vast bulk of Oleg's estate (the "Probate Estate").

13.  Christina and Daria interposed objections to various matters in the Probate Proceeding.   Those acting on their behalf asserted that they were each entitled to one-fourth of the Decedent's net Probate Estate.   They also asserted that certain assets were properly included in Oleg's Probate Estate.

14.  Ultimately, the Surrogate's Court determined, and the Appellate Division affirmed, that (i) each of Christina and Daria had a valid claim to one-fourth of the Decedent's net Probate

2

Estate, and (ii) Oleg Cassini Inc. ("OCI") and Cassini Parfums Ltd. ("CPL") (collectively, the

"Companies"), among other assets, belonged to the Probate Estate, not Marianne personally.

*Matter of Cassini*, 95 A.D.3d 1311 (2d Dep't 2012); *Matter of Cassini*, 180 A.D.3d 775 (2d Dep't

2020).

15.     While these rulings were affirmed on appeal, they continued to be challenged by

Marianne.   Barnosky, Cassini Belmont, the Public Administrator, and the Receiver maintain that

these decisions are final and no longer subject to judicial challenge.

16.     Through a series of decisions, orders and decrees entered between 2014 and 2016,

the Surrogate's Court suspended Marianne as Executor of the Probate Estate pending a hearing,

declined to appoint the Debtor as successor executor, removed Marianne and the Debtor from

operating the Companies, and appointed the Public Administrator to run the day to day operations

of the Companies.

17.     Ultimately, and following Marianne's resignation as Executor in advance of a

hearing, the Surrogate's Court appointed the Public Administrator to serve as Administrator c.t.a. of

the Probate Estate.

18.     In July 2016, the Surrogate's Court appointed the Receiver to manage and operate

the Companies for the benefit of the Probate Estate.   The Companies' assets included, among other

assets, the Oleg Cassini brand and trademarks.   They were engaged primarily in the business of

licensing the Oleg Cassini name to its customers and clients.

19.     Although she was appointed in July 2016, it was not until 2018 that the Receiver

gained access to the Companies' offices and other properties and the documents that she deemed

necessary to fulfill her duties, including the Companies' books and records which included the

Companies' accounting records, customer lists, and customer contact information.

20.     The Receiver has since sold the majority of the Companies' assets pursuant to

3

various decisions and orders entered by the Surrogate's Court.

## THE TURNOVER PROCEEDING

21.     After gaining control of the Companies and access to the books and records, the

Receiver, together with the Public Administrator, commenced a turnover proceeding in the

Surrogate's Court pursuant to SCPA § 2103 (the "Turnover Proceeding," File No. 343100/AC).

22.     In the Turnover Proceeding, the Receiver and the Public Administrator allege that

Marianne and the Debtor, as well as their wholly owned company, Gemeaux Ltd. ("Gemeaux"),

had taken substantial sums from the Companies, including after they were removed from operating

the Companies (in 2015) and after the appointment of the Receiver (in 2016).

23.     In the Turnover Proceeding, the Receiver and the Public Administrator seek, among

other things, a turnover of the assets they allege were improperly diverted from the Probate Estate

(i.e., OCI and CPL).

24.     The Debtor, Marianne and Gemeaux have moved to dismiss the Turnover

Proceeding, which motions remain *sub judice*.   This Court vacated the automatic stay to, *inter alia*,

permit the parties to obtain a ruling from the Surrogate's Court on the motions to dismiss (Doc No.

45).  The parties are now awaiting a ruling from the Surrogate's Court on the pending motions to

dismiss.

## THE 2020 ATTACHMENT ORDER

25.     In June 2020, Objectants, the Public Administrator, and the Receiver obtained an ex

parte Order of Attachment from the Surrogate's Court (the "2020 Attachment Order").   As it

relates to the Public Administrator and the Receiver, the 2020 Attachment Order was sought to

secure their claims in the Turnover Proceeding. Specifically, in the 2020 Attachment Order, the

Surrogate's Court granted attachment relief in the amount of $2,594,813.42 concerning the

Debtor's interests in the 15 East 63rd Street (the "63rd Street Property"), as well as her

4

"[o]wnership or membership interest in shares of a co-operative apartment located at 965 Fifth

Avenue, New York, New York 10075." (the "Fifth Avenue Coop").  Pursuant to a decision and

order dated December 7, 2021, the Surrogate's Court confirmed the 2020 Attachment Order.  No

appeal was taken from the Order of Attachment.

26.     The Debtor has indicated in this case that she has no interest in the Fifth Avenue

Coop.  In fact, the Debtor asserts that she has never held an interest in the Fifth Avenue Coop.

27.  The Receiver and the Public Administrator assert that the 2020 Attachment Order gives

rise to a secured claim in this bankruptcy case, for which the collateral is the Debtor's interest in the

63rd Street Property and have filed proofs of claim consistent with the foregoing.

28.     In this proceeding, the Debtor has indicated that she disputes the validity and extent

of the 2020 Attachment Order on various theories including under NY CPLR.  The Receiver and

the Public Administrator maintain that the 2020 Attachment Order is final and no longer subject to

judicial challenge, subject to determination of the claims secured by the Order of Attachment.

29.     In addition to attaching assets regarding claims against the Debtor, the 2020

Attachment Order grants relief against Marianne and Gemeaux in the amount of (i) approximately

$11,000,000 concerning Gemeaux's interests in the 63rd Street Property and any proceeds derived

from financing Gemeaux obtained in connection with that property, and (ii) approximately

$57,000,000.00 concerning Marianne's interests in the 63rd Street Property, as well as Marianne's

"[o]wnership or membership in shares of a co-operative apartment located at 965 Fifth Avenue,

Unit 9A, New York, New York 10075".

## OTHER PENDING MATTERS BEFORE THE SURROGATE'S COURT

30.     According to the Receiver, other than pursuit of the Turnover Proceeding, her role is

nearly concluded.

31.     Since her appointment, the Receiver has concluded (i) a court-ordered sale of the

5

Companies' real property located in Oyster Bay Cove, (ii) a court-ordered auction of various items
of personal property belong to the Companies, and (iii) a court-ordered sale of the Companies'
intellectual property.

32.     The Receiver has filed an interim accounting for the period July 1, 2016 through
April 30, 2021 (File No. 343100/AJ), which reflected approximately $16 million collected/received
by the Companies.   The approval of the accounting is pending before the Surrogate's Court.   The
Debtor is not a party to that proceeding.

33.     The Receiver will ultimately need to file a final accounting for the period May 1,
2021 through the end of the Receivership.   Such accounting which will include any additional
amounts received from that date (presently estimated to be in excess of $7.4 million plus any
amounts recovered in the Turnover Proceeding).

34.     As of June 30, 2023, the Receiver had $4,176,377.75 in cash on hand (the Receiver
previously remitted $10,419,802.13 to the Public Administrator pursuant to court order).

### OTHER MATTERS IN THE PROBATE PROCEEDING

35.     The other pending proceedings before the Surrogate's Court are as follows:

A.      343100/G – This is an accounting proceeding concerning the Decedent's Probate
Estate during the time that Marianne served as executor.   A trial was held in 2016, after which a
judgment in excess of $50 million was entered against Marianne in favor of Barnosky, Cassini
Belmont and the PA.   By Decision and Order, dated February 13, 2020, the Second Department
directed that a new trial occur.   A new trial was held on January 18 and 19, 2023, and all post-trial
briefing was submitted to the Surrogate's Court as of April 11, 2023.   The Debtor is not a party to
this proceeding.   The 2020 Attachment Order secures the claims asserted in this proceeding as
against Marianne's interest in the 63rd Street Property.

B.      343100/L- This is an accounting proceeding concerning the Daria Cassini

6

Supplemental Needs Trust commenced by Marianne and Richard Rowe ("Rowe"), a co-trustee of a trust established for the benefit of Daria. The proceeding is currently being held in abeyance until after the resolution of the Public Administrator's final accounting. The Debtor is not a party to this proceeding.

      C.     343100/P –This proceeding was commenced by petitioner Rowe to determine the validity of a claim he filed against the Decedent's Probate Estate, among other parties, pursuant to SCPA § 1809. This proceeding is also being held in abeyance until after the resolution of the Public Administrator's final accounting. The Debtor is not a party to this proceeding.

      D.     343100/AA – This is a plenary action filed by Marianne against William Doyle Galleries, Inc. and Irwin Karabell alleging conversion. The action was initially filed in New York County Civil Court and transferred to the Surrogate's Court on June 17, 2018. The Debtor is not a party to this proceeding.

      E.     343100/AB – This is a turnover proceeding commenced by Objectants and the Public Administrator against Marianne, 965 Fifth Avenue Owner's, Inc., and Brown Harris Stevens Residential Management, LLC regarding Marianne's interest in the cooperative shares known as 965 Fifth Avenue, Unit 9A, New York, New York 10075. The Debtor is not a party to this proceeding.

      F.     343100/AI – This is a proceeding commenced by Objectants to compel the payment, delivery or transfer to the Sherriff of the City of New York by Marianne and/or Prime Plus, LLC of the shares of the cooperative apartment located at 965 Fifth Avenue, Unit 9A, New York, New York 10075, or alternatively cancelling the shares of the cooperative apartment and directing 965 Fifth Avenue Owner's Inc. and/or Brown Harris Stevens Residential Management, LLC to cancel the shares that issued to Marianne and to issue replacement shares to the Sherriff of the City of New York. The Debtor is not a party to this proceeding.

7

G.    Although not presently before the Surrogate's Court, the Public Administrator will ultimately need to judicially settle his account as Administrator c.t.a. of the Probate Estate. According to the Public Administrator, the Debtor's Notice of Claim against the Probate Estate, filed in November 2015, will be addressed at that time.   To date, the Public Administrator has not accepted the Debtor's Notice of Claim and it is therefore deemed rejected.   The Debtor has indicated that she may assert an offset against any amounts for which she is found to be liable in the Turnover Proceeding.   The Debtor claims that she is due _____ from the Probate Estate and the Receiver, and that Gemeaux is due _____.   Gemeaux has not filed a Notice of Claim against the Probate Estate.

## SUMMARY OF ASSETS IN THE PROBATE ESTATE

36.    The assets of the Probate Estate consist primarily of amounts collected/received by the Receiver through the sale of the Companies' property, less any disbursements, as well as any additional amounts she recovers through the Turnover Proceeding and any amounts recovered in the Accounting Proceeding.   All disbursements paid by the Receiver ultimately require approval by the Surrogate's Court, and in fact, many disbursements have already been approved by the Surrogate's Court.   For example, by decision and order dated December 12, 2019, the Surrogate's Court approved the Receiver's interim commissions and payment of her attorneys' fees.

37.    Pursuant to a decision and order dated September 20, 2022, the Surrogate's Court directed the Receiver to remit all funds on hand, less a reserve, to the Public Administrator.   On September 23, 2022, the Receiver remitted $10,419,802.13 to the Public Administrator pursuant to the Court's order.

38.    The Public Administrator has since paid various expenses leaving $6,930,408.71 on hand as of June 30, 2023.   The Receiver has $4,176,377.75 on hand as of the same date. Ultimately, any distributions made by the Public Administrator from the Estate will be subject to

8

payment of outstanding administration expenses.

39.    In sum $11,106,786.50 remains on hand as of June 30, 2023.

40.    Thus far, beneficiaries Belmont Cassini and Barnosky who collectively are entitled to ½ of the Net Probate Estate as fiduciaries have received no distributions.   Marianne has not received any distributions form the Net Probate Estate.

42.    In addition to Peggy's claim, there are number of other outstanding claims against the Probate Estate that will need to be addressed by the PA before any non-administration claims are paid or distributions made to beneficiaries.

PENACHIO MALARA LLP

By:_____

Anne Penachio
245 Main Street – Suite 450
White Plains, New York 10601
Tel: (914)946-2889

*Counsel for the Debtor*

FARRELL FRITZ, P.C.

By:_____

Patrick Collins
Robert M. Harper
400 RXR Plaza
Uniondale, New York 11556
Tel: (516) 227-0700

*Counsel to John J. Barnosky, Esq. and*
*Alexandre Cassini Belmont*

9

MAHON, MAHON, KERINS & O'BRIEN, LLC

By:_____

Kenneth P. Mahon
Heather Callaghan
254 Nassau Boulevard
Garden City South, New York 11530
(516) 538-1111

*Counsel to the Public Administrator of Nassau
County*

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN

By:_____ /wch

Jeffrey A. Miller
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200

*Attorney for the Receiver*

10

MAHON, MAHON, KERINS & O'BRIEN, LLC

By: _____
Kenneth P. Mahon
Heather Callaghan
254 Nassau Boulevard
Garden City South, New York 11530
(516) 538-1111

*Counsel to the Public Administrator of Nassau County*

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN

By:_____
Jeffrey A. Miller
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200

*Attorney for the Receiver*

10