TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Brian F. Shaughnessy
Martha E. Martir
John C. Gallego

*Proposed Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity as*
*the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
|   |   |
|---|---|
| In re: | Chapter 11 |
| PEGGY NESTOR, | Case No. 23-10627 (MEW) |
| Debtor. | |

------------------------------------------------------------------- x
|   |   |
|---|---|
| ALBERT TOGUT, Not Individually But Solely in His Capacity as Chapter 11 Trustee, | |
| Plaintiff, | Adv. Pro. No. 24-_____ (MEW) |
| v. | |
| PEGGY NESTOR and MARIANNE NESTOR CASSINI, | |
| Defendants. | |

------------------------------------------------------------------- x

**COMPLAINT**

Albert Togut, not individually but solely in his capacity as Chapter 11 trustee ("Plaintiff" or the "Trustee") of the estate (the "Estate") of Peggy Nestor (the "Debtor") in the above-captioned case (the "Chapter 11 Case"), by and through his attorneys, Togut, Segal & Segal LLP, hereby makes this complaint (the "Complaint") against the Debtor and Marianne Nestor Cassini ("Marianne" and together with the Debtor, the "Defendants") for an order directing Defendants, jointly and severally, to

provide Plaintiff and his representatives with immediate access to, and possession of, the Debtor's townhouse located at 15 East 63rd Street, New York, New York 10065 (the "Townhouse"), pursuant to sections 521 and 542 of title 11 of the United States Code (the "Bankruptcy Code"), and alleges upon information and belief:

## SUMMARY OF THE ACTION

1. The Debtor is the sole owner of the Townhouse.

2. Plaintiff has been advised that the Debtor resides in a residence in Connecticut that she purchased prior to the Petition Date (defined below).

3. The Court has ordered that the Townhouse be marketed and sold pursuant to section 363(h) of the Bankruptcy Code. *See, e.g.*, Docket No. 78; Adv. Pro. No. 23-01195, Docket No. 18.

4. Despite those Court orders, after retaining Sotheby's International Realty ("Sotheby's") to find a buyer for the Townhouse, the Debtor has made no progress toward a sale of the Townhouse. In fact, the Debtor and her sister, Marianne, who once had an interest in the Townhouse, impeded the efforts of Sotheby's to access, market, and sell the Townhouse, including such simple tasks as allowing Sotheby's to photograph the interior of the Townhouse.

5. The Debtor has refused to provide Plaintiff with any access to, much less possession of, the Townhouse to implement the Court's orders to market and sell the Townhouse.

6. The Debtor's refusal to cooperate is not only preventing the sale of the Townhouse, but is also jeopardizing the value to be recovered once a sale is consummated.

7. Plaintiff seeks entry of an order directing Defendants jointly and severally to turn over possession and control of the Townhouse to Plaintiff.

8. The Townhouse appears to be the most valuable asset of the Estate. It should be sold as soon as possible, before its carrying costs significantly diminish its value.

## **THE PARTIES**

9. Plaintiff is the Chapter 11 Trustee of the Debtor.

10. Peggy Nestor is the Debtor and is a natural person.

11. The Trustee has been advised that the Debtor does not reside at the Townhouse and that she resides at her Connecticut residence.

12. Marianne Nestor Cassini is the Debtor's sister. Marianne resides in New York, and has advised that her mailing address is P.O. Box 2278, Radio City Station, New York 10019.

## **JURISDICTION AND VENUE**

13. The Court has jurisdiction over this adversary proceeding (the "Adversary Proceeding") pursuant to 28 U.S.C. §§ 157 and 1334 and the United States District Court for the Southern District of New York's *Amended Standing Order of Reference, M-431* dated January 31, 2012, which refers such proceedings to this Court.

14. The Adversary Proceeding is commenced pursuant to sections 521 and 542 of the Bankruptcy Code, and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

15. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (M), and (O) and this Court has jurisdiction to hear and determine this Adversary Proceeding, and to enter final orders and judgments granting the relief sought herein. In the event that this Court or any other court finds any part of this Adversary Proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334 because the relief sought herein

3

relates to the Chapter 11 Case and will have a material impact on the administration of the Debtor's Estate.

16. Plaintiff consents to the entry of final orders and judgments by this Court in the Adversary Proceeding pursuant to Bankruptcy Rule 7008. Plaintiff also consents to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders on judgments consistent with Article III of the United States Constitution.

17. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the Adversary Proceeding arises in, and is related to, the Chapter 11 Case.

## FACTUAL ALLEGATIONS

**I.    The Chapter 11 Case**

18. On April 25, 2023 (the "Petition Date"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.

19. On May 12, 2023, the Debtor filed her Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket No. 21] (the "Schedules"), which the Debtor amended on June 27, 2023 [Docket No. 38].

20. In the Schedules, the Debtor reported she alone has an interest in the Townhouse.

21. On August 23, 2021, the Debtor filed her *Chapter 11 Plan of Reorganization of the Debtor* (the "Plan") [Docket No. 62]. The Plan provided for, among other things, the sale of the Townhouse.

22. On February 21, 2024, Lynx Asset Services, LLC filed its *Motion for the Appointment of a Chapter 11 Trustee*, which was joined by other parties (together, the "Motion to Appoint Trustee") [Docket Nos. 95, 98, 102].

4

23. On March 13, 2024, the Court entered its *Decision Granting Motion for the Appointment of a Chapter 11 Trustee* (the "Decision") [Docket No. 106]. In the Decision, the Court found, in pertinent part, that the Trustee would control the sale of the Townhouse:

> The sale of the Townhouse also has not been proceeding in accordance with the schedule that I approved in December. It is in the interest of creditors generally that an independent third party be put in charge of this estate and take over primary responsibility for the sale of the Townhouse, the management of the Debtor's assets, the approval of expenditures, the conduct of settlement discussions, and the confirmation of a plan. The Debtor will have the right to object if she does not like what the trustee proposes, but she will no longer be in charge.

Decision at 9-10.

24. On March 13, 2024, the Court entered the *Order Granting Motion for Appointment of Chapter 11 Trustee* [Docket No. 107].

25. On March 22, 2024, the Court entered the *Order Approving the Appointment of Chapter 11 Trustee* [Docket No. 112], pursuant to which Plaintiff was appointed as the Trustee in this Chapter 11 Case. The Trustee has since duly qualified and is acting as the Chapter 11 Trustee of the Debtor's estate [Docket No. 114].

## II. The Townhouse

26. In or around 1984, the Debtor and Marianne jointly purchased the Townhouse.

27. By a deed dated January 25, 2018, Marianne transferred her ownership interest in the Townhouse to the Debtor.

28. Marianne, who never resided at the Townhouse, is the widow of Oleg Cassini.

5

29. Oleg Cassini died in 2006 and his estate (the "Oleg Estate") has been in probate proceedings pending in the New York State Surrogate's Court in Nassau County (the "Surrogate's Court").

30. Parties-in-interest in probate proceedings for the Oleg Estate have asserted claims against Marianne, and they have asserted that Marianne has an interest in the Townhouse.

31. The Surrogate's Court granted pre-judgment liens that have been recorded against the Townhouse. The Trustee's reserves all of the Estate's rights, claims, and defenses regarding those liens.

32. The Debtor has represented to the Court that she can no longer maintain the costs and expenses associated with the Townhouse, which include, without limitation, amounts due under several Mortgages (defined below), real estate taxes, utilities, and insurance coverage.

33. Insurance policies covering the Townhouse will expire within 60 to 90 days.

34. The Debtor has represented to this Court that she intended to market and sell the Townhouse during the Chapter 11 Case.

35. The Townhouse constitutes property of the Estate pursuant to section 541 of the Bankruptcy Code.

### III. Liens Against the Townhouse and the Foreclosure Sale

#### A. The Emigrant Mortgage

36. On or about August 30, 2010, the Debtor executed a Mortgage and Adjustable Rate Note (the "Emigrant Mortgage") in favor of Emigrant Bank, as successor by merger with Emigrant Savings Bank-Manhattan ("Emigrant Bank") in the amount of $4 million.

6

37. The Emigrant Mortgage is secured by a lien against the Townhouse.

38. Emigrant Bank filed Proof of Claim No. 5 in the Chapter 11 Case in the amount of $3,559,407.76 on account of the Emigrant Mortgage.

**B.    The Lynx Mortgage**

39. Prior to the Petition Date, Defendants owned and operated Gemeaux Ltd. ("Gemeaux"), which engaged in the licensing and promoting of products related to Oleg Cassini.

40. On or about January 25, 2017, Gemeaux executed an Amended, Restated and Consolidated Promissory Note (the "Lynx Mortgage") in favor of Lynx Asset Services, LLC ("Lynx") in the amount of $9.5 million.

41. Defendants guaranteed Gemeaux's obligations under the Lynx Mortgage.

42. The Lynx Mortgage is secured by a lien against the Townhouse.

43. Lynx filed Proof of Claim No. 10 in the Chapter 11 Case in the amount of $19,267,266.90 on account of the Lynx Mortgage.

44. The Lynx Mortgage was in default on the Petition Date.

**C.    The Prime Plus Mortgages**

45. On or about January 23, 2018, Defendants and Gemeaux executed a Promissory Note and Mortgage (the "First Prime Plus Mortgage") in favor of Prime Plus, LLC ("Prime Plus") in the amount of $1.3 million.

46. The First Prime Plus Mortgage is secured by a lien against the Townhouse.

47. Prime Plus filed Proof of Claim No. 7 in the Chapter 11 Case in the amount of $2,311,454.12 on account of the First Prime Plus Mortgage.

7

48. On or about November 16, 2018, Defendants and Gemeaux executed a Promissory Note and Mortgage (the "Second Prime Plus Mortgage" together with the First Prime Plus Mortgage, the "Prime Plus Mortgages" and, collectively with the Emigrant Mortgage and the Lynx Mortgage, the "Mortgages") in favor of Prime Plus in the amount of $1 million.

49. The Second Prime Plus Mortgage is secured by a lien against the Townhouse.

50. Prime Plus filed Proof of Claim No. 8 in this Chapter 11 Case in the amount of $1,699,131.90 on account of the Second Prime Plus Mortgage.

**D.  The Foreclosure Sale**

51. On May 1, 2018, Defendants defaulted on their obligations as guarantors of the Lynx Mortgage.

52. On or around May 22, 2019, Lynx notified Defendants that Lynx accelerated the Lynx Mortgage and declared the entire amount thereof immediately due and payable.

53. On or around June 14, 2019, Lynx commenced a foreclosure action in the New York Supreme Court, New York County (Index No. 85019/2019) (the "State Foreclosure Action") seeking to foreclose its lien against the Townhouse.

54. During November 2019, Defendants and Lynx entered into a forbearance agreement concerning the Lynx Mortgage (the "Lynx Forbearance Agreement").

55. Following Defendants' default under the Forbearance Agreement, Lynx resumed the State Foreclosure Action.

8

56. On October 12, 2022, Lynx obtained entry of an Amended Judgment of Foreclosure and Sale and Decision and Order on Motion in the State Foreclosure Action (the "Lynx Foreclosure Judgment").

57. A referee's sale of the Townhouse on account of the Lynx Foreclosure Judgment was scheduled for April 26, 2023 (the "Foreclosure Sale").

58. The Debtor stayed the Foreclosure Sale by commencing the Chapter 11 Case one day before the Foreclosure Sale.

## IV. The Sale Process in this Court

59. On December 12, 2023, the Court entered an order [Docket No. 77] approving the Debtor's retention of Sotheby's as her exclusive real estate broker to market and sell the Townhouse.

60. On December 15, 2023, the Court entered an order [Docket No. 78] and granted the Debtor's motion [Docket No. 74] for approval of sale procedures for the Townhouse (the "Sale Procedures Order").

61. On November 1, 2023, the Debtor commenced Adversary Proceeding No. 23-01195 (MEW) in this Court (the "Declaratory Judgment Action") seeking: (i) a declaration that the Debtor is the sole owner of the Townhouse, and (ii) authority, pursuant to section 363(h) of the Bankruptcy Code, to sell the Townhouse.

62. On January 31, 2024, Marianne filed an *Admission of Service* in the Declaratory Judgment Action, and stated: "I acknowledge that I have no ownership interest in the premises located at 15 East 63th [sic] Street, New York . [sic] NY 10065. Peggy Nestor is the sole owner of 15 East 63rd Street." Declaratory Judgment Action, Docket No. 10.

9

63. On March 13, 2024, the Court entered the *Order Granting Partial Summary Judgment on the Pleadings as to the Second Claim for Relief in the Complaint* (the "Sale Order"), and ordered:

> **ORDERED**, pursuant to section 363(h), that the [Townhouse] be sold pursuant to the sale procedures previously approved by this Court; and it is further
>
> **ORDERED**, that the proceeds of such sale shall be distributed to secured creditors or to other parties in accordance with their respective rights and interest, as such rights and interests are determined by the Court in the course of further proceedings in this adversary proceeding and in the underlying chapter 11 case[.]

Declaratory Judgment Action, Docket No. 18.

64. The Sale Procedures Order provides for, among other things, a listing price of $65 million for the Townhouse, an exclusive listing and marketing period by Sotheby's that expires on June 30, 2024, and a bid deadline of July 1, 2024.

65. The Debtor failed to comply with the Sale Procedures Order and the Sale Order prior to Plaintiff's appointment as Trustee.

66. The Debtor failed to cooperate with Sotheby's in its efforts to market and sell the Townhouse.

67. Defendants have impeded Sotheby's efforts to stage, market and sell the Townhouse.

68. The Debtor has failed and refused to comply with Plaintiff's repeated demands for access to the Townhouse.

69. The Debtor has also refused to comply with Plaintiff's repeated requests for cooperation as he seeks to implement this Court's orders for the marketing and sale of the Townhouse.

10

70. Marianne has advised Plaintiff that, despite that she has no ownership interest in the Townhouse, she continues to have access to it, but she will not provide Plaintiff with access to the Townhouse and surrender her keys to the Townhouse to Plaintiff.

71. To date, Defendants continue to possess and/or exercise control over the Townhouse.

## V. The Trustee Must Obtain Immediate Possession and Control of the Townhouse

72. The Townhouse is property of the Estate, which Plaintiff may sell pursuant to section 363 of the Bankruptcy Code and the Sale Order.

73. The Debtor's current disclosed monthly income is insufficient to satisfy monthly expenses associated with the Townhouse.

74. The Debtor's failure to comply with the Sale Procedures Order and the Sale Order, and Marianne's conduct, impedes Plaintiff's ability to comply with the Sale Procedures Order and the Sale Order, and their conduct has and continues to cause harm to the Estate.

75. As of the date hereof, the value of the Townhouse appears to exceed the claims asserted against the Debtor in this Chapter 11 Case. However, obligations to the parties that have asserted liens against the Townhouse, and real estate taxes, other charges for maintenance of the Townhouse accrue daily and erode the Estate's equity value in the Townhouse.

**FIRST CAUSE OF ACTION**
**(Injunctive Relief Directing Debtor**
**to Turn Over Possession of the Townhouse)**

76. Plaintiff repeats and re-alleges the paragraphs set forth above as though set forth herein.

11

77. Defendants are in possession of the Townhouse.

78. Defendants are exercising control over the Townhouse.

79. Defendants have refused to cooperate with Sotheby's in connection with the Court-ordered marketing and sale of the Townhouse.

80. Defendants have refused to comply with Plaintiff's requests for access to, and possession of, the Townhouse.

81. Pursuant to section 521 of the Bankruptcy Code, the Debtor is required to cooperate with Plaintiff. 11 U.S.C. § 521(a)(3) ("The debtor shall . . . cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title.").

82. Pursuant to section 521(a)(4) of the Bankruptcy Code, the Debtor is required to surrender the Townhouse to Plaintiff. 11 U.S.C. § 521(a)(4) ("The debtor shall…surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers relating to property of the estate[.]").

83. The Debtor's refusal to cooperate with Plaintiff constitutes violations of her duties pursuant to sections 521 and 542 of the Bankruptcy Code.

84. An order should be entered directing the Debtor to provide Plaintiff with immediate access to, and sole possession of, the Townhouse.

**SECOND CAUSE OF ACTION**
**(Turnover of Townhouse of the Estate)**

85. Plaintiff repeats and re-alleges the paragraphs set forth above as though set forth herein.

86. Defendants are in possession of, and exercising control over, the Townhouse.

12

87. Defendants' continued use, possession, and/or occupancy of the Townhouse impedes Plaintiff's efforts to maximize its value by selling it pursuant to the Sales Procedure Order and the Sale Order.

88. The Townhouse constitutes property of the Debtor's Estate pursuant to section 541 of the Bankruptcy Code, which must be turned over to Plaintiff pursuant to section 542 of the Bankruptcy Code.

89. Marianne's misconduct is impeding Plaintiff's ability to secure possession of and sell the Townhouse, and constitutes a violation of section 542 of the Bankruptcy Code.

90. Pursuant to section 542(a) of the Bankruptcy Code, an order should be entered directing Defendants to immediately vacate and turn over sole possession of the Townhouse to Plaintiff so that it can be marketed and sold pursuant to the Sales Procedure Order and the Sale Order.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter a judgment:

(i) On Plaintiff's First Cause of Action, directing the Debtor to surrender and turn over possession and control of the Townhouse to Plaintiff pursuant to Bankruptcy Code sections 521 and 542;

 (ii) On Plaintiff's Second Cause of Action, directing Defendants jointly and severally to immediately and turn over sole possession of, the Townhouse to Plaintiff pursuant to Bankruptcy Code section 542(a); and

 (iii) granting such other relief as the Court deems just and proper.

DATED: April 10, 2024
    New York, New York

ALBERT TOGUT, not individually but solely
in his capacity as Chapter 11 Trustee,
By His Proposed Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Brian F. Shaughnessy*
NEIL BERGER
BRIAN F. SHAUGHNESSY
MARTHA E. MARTIR
JOHN C. GALLEGO
One Penn Plaza
New York, New York 10119
(212) 594-5000

14