UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
In re:                                                             :
                                                                   :  Chapter 11
PEGGY NESTOR,                                                      :
                                                                   :  Case No. 23-10627 (MEW)
                              Debtor.                              :
------------------------------------------------------------------ :
                                                                   x

## DECISION AFTER TRIAL DENYING DEBTOR'S RENEWED
## MOTION TO DISMISS HER VOLUNTARY CHAPTER 11 CASE

Peggy Nestor is the debtor in the above-captioned Chapter 11 case, which was commenced by the filing of a voluntary chapter 11 petition on April 25, 2023. The bankruptcy filing preceded, by one day, a scheduled foreclosure sale as to certain real property located at 15 East 63d Street in Manhattan. The plaintiff in the state court foreclosure action was Lynx Asset Services, LLC, which had made a loan to a company named Gemeaux Ltd. The loan to Gemeaux was guaranteed by Peggy Nestor and by her sister, Marianne Nestor Cassini, and the 63d Street property was pledged as security for the guaranty.

I appointed a chapter 11 trustee for reasons stated in a Decision and a separate Order entered on March 13, 2024 [ECF Nos. 106, 107.] On July 24, 2024, the Debtor filed a motion to dismiss the Chapter 11 case, contending that the case should have been filed as a corporate bankruptcy of Gemeaux Ltd. and that it had been "misfiled" by the Debtor's attorneys. [ECF nos. 249, 267, 321.] Various parties filed oppositions to the motion to dismiss [ECF Nos. 337, 338, 340, 341]. The Debtor and Marianne Nestor Cassini filed papers in response [ECF Nos. 349, 351], and the hearing proceeded on October 2, 2024. *See* Transcript of Proceedings, October 2, 2024 [ECF No. 387].

At the October 2, 2024 hearing, Peggy Nestor argued that the loan that Lynx had made was a loan to Gemeaux and that the bankruptcy case therefore should have been filed as a

bankruptcy of Gemeaux rather than as a personal bankruptcy of Peggy Nestor.  However, she acknowledged that she had personally guaranteed the loan to Gemeaux; that she had pledged her property in support of that guaranty; and that it was her own property (not Gemeaux's property) that was the subject of the state court foreclosure judgment.  She then denied that she had realized that the bankruptcy case was a personal bankruptcy case, even though she had attended multiple court hearings and even though the petition, various affidavits, schedules and other docketed filings made clear that the case was a personal chapter 11 filing.

I explained on the record during the October 2, 2024 hearing the reasons why I was denying the Debtor's motion to dismiss.  I stated that it was not credible for the Debtor to contend that she did not know the case had been filed as an individual case, and that it was not credible for her to contend she only happened to realize the truth after I appointed a Trustee and after the Trustee evicted the Debtor (and other family members) from the 63d Street property.  I also noted that creditors had strongly opposed dismissal and that the interests of creditors required that I deny the motion.  I entered an Order to that effect on October 9, 2024 [ECF No. 356].  The Debtor filed a notice of appeal on October 24, 2024 [ECF No. 385.]  That appeal is still pending.

On April 29, 2025, Peggy Nestor filed a letter in which she renewed her contention that the bankruptcy filing "was incorrectly done." [ECF No. 597.]  She asserted that the copy of the bankruptcy petition that had been filed bore a conformed signature rather than an actual signature, and she contended that she had never signed the petition or other papers.  She suggested that "the signature appears to be dropped in, most likely from my State ID," and that the entire proceeding was therefore invalid and unauthorized.  *Id.*  I scheduled an evidentiary hearing for June 12, 2025 to address these new contentions.  I advised the Debtor that since she

2

had essentially claimed that her counsel had filed bankruptcy papers without the Debtor's authority I would want to hear testimony from her attorney, and that I would not allow the Debtor to use the attorney-client privilege to block the attorney's testimony on the relevant issues. The Debtor did not object to this ruling.

I received testimony on June 12 by three witnesses: Peggy Nestor (the Debtor), Anne Penachio (the attorney who had filed the bankruptcy case) and Marianne Nestor Cassini (the Debtor's sister). Peggy Nestor again testified that she thought the bankruptcy case was to be a corporate bankruptcy of Gemeaux and that in her understanding Chapter 11 is for corporations, not for individuals. She was shown a copy of the petition, an affidavit, bankruptcy schedules, an attorney retention agreement and other documents that purported to bear her signature; she acknowledged that the signatures looked like hers, but said she did not recall signing the documents. When asked why she thought Ms. Penachio would have filed a bankruptcy case in the name of Peggy Nestor if that had not been the true intent, or why she would have filed documents that Ms. Nestor did not actually sign, the Debtor had no answer.

Ms. Penachio testified that in advance of the bankruptcy filing she had met with Peggy Nestor, Marianne Nestor Cassini and an attorney who had represented the Nestor sisters in the state court foreclosure action. Ms. Penachio testified credibly that the parties had discussed whether anything could be gained by a bankruptcy filing by Gemeaux, but that Ms. Penachio had explained two reasons why that did not make sense. First, the parties' main objective was to stop the pending foreclosure sale. The foreclosure case, however, had been filed against the Nestor sisters pursuant to their guaranty. Gemeaux did not own the property that was the subject of the foreclosure case, and Gemeaux had not even been named as a party to the foreclosure action. A bankruptcy filing by Gemeaux therefore would not have stopped the foreclosure sale. Second,

3

the Nestor sisters were parties to a long-running set of disputes in the Surrogate's Court on Long Island, and that court had appointed a receiver for Gemeaux. Ms. Penachio stated that since Gemeaux had been put in the hands of a receiver they would not be able to obtain the proper corporate authority to file a bankruptcy petition in the name of Gemeaux.

Ms. Penachio further testified that the parties agreed that a personal bankruptcy filing by Peggy Nestor was the only viable way to stop the upcoming foreclosure sale. Ms. Penachio went over various draft documents with the other participants in the meeting (including an attorney retention agreement, a draft affidavit pursuant to Local Bankruptcy Rule 1007-2, and a voluntary bankruptcy petition) and gathered the additional information that she needed. She also provided an email record showing that she had sent the revised documents to Peggy Nestor and had asked Peggy Nestor to sign them and then to return PDF copies. Peggy Nestor responded by email that she would do so, and Ms. Penachio identified for the record (and the court admitted into evidence) the signed documents that had been returned, including the retainer agreement, the chapter 11 bankruptcy petition, the Local Rule affidavit and a verification of Ms. Nestor's creditor matrix. These documents very plainly indicated that the bankruptcy filing was to be a personal bankruptcy filing by Peggy Nestor.

During the evidentiary hearing, the Debtor's sister complained that the email in evidence had only shown that Ms. Penachio provided the Debtor with documents, without including the actual documents that were attached to that email chain. I stated that I would leave the evidentiary record open solely for the purpose of receiving a copy of the email chain that included the actual documents that Ms. Penachio had sent. That email has been provided and it is now in evidence. The documents attached to the email are identical (except for the absence of signatures) to the signed documents that Ms. Penachio had previously identified.

4

Ms. Penachio further testified that before filing the bankruptcy petition she had called Peggy Nestor to confirm that she had signed all of the required papers. Peggy Nestor confirmed that she had done so. Ms. Penachio's testimony on all of these points was credible, made common sense, and was backed by documentary evidence. Ms. Penachio also confirmed that the Debtor had never complained about being the subject of a personal bankruptcy (and had never complained that the case was "misfiled") until after I appointed a Trustee.

The Trustee also offered various documents in evidence. These included, among other things, bankruptcy Schedules listing the Debtor's personal Assets and Liabilities (which were signed by Peggy Nestor), a Statement of Financial Affairs (also signed by Peggy Nestor), and the transcripts of meetings that were held pursuant to section 341 of the Bankruptcy Code, at which Peggy Nestor testified under oath about her personal assets and liabilities. Once again, these materials made clear that the bankruptcy filing was a personal bankruptcy filing and that it was Peggy Nestor (not Gemeaux) who was the Debtor.

Marianne Nestor Cassini, the Debtor's sister, also testified. However, her testimony consisted almost exclusively of arguments as to why a personal bankruptcy of Peggy Nestor did not make sense. The Nestor sisters argued (as they had argued in October 2024) that they did not understand that the case had been filed as a personal bankruptcy, even though (as Ms. Penachio had cogently explained) the filing of a personal bankruptcy was the only means of achieving what the Nestor sisters really wanted, which was a stop to the pending foreclosure action. They argued once again that the borrower of the Lynx loan was Gemeaux, but the undisputed facts are that the Nestor sisters guaranteed that loan, and the 63d street property was pledged as an asset to secure the guaranty. The Nestor sisters once again insisted that they had been ready and willing to repay the Lynx loan, but that contention has been belied repeatedly throughout this bankruptcy

5

case. I gave Peggy Nestor months (at the outset of this case) to make good on her contentions that a refinancing could be arranged, and no such refinancing ever materialized. Nor has any credible evidence ever been provided showing that the Nestor sisters were able to refinance the Lynx loan. Ms. Nestor's own Rule 1007-2 affidavit explained that the Surrogate's Court had granted an attachment order with respect to the 63d Street property and that the existence of the attachment lien was a barrier to a refinancing. The Nestor sisters' efforts to rehash their long-discredited arguments on these points were simply not credible.

One or both of the Nestor sisters were present for court hearings, at all of which times the bankruptcy case (when called) has been identified as being a case in the name of Peggy Nestor. The two sisters signed and submitted papers to this Court that included Peggy Nestor's name in the caption. It is simply not credible for them to contend that they did not understand that Peggy Nestor was the named Debtor or that the entire filing had somehow been either mistaken or deliberately falsified.

For the foregoing reasons, the renewed motion by Peggy Nestor to dismiss this chapter 11 bankruptcy case, this time based on contentions that she did not actually sign the bankruptcy petition and did not actually authorize the bankruptcy filing, is denied. The record at the evidentiary hearing shows conclusively that the reasons for a personal bankruptcy filing were explained to her, that she had approved the personal bankruptcy filing, and that she had actually signed the relevant papers. A separate Order will be entered, denying the motion.

Dated: New York, New York
      June 23, 2025

                                                                         s/Michael E. Wiles
                                                                        HONORABLE MICHAEL E. WILES
                                                                        UNITED STATES BANKRUPTCY JUDGE