**HEARING DATE: FEBRUARY 25, 2026**
**HEARING TIME: 11:00 A.M.**

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Michael Katz*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

PEGGY NESTOR,

                                Debtor.

Chapter 11

Case No. 23-10627 (MEW)

---

**MICHAEL KATZ'S LIMITED OBJECTION TO CHAPTER 11 TRUSTEE'S MOTION
FOR APPROVAL OF SALE OF TOWNHOUSE LOCATED
15 EAST 63RD STREET, NEW YORK, NY**

TO:   THE HONORABLE MICHAEL E. WILES
      UNITED STATES BANKRUPTCY JUDGE:

Michael Katz ("Katz"), the holder of an unavoidable judgment lien on the real property known as and located at 15 East 63rd Street, New York, NY, Block 1378, Lot 12 (the "Property"), by and through his counsel, Tarter Krinsky & Drogin LLP, submits this limited objection (the "Objection") to the Chapter 11 trustee's (the "Trustee") motion to sell the Property via an auction sale free and clear of all liens, claims and encumbrances (the "Sale Motion"). In support of the Objection, Katz submits the following:

1

## BACKGROUND

1.      On April 25, 2023 (the "Petition Date"), Peggy Nestor (the "Debtor") voluntarily filed this Chapter 11 case. On the Petition Date, the Debtor and her sister Marianne Nestor ("Marianne") were the fee owners of the Property as tenants in common pursuant to a deed dated February 23, 1984. See **Exhibit "A**."

2.      According to the Debtor's schedules and other pleadings filed in the adversary proceeding no. 23-01195 (the "§363(h) Adversary Proceeding"), Marianne transferred her ownership interest in the Property to the Debtor in 2016. However, no deed reflecting this transfer was ever recorded. As such, fee title to the Property is still vested in both the Debtor and Marianne.

3.      Katz is the holder of an unavoidable judgment lien on the Property. See **Exhibit "B."** Katz's judgment lien emanates from a decision from the New York Appellate Division, Second Department. Katz's judgment lien was docketed in New York County prior to Marianne's alleged transfer of her ownership interest to the Debtor.

4.      As per paragraph 27 of the Trustee's Sale Motion [ECF Dkt. No. 823], the Trustee acknowledges Katz's judgment lien against the Property. Katz's judgment lien was renewed on August 5, 2024, by the Supreme Court in Nassau County and fixed in the amount of $421,506.83 as of that date.

5.      Katz's judgment lien continues to accrue post-judgment interest under the C.P.L.R. at 9% per year from August 5, 2024, and is now approximately $480,000. Katz's judgment lien is in second position against the Property subordinate only to Emigrant Bank's mortgage ("Emigrant"). Emigrant's claim is currently approximately $4 million.

6.      Prior to the Trustee's appointment, the Debtor filed the §363(h) Adversary Proceeding. The complaint in the §363(h) Adversary Proceeding sought a declaration the Debtor

2

is the sole owner of the Property notwithstanding the last recorded deed. The complaint also sought section 363(h) relief.

7.  In the §363(h) Adversary Proceeding, Marianne filed an admission of service and acknowledgment [see ECF Dkt. No. 10 in §363(h) Adversary Proceeding] and in paragraph 8 stated "I acknowledge that I have no ownership interest in the premises at 15 East 63rd Street, New York, NY 10065. Peggy Nestor is the sole owner of the 15 East 63rd Street."

8.  Based in part Marianne's filing, this Court entered an order granting partial summary judgment authorizing the sale of the Property under section 363(h) with the proceeds of such sale to be distributed to secured creditors…in accordance with their respective rights and interests as determined by the Court in the course of further proceedings in the §363(h) Adversary Proceeding and in the underlying Chapter 11 case. This Court's order further provided the proceeds of sale shall be segregated and not paid to any person except as ordered by this Court. [See ECF Dkt. No. 18 in §363(h) Adversary Proceeding].

9.  No challenge has ever been made to Katz's judgment lien nor could it as it was entered pursuant to a judgment of the appellate division second department. Moreover, Katz was not a party to the §363(h) Adversary Proceeding. In short, Katz's judgment lien is in second position against the Property. See Trustee's liquidation analysis annexed to disclosure statement [ECF Dkt. No. 872] annexed hereto as **Exhibit "C."**

## KATZ'S LIMITED OBJECTION

10.  Commencing in paragraph 77 of the Trustee's Sale Motion [ECF Dkt. No. 823], the Trustee lays out the arguments in support of a sale free and clear of liens, claims and encumbrances under the well-known subsections of section 363(f) of the Bankruptcy Code. The first basis to support the free and clear sale is section (f)2 which requires the entity holding the

3

lien to consent. Katz's consent is conditioned upon him receiving full payment of the judgment lien at closing or promptly thereafter.

11. The only other provision in section 363(f) which potentially supports the sale free and clear of Katz's judgment lien is section (f)5. Katz submits that in any foreclosure sale, his judgment lien would be paid in full as Emigrant's claim for approximately $4 million is the only senior lien ahead of Katz's lien. Katz does not object to the sale at $34,500,000 as long as he is paid in full at closing or shortly thereafter.

12. Katz has reviewed the Trustee's Sale Motion, the proposed sale order as well as the Trustee's proposed Chapter 11 plan. The Sale Motion is unclear as to whether the Trustee intends to pay off Katz's judgment lien at closing (which must occur by March 15, 2026) or promptly thereafter. This Court's order in the §363(h) Adversary Proceeding states the proceeds of sale shall be segregated and not paid to any person except as further ordered by this Court.[1]

13. Katz asserts he should be paid in full at closing or promptly thereafter. This is customary upon the sale of real estate when the sale proceeds are more than sufficient to pay the most senior liens. First, paying Katz will stop the accrual of post-judgment interest at 9%. More importantly, there is no legitimate reason to hold up Katz's distribution from the sale proceeds.

14. Upon information and belief, the Trustee intends to attempt to surcharge Katz under section 506(c) of the Bankruptcy Code with certain costs of sale.[2] Katz objects to any surcharge as the Trustee's efforts have not directly benefited Katz. Based upon the value of the Property and the fact Katz's lien is junior only to Emigrant, Katz would get paid in full at any sale. Here,

---

[1] See footnotes 6 and 7 of Trustee's liquidation analysis annexed to the disclosure statement. This seems to suggest the Trustee intends to hold Katz's sale proceeds until resolution of the section 506(c) and/or 363(j) dispute is resolved.

[2] According to the plan, the Trustee may also seek to surcharge Katz under section 363(j). Katz does not believe section 363(j) applies to his judgment lien.

the gross sale proceeds are over $34,000,000 and the net sale proceeds are estimated to be over $32,000,0000.

15. Section 506(c) of the Bankruptcy Code permits a trustee to recover from property securing an allowed claim the reasonable, necessary costs and expenses of preserving or disposing of such property to the extent of any benefit to the holder of such claim. However, section 506(c) only applies to a secured creditor of the **estate**, and Katz is not a creditor of the estate. Moreover, in such instance, a lien holder is only responsible for the costs and attorneys' fees that directly benefit the lien holder and not any other fees. *See*, *General Electric Credit Corp. v. Levin & Weintraub* (*In re Flagstaff Foodservice Corp.*) 739 F.2d 73,76 (2d Cir. 1984); *Gravel, Shea & Wright v. Bank of New England* (*In re New England Carpet Co.*) 744 F.2d 16 (2d Cir. 1984). In this instance, given the hierarchy of his judgment lien and the certainty of being paid in full even with a sale of only vacant land, Katz has received no benefit from the Trustee's actions and expenditures, and the Trustee has not demonstrated anything to the contrary.

16. Here, the Trustee has reached an agreement with Lynx Asset Services LLC ("Lynx"), a lien holder, junior to Katz's judgment lien for its substantial carveout and upon information and belief, subject to this Court's approval, the Trustee's law firm will receive between $4 - $5 million of the sale proceeds for legal fees representing the Trustee. Based upon this and the fact that Katz's judgment lien is modest compared to the sale proceeds and only subordinate to Emigrant, Katz must be paid in full with no section 506(c) surcharge. At worst, the Trustee's professional fees with respect to the Sale Motion only, should be allocated pro rata among the holders of all liens based upon the amount of such liens.

**WHEREFORE**, Katz respectfully requests the Court direct the Trustee to pay Katz's judgment lien in full from the closing proceeds or shortly thereafter or alternatively hold the full

5

#180379547v2<DOCUMENTS> - Limited Objection

amount of Katz's judgment lien plus additional funds to cover post-judgment interest at 9% and grant Katz such other relief as the Court deems just and proper.

Dated: New York, New York
      February 20, 2026

                           **TARTER KRINSKY & DROGIN LLP**
                           *Attorneys for Michael Katz*

                           By: */s/ Scott S. Markowitz*
                              Scott S. Markowitz, Esq.
                              1350 Broadway, 11th Floor
                              New York, New York 10018
                              Telephone: (212) 216-8000
                              Email: smarkowitz@tarterkrinsky.com

**EXHIBIT A**

Standard N.Y.B.T.U. Form 8002* 11 80 70M - Bargain and Sale Deed, with Covenant against Grantor's Acts – Individual or Corporation. (single sheet)

**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.**

REEL 767 PAGE 1840

SST cv
$5080

**THIS INDENTURE,** made the 23RD day of FEBRUARY, nineteen hundred and eighty-four
**BETWEEN** KATHERINE BROWNE, residing at 8643 Holloway Plaza, Los Angeles, California 90069

party of the first part, and MARIANNE NESTOR and PEGGY NESTOR, having an address at 257 Park Avenue South, New York, New York 10010,

☆ SO IN ORIGINAL

party of the second part,
**WITNESSETH,** that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,
**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of 63rd Street distant 124 feet 6 inches Westerly from the corner formed by the intersection of the Northerly side of 63rd Street and the Westerly side of Madison Avenue;

RUNNING THENCE Northerly parallel with THE WESTERLY SIDE OF Madison Avenue AND part of the distance through a party wall 100 feet 5 inches to the center line of the block; BETWEEN 65TH AND 64TH STREET

THENCE Westerly parallel with the Northerly side of 63rd Street 25 feet;

THENCE Southerly AND AGAIN parallel with Madison Avenue part of the distance through ANOTHER party wall 100 feet 5 inches to the Northerly side of 63rd Street;

THENCE Easterly along the Northerly side of 63rd Street 25 feet to the point or place of BEGINNING.

TAX MAP DESIGNATION
Dist.
Sec.
Blk. 1378
Lot(s): 12

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.
**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

/s/ Jeffry S. Tull                    /s/ Katherine Browne

| STATE OF NEW YORK, COUNTY OF N.Y. ss: | STATE OF NEW YORK, COUNTY OF ss: |
|---|---|
| On the 23 day of FEBRUARY 1984, before me personally came KATHERINE BROWNE SO IN ORIGINAL | On the day of 19, before me personally came REEL 767 PAGE 1841 |
| to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that she executed the same. | to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that executed the same. |

JOSEPH NURNBERG
Notary Public, State of New York
No. 03-... Bronx County
... New York City
Commission Expires March 30, 1985

| STATE OF NEW YORK, COUNTY OF ss: | STATE OF NEW YORK, COUNTY OF ss: |
|---|---|
| On the day of 19, before me personally came to me known, who, being by me duly sworn, did depose and say that he resides at No. ; that he is the of , the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed h name thereto by like order. | On the day of 19, before me personally came the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he resides at No. ; that he knows to be the individual described in and who executed the foregoing instrument; that he, said subscribing witness, was present and saw execute the same; and that he, said witness, at the same time subscribed h name as witness thereto. |

**Bargain and Sale Deed**
WITH COVENANT AGAINST GRANTOR'S ACTS

TITLE NO. M 21033

KATHERINE BROWNE

TO

SECTION
BLOCK 1378
LOT 12
COUNTY OR TOWN  NEW YORK
TAX BILLING ADDRESS  15 EAST 63 RD STREET

Recorded At Request of The Title Guarantee Company
RETURN BY MAIL TO:

BOOTH, LIPTON & LIPTON
405 Park Avenue
New York, New York
ATT WILL SANDLER ESQ.   Zip No. 10022

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS
Distributed by
TITLE GUARANTEE-
NEW YORK
A TICOR COMPANY

RECORDED BY
LTIC ASSOC., INC.
41 East 42 Street
NEW YORK, N.Y. 10017
599-2170

$5,080 REAL ESTATE TRANSFER TAX NEW YORK COUNTY FEB 27 1984

**EXHIBIT B**



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 09-10-2014
Recorded Time: 3:01:53 p

Record and Return To:

Liber Book:
Pages From:
       To:

Control
Number:  1549
  Ref #: JT14013915
Doc Type: J02   TRANSCRIPT OF JUDGMENT

Plnt: CASSINI, CHRISTINA
Dfnd: NESTORCASSINI, MARIANNE

Judgment Amount:        395,604.57

|  |  |
|---|---|
| Taxes Total | .00 |
| Recording Totals | 10.00 |
| Total Payment | 10.00 |

ALS001

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
MAUREEN O'CONNELL
COUNTY CLERK


2014091001549

FILED: NASSAU COUNTY CLERK 01/30/2024 04:20 PM
NYSCEF DOC. NO. 5
23-10627-mew    Doc 896    Filed 02/20/26    Entered 02/20/26 12:03:21    Main Document
Pg 12 of 19
INDEX NO. 601835/2024
RECEIVED NYSCEF: 01/30/2024

Control# 17077
File Name: Oleg Cassini
File# 343100

## Certification of Copy of Document Filed with the Court

### SURROGATE'S COURT OF THE STATE OF NEW YORK
### NASSAU COUNTY

I, Michael J Murphy, Chief Clerk, of the Nassau County Surrogate's Court, a Court of Record, in the Unified Court System of the State of New York, hereby certify that the copy of the following document:

**FOR THE ESTATE OF OLEG CASSINI: THE TRANSCRIPT OF ORDER/DECREE DATED AUGUST 27, 2014 CERTIFIED BY MICHAEL J. MURPHY, CHIEF CLERK OF THE SURROGATE'S COURT OF NASSAU COUNTY DATED SEPTEMBER 4, 2014,**

is a true copy of the original document filed with or recorded in this Court and is a part of the case record maintained by the Court, the same being either a:

(1) photographic reproduction of the original document reproduced on an office copier,
(2) printed copy of the electronically scanned document stored in the court's computer system, or
(3) printed reproduction of original document photocopied on microfilm.

In addition, I certify that the attached document is a correct transcript of the entire contents of the original document that was so filed or recorded.

In Witness Whereof, I have hereunto set my hand and affixed the seal of the Nassau Surrogate's Court on September 10, 2014.

*Michael J. Murphy*
_____
Michael J Murphy, Chief Clerk

(Facsimile signature may be used pursuant to Section 2609 of the Surrogate's Court Procedure Act)

FILED: NASSAU COUNTY CLERK 01/30/2024 04:20 PM
NYSCEF DOC. NO. 5

23-10627-mew    Doc 896    Filed 02/20/26    Entered 02/20/26 12:03:21    Main Document
                                            Pg 13 of 19

INDEX NO. 601835/2024
RECEIVED NYSCEF: 01/30/2024

## TRANSCRIPT OF ORDER/DECREE

| NAME & ADDRESS OF JUDGMENT DEBTOR SURNAME / GIVEN NAME | | TRADE OR PROFESSION | LAST KNOWN ADDRESSES |
|---|---|---|---|
| Nestor Cassini | Marianne | Entrepreneur | 15 East 63rd Street<br>New York, New York 10065<br><br>313 McCouns Lane<br>Oyster Bay Cove, New York 11771 |

| NAME & ADDRESS OF JUDGMENT CREDITOR NAME / ADDRESS | | AMOUNT OF JUDGMENT | EXECUTOR/ADMINISTRATOR & ADDRESS |
|---|---|---|---|
| Christina Cassini | 5 rue de la Comete<br>Paris, France | $387,696.46, plus 6 days interest at 9% per annum in the amount of $573.78 and costs in the amount of $7,334.33 = $395,604.57 | Jeffrey E. DeLuca, Public Administrator of Nassau County, as Temporary Administrator of the Estate of Oleg Cassini<br><br>240 Old Country Road<br>Mineola, New York 11501 |

| ORDER/DECREE INDEXED | ORDER/DECREE RENDERED | RELIEF GRANTED | ATTY FOR JUDGMENT CREDITOR NAME & ADDRESS | REMARKS |
|---|---|---|---|---|
| DATE: August 27, 2014<br><br>Appellate Division Index No. 2013-11197<br><br>Surrogate's Court File No. 343100/I<br><br>EXECUTION RETURNED UNSATISFIED | DATE: August 27, 2014<br><br>Appellate Division, Second Department Dec. No. D42701<br><br>SATISFIED<br>WHEN    TO WHAT EXTENT | ORDERED that the Order of the Surrogate's Court, Nassau County, dated September 30, 2013, is modified, on the law, by deleting the provision thereof, in effect, denying that branch of Christina Cassini's motion which was for summary judgment granting her objections regarding the claim of Marianne Nestor Cassini against the Daria Cassini Supplemental Needs Trust, and substituting therefor a provision granting that branch of the motion (and, thus, holding that Christina Cassini is entitled a judgment against Marianne Nestor Cassini in the amount of $387,696.46, which remained in the Daria Cassini Supplemental Needs Trust at Daria Cassini's death, plus costs). | Farrell Fritz, P.C.<br>1320 RXR Plaza<br>Uniondale, New York 11556 | |

CLERK OF THE SURROGATE COURT    )
STATE OF NEW YORK                      )
COUNTY OF NASSAU                      )

I, MICHAEL J. MURPHY, Chief Clerk of the Surrogate's Court of Nassau, hereby certify that the above is a correct transcript of a(n) order/decree kept in my office.

IN WITNESS WHEREOF, I have hereunto set my name and affixed by Official seal at Riverhead, New York

This ___ day of September, 2014.

_____, Chief Clerk

02

FILED: NASSAU COUNTY CLERK 01/30/2024 04:20 PM
NYSCEF DOC. NO. 5

INDEX NO. 601835/2024
RECEIVED NYSCEF: 01/30/2024

23-10627-mew    Doc 896    Filed 02/20/26    Entered 02/20/26 12:03:21    Main Document
Pg 14 of 19

STATE OF NEW YORK  
COUNTY OF NASSAU     } SS: JT14013915  
COUNTY CLERK'S OFFICE

    I, MAUREEN O'CONNELL, County Clerk of the County of Nassau and the Supreme and County Courts, Courts of Record thereof,  
    DO HEREBY CERTIFY, that I have compared the annexed with the original

TRANSCRIPT OF JUDGMENT

**FILED AND ENTERED** in my office <u>09-10-2014</u> and the same is a true transcript thereof and of the whole of such original.  
    **IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed the official seal of said County at Mineola, N.Y. this <u>12TH</u> day of <u>SEPTEMBER, 2014</u>.

_Maureen O'Connell_  
County Clerk

**EXHIBIT C**

## General Notes to Liquidation Analysis and Estimated Assets and Liabilities

**Purpose and Scope**

The Liquidation Analysis, and accompanying estimated assets and liabilities schedule, are provided to assist parties in interest in evaluating the Plan in accordance with section 1129(a)(7) of the Bankruptcy Code. These materials are intended solely to provide an illustrative comparison of estimated outcomes under the Plan and a hypothetical liquidation under chapter 7 of the Bankruptcy Code and do not purport to predict or guarantee actual results.

**Estimates and Assumptions**

The Liquidation Analysis and projected distributions are based on estimates and assumptions made by the Trustee using information available as of the date of this Disclosure Statement. Such estimates and assumptions are inherently subject to significant uncertainties, contingencies, and risks, including, without limitation, changes in market conditions, approval and timing of consummation of the sale of the Townhouse, the resolution and allowance or disallowance of Claims, the outcome of litigation or settlement negotiations, the timing and costs of administration, and other factors that may differ materially from those assumed. Accordingly, actual results may vary materially from the estimates reflected herein.

**Variability of Claims and Potential Dilution**

The projected recoveries reflected herein assume certain estimates regarding the aggregate amount and composition of Allowed Claims. The ultimate amount of Allowed Claims, including Administrative Claims, priority claims, and any Secured Creditor Deficiency Claims, may differ from current estimates and may materially affect projected recoveries, if any, to Holders of Claims.

**Reservation of Rights**

The Liquidation Analysis and accompanying estimated assets and liabilities schedule, are provided solely for information purposes and do not and shall not constitute a guarantee, representation, or admission regarding the amount or timing of any distribution to any Holder of a Claim or Interest against the Debtor, the Estate, or any Assets of the Estate. Parties in interest should not rely on these estimates as a prediction of actual results. The Trustee reserves all rights with respect to the administration of the Estate, including the right to revise estimates, object to Claims, pursue or abandon assets, resolve disputes, and take such other actions as may be permitted under the Plan, the Bankruptcy Code, and applicable law.

**Peggy Nestor**
**Projected Liquidation Analysis**
**As of March 15, 2026**

|  | Liquidation in Chapter 11 subject to a Plan | Liquidation in Chapter 7 | Note |
|---|---|---|---|
| **Sale price** | 34,500,000.00 | 34,500,000.00 | 1 |
| **Costs of sale (Estimated)** | | | |
| Broker Commissions - co-fee @4% | 1,380,000.00 | 1,380,000.00 | |
| NYS and NYC Transfer Tax | 0.00 | 1,129,875.00 | 2 |
| Property Taxes | 868,327.11 | 868,327.11 | |
| NYC Building Violations | 44,272.27 | 44,272.27 | |
| Other closing costs (estimated) | 50,000.00 | 50,000.00 | 3 |
| **Total cost of sales** | 2,342,599.38 | 3,472,474.38 | |
| **Net Proceeds after cost of sales** | 32,157,400.62 | 31,027,525.62 | |
| Gains Tax Liability (estimated) | 10,000.00 | 10,000.00 | 4 |
| **Net Sale Proceeds after taxes** | 32,147,400.62 | 31,017,525.62 | |
| <u>Mortgages & Judgments owed</u> | | | |
| Emigrant Mortgage Claim | 4,086,862.61 | 4,086,862.61 | 5 |
| Katz Judgment Lien | 472,400.32 | 472,400.32 | 6, 7 |
| Public Administrator Judgment Lien | 2,016,958.41 | 2,016,958.41 | 6, 7 |
| **Post Petition Financing Claim** | 0.00 | 511,019.48 | 8 |
| **Allowed Lynx Secured Claim** | 21,442,707.57 | 24,286,482.92 | 8 |
| **Carve-out for the Bankruptcy Estate** | 4,128,471.71 | 0.00 | |
| **Net Proceeds to other Creditors** | 0.00 | **(356,198.12)** | |

**Footnotes:**

1) The sales price reflected herein is based on the current terms of the Stalking Horse Agreement for the sale of the Townhouse, and is subject to change as a result of the auction process and any competitive bidding conducted in accordance with the Modified Sales Procedures approved by the Bankruptcy Court. Accordingly, the actual proceeds realized from the sale of the Townhouse may be higher or lower than the amount listed herein. There can be no assurances as to the final purchase price or net proceeds set forth herein, which are for informational purposes solely.

2) The sale of property under Chapter 11 pursuant to a plan would be exempt from NYS and NYC transfer tax pursuant to §1146 of the Bankruptcy Code.

3) Estimated contingency for other Townhouse sale closing costs payable from the sale proceeds.

4) Estimated capital gains tax payable by the Estate from the sale of the property based on capital improvement report by Preferred Construction Mgt. Co. Inc., retained by the Trustee as his estimator, which assisted in reducing the capital gains tax burden from approx. $500,000 to approx. $10,000.

5) Amount payable to Emigrant Bank includes interest estimated through March 15, 2026, which is calculated at a 6.25% interest rate.

6) Amounts payable to Judgment creditors of M. Nestor with Judgment Liens against the Townhouse. The amounts include interest at 9% estimated through March 15, 2026. The distributions made on account of the Judgment Liens are subject to the 506(c) and 363(j) Charges, as applicable, and the Trustee reserves all rights, privileges, and defenses with respect to the Judgment Liens, including with respect to any 506(c) and 363(j) Charges the Trustee may seek to pursue.

7) Certain obligations secured by, or otherwise affecting, the Townhouse are obligations of M. Nestor and not obligations of the Debtor or the Estate.  Because such obligations are secured by liens or encumbrances against the Townhouse, they may be satisfied in connection with the sale of the Townhouse.  Such amounts will be held by the Trustee or the Plan Administrator and paid pursuant to order(s) of the Bankruptcy Court toward satisfaction of such obligations.

8) The total aggregate amount of the Post-Petition Financing Claim, with interest pursuant to the Post-Petition Financing Agreement, and the Allowed Lynx Secured Claim, with interest, is approximately $24.8 million.  Pursuant to the Post-Petition Financing Stipulation, Lynx has agreed to a total aggregate amount in respect of the Post-Petition Financing Claim and the Allowed Lynx Secured Claim of $21.25 million plus 60% of the Net Sale Proceeds (as defined in the Post-Petition Financing Stipulation) over $34 million and carve out the net amount to the professionals.

**Peggy Nestor**
**Chapter 11 Bankruptcy Estate**
**Estimated Assets and Liabilities as of March 15, 2026**

|  | Claim Filed | Liquidation in Chapter 11 subject to a Plan | Liquidation in Chapter 7 | Note |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash | | TBD | TBD | |
| Townhouse Sale Net Proceeds | | 4,128,471.71 | 0.00 | 1 |
| Sale of Personal Property (e.g. Artwork) | | 12,150.00 | 12,150.00 | |
| Avoidance Actions Proceeds | | 350,000.00 | 350,000.00 | |
| Retained Causes of Action Proceeds | | TBD | TBD | 2 |
| Insurance Claims | | TBD | TBD | 3 |
| Contempt Payments | | TBD | TBD | |
| Total Assets | | 4,490,621.71 | 362,150.00 | |
| | | | | |
| **Liabilities/Claims** | | | | |
| Chapter 11 Trustee's commission | 1,073,250.00 | TBD | TBD | |
| Chapter 11 Professional Fees | 8,200,000.00 | TBD | TBD | |
| Other professional fees claim | 200,000.00 | TBD | TBD | |
| Other Administrative Claim | TBD | TBD | TBD | |
| Priority Tax Claims | 58,469.78 | TBD | 0.00 | |
| Class 1 Priority Non-Tax Claims | TBD | TBD | 0.00 | |
| Class 4 Prime Plus Mortgages Claims | 4,010,589.02 | TBD | 0.00 | 4 |
| Class 5 Attachment Lien Claims | 2,594,813.41 | TBD | 0.00 | 4, 5 |
| Class 6 Wenig Saltiel Claims | 88,450.38 | TBD | 0.00 | 4 |
| Class 7 Other Secured Claims | TBD | TBD | 0.00 | |
| Class 8 General Unsecured Claims | 7,862,085.94 | TBD | 0.00 | 6 |
| Class 9 Equity Interests | TBD | 0.00 | 0.00 | |
| Total Liabiliites/Claims | 23,014,408.53 | TBD | TBD | |

**Footnotes:**

1) Proceeds from the sale of the Townhouse, payable to the Bankruptcy Estate pursuant to the Carve-Out under the Post-Petition Financing Order, as amended by the Post-Petition Financing Stipulation.

2) This includes causes of action filed or to be filed by the Trustee. No value is attributed to the Estate's Retained Causes of Action due to the inherent risk and uncertainty involved with litigation and potential defenses, collectibility, timing, and the costs of pursuing such matters; accordingly, any recovery, if obtained would be speculative.

3) This includes any proceeds from the Water Leak Claim in connection with the Water Leak sustained by the Townhouse. No value has been attributed to the Water Leak Claim because coverage has not yet been determined by Argonaut. The existence, amount, and timing of any recovery are uncertain and may be subject to coverage determinations, deductibles, exclusions, policy limits, and associated costs; accordingly, any recovery is speculative.

4) These claims exclude post-petition interest, which may be payable pursuant to the terms of the financing or loan agreements or underlying judgment, as applicable.

5) The distributions made on account of the Attachment Lien Claims, if any, are subject to the 506(c) and 363(j) Charges, as applicable, and the Trustee reserves all rights, privileges, and defenses with respect to the Attachment Lien Claims, including with respect to any 506(c) and 363(j) Charges the Trustee may seek to pursue.

6) Any distribution to Holders of Allowed General Unsecured Claims may be diluted by Secured Creditor Deficiency Claims, if any.