**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x
                                                     :

In re:                                           :     **Chapter 11**
                                                     :

**PEGGY NESTOR,**                     :     **Case No. 23-10627 (MEW)**
                                                     :

                                **Debtor.**       :

-------------------------------------------------------------------- x

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### (I) APPRROVING DISCLOSURE STATEMENT ON A FINAL BASIS
### AND (II) CONFIRMING AMENDED CHAPTER 11 TRUSTEE'S PLAN

      **WHEREAS**, Albert Togut, not individually but solely in his capacity as trustee (the

"<u>Trustee</u>") of the Chapter 11 estate (the "<u>Estate</u>") of Peggy Nestor (the "<u>Debtor</u>"), the debtor in

the above-captioned Chapter 11 case (the "<u>Chapter 11 Case</u>") and as "proponent of the plan"

within the meaning of section 1129 of title 11 of the United States Code (the "<u>Bankruptcy</u>

<u>Code</u>"), has filed the solicitation versions of the *Amended Chapter 11 Trustee's Plan,* dated

February 4, 2026 [Docket No. 870] (the "<u>Solicitation Plan</u>") and the related *Disclosure Statement*

*for the Amended Chapter 11 Trustee's Plan*, dated February 4, 2026 [Docket No. 872] (the

"<u>Disclosure Statement</u>");  and

      **WHEREAS**, on February 4, 2026, this Court (the "<u>Court</u>") entered the *Order (I)*

*Approving Certain Key Dates Relating to Confirmation of the Trustee's Plan, Including*

*Scheduling a Combined Hearing to Consider Approval of the Trustee's Disclosure Statement*

*and Plan;  (II) Approving the Form and Manner of Combined Hearing Notice;  (III) Approving*

*the Trustee's Disclosure Statement on a Provisional Basis;  (IV) Approving (A) Procedures for*

*Solicitation, (B) Forms of Ballots, (C) Procedures for Tabulation of Votes, and (D) Procedures*

*for Objections* [Docket No. 875] (the "<u>Solicitation Order</u>"), which among other things, (a)

approved the Disclosure Statement on a conditional basis;  (b) scheduled a hearing to consider

approval of the Disclosure Statement on a final basis and confirmation of the Solicitation Plan

(the "Confirmation Hearing") for March 11, 2026 at 2:00 p.m. (prevailing Eastern Time);

(c) approved certain procedures for solicitation and tabulation of votes to accept or reject the

Solicitation Plan (the "Solicitation Procedures");  and (d) approved the ballots and other

materials in connection with confirmation of the Solicitation Plan (collectively, the "Solicitation

Materials");  and

WHEREAS, on February 4, 2026, pursuant to the Solicitation Order, the Trustee filed

and served the *Notice of (I) Combined Hearing to Consider Approval of Disclosure Statement on

Final Basis and Plan Confirmation;  (II) and Deadline for Objecting to Disclosure Statement

and Plan;  and (III) Voting Status* [Docket No. 877] (the "Confirmation Hearing Notice");  and

WHEREAS, pursuant to the Solicitation Order, the Trustee caused copies of the

Solicitation Materials, including the Confirmation Hearing Notice, to be served, as applicable, to

holders of Claims and Equity Interests in accordance with the Solicitation Order, as described in

(a) the *Affidavit of Service*, dated February 6, 2026 [Docket No. 881] (the "Solicitation

Affidavit") and (b) the *Certification of Christian Ribeiro Regarding Voting and Tabulation of

Ballots Cast on Amended Chapter 11 Trustee's Plan*, dated March 6, 2026 [Docket No. 950] (the

"Solicitation Declaration");  and

WHEREAS, on February 25, 2026, the Trustee filed the *Notice of Filing of Plan

Supplement to Amended Chapter 11 Trustee's Plan* [Docket No. 917] (as may be further

amended, modified, or supplemented, the "Plan Supplement");  and

WHEREAS, the Solicitation Declaration sets forth the attestation to, and certification of,

the method and results of the tabulation of Claims and Equity Interests entitled to vote to accept

or reject the Solicitation Plan;  and

WHEREAS, on March 9, 2026, the Trustee filed the *Amended Chapter 11 Trustee's Plan* [Docket No. 954] (as may be amended, modified, and/or supplemented from time to time, the "Plan"),[1] which contained certain modifications to the Solicitation Plan (the "Modifications") that is annexed hereto as **Exhibit A**;  and

WHEREAS, on February 26, 2026, the Court entered the *Order Approving Sale of Property* [Docket No. 920] (the "Sale Order"), which authorized the sale (the "Sale Transaction") of the real property located at 15 East 63rd Street, New York, New York 10065 (the "Townhouse"), pursuant to sections 105, and 363(h) and (f) of the Bankruptcy Code, to the Purchaser (as defined herein), subject to the confirmation of the Plan;  and

WHEREAS, on March 9, 2026, the Trustee filed the *Chapter 11 Trustee's Memorandum of Law In Support of Confirmation of the Amended Chapter 11 Trustee's Plan* [Docket No. 963] (the "Confirmation Brief"), which incorporated by reference the *Declaration of Brian Moore in Support of Confirmation of Amended Chapter 11 Trustee's Plan* (the "Declaration"), annexed to the Confirmation Brief at Exhibit A, filed in support of confirmation of the Plan and in response to certain objections to the Plan filed by certain creditors and stakeholders [Docket Nos. 885, 914, 926, 938, 951] (together, the "Objections"),

NOW, THEREFORE, based on the Confirmation Brief, the Declaration, the Solicitation Declaration, the record of the Confirmation Hearing, including all exhibits and testimony submitted in connection therewith, the arguments of counsel and all other persons made at the Confirmation Hearing, and the entire record of the Chapter 11 Case;  and after due deliberation thereon and sufficient cause appearing therefor,

---

[1]    Capitalized terms used in this order (the "Order") but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.      **Findings of Fact and Conclusions of Law**.  The findings and conclusions set

forth herein and in the record of the Confirmation Hearing constitute this Court's findings of fact

and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made

applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").  All findings of fact and conclusions of law set forth in the Sale Order,

including approval of the Sale Transaction, are incorporated by reference herein.  To the extent

any of the following findings of fact constitute conclusions of law, they are adopted as such.  To

the extent any of the following conclusions of law constitute findings of fact, they are adopted as

such.

B.      **Exclusive Jurisdiction;  Venue;  Core Proceeding**.  The Court has exclusive

jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper

under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28

U.S.C. § 157(b)(2)(L), and the Court has exclusive jurisdiction to determine the Plan complies

with the applicable provisions of the Bankruptcy Code and should be confirmed.

C.      **Eligibility**.  The Debtor is an eligible debtor under section 109 of the Bankruptcy

Code.

D.      **Burden of Proof**.  The Trustee, as the proponent of the Plan, has satisfied his

burden of proving by a preponderance of the evidence that the Plan satisfies the requirements of

section 1129 of the Bankruptcy Code.

E.      **Judicial Notice**.  This Court takes judicial notice of the docket in the Chapter 11

Case maintained by the Clerk of this Court and/or its duly appointed agent, including, without

4

limitation, all pleadings, notices, letters, emails and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the Chapter 11 Case, including, without limitation, the Confirmation Hearing.

F.    **Adequacy of Disclosure Statement**.  The Disclosure Statement contains adequate and extensive material information regarding the Debtor and the Plan (and the transactions, including the Sale Transaction, contemplated thereby) so that the parties entitled to vote on the Plan could make informed decisions regarding the Plan.  The Plan contains "adequate information" as that term is defined in section 1125(a) of the Bankruptcy Code, and complies with any applicable additional requirements of the Bankruptcy Code and Bankruptcy Rules.

G.    **Plan Proponent**.  The Trustee is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

H.    **Bankruptcy Rule 3016**.  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Trustee as proponent of the Plan.  The Trustee appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b).  The injunction provision of the Plan is set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

I.    **Notice and Transmittal of Solicitation Materials;  Adequacy of Solicitation Notices**.  The Plan, the Disclosure Statement, the Confirmation Hearing Notice, the Solicitation Order, and the Solicitation Materials (including the ballots) were transmitted and served in good faith and in an appropriate manner in compliance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), and any other applicable rules, laws, and regulations.  Such transmittal and service were due, timely, adequate, and sufficient based upon the circumstances

of the Chapter 11 Case, all parties in interest had the opportunity to appear and be heard at the

Confirmation Hearing, and no other or further notice is or shall be required.  All persons who

solicited votes on the Plan solicited such votes in good faith, in compliance with the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws,

and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy

Code and the exculpation provisions in Section 9.4 of the Plan.  The solicitation of votes on the

Plan, and the Solicitation Materials, complied with the solicitation procedures in the Solicitation

Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Case,

and were in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, and the Local Bankruptcy Rules.

**J.**    **Tabulation**.  Votes to accept or reject the Plan have been solicited and tabulated

fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy

Rules, the Solicitation Order, and all other applicable non-bankruptcy rules, laws, and

regulations.

**K.**    **Cram Down Requirements**.  With respect to those classes that are deemed to

reject or voted to reject the Plan, the requirements of section 1129(b) of the Bankruptcy Code

have been satisfied and the Plan may be confirmed pursuant to section 1129(b)(1) of the

Bankruptcy Code.

**L.**    **No Unfair Discrimination; Fair and Equitable**.  The Plan does not

"discriminate unfairly" and is "fair and equitable" with respect to the Classes that are Impaired

and/or are deemed to reject the Plan because no Class of equal rank to such Classes is receiving

greater value under the Plan, no Class senior to such Classes is being paid more than in full, and

the Plan does not provide a recovery on account of any Claim or Equity Interest that is junior to

such Classes unless and until such Classes are paid in full.

**M.      Good Faith**.  The Plan has been proposed in good faith and not by any means

forbidden by law.  In so finding, the Court has considered the totality of the circumstances of the

Chapter 11 Case and found that all constituencies acted in good faith.  The Plan, including the

Sale Transaction embodied therein, is the result of extensive, good faith, arm's length

negotiations among the Trustee and the principal stakeholders.

**N.      Best Interest of Creditors**.  The "best interests" test is satisfied as to all Impaired

Classes under the Plan, as each Holder of a Claim or Equity Interest in such Impaired Classes

will receive or retain property of a value, as of the Effective Date, that is not less than the amount

that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the

Bankruptcy Code, as described in the Liquidation Analysis, attached as Exhibit 2 to the

Disclosure Statement.

**O.      Trustee and Estate Release**.  As described at the Confirmation hearing, good and

valid consideration has been provided and good and valid justifications have been demonstrated

in support of the releases by the Trustee and the Estate contained in Section 9.3 of the Plan

(the "Estate Release").  The Estate Release is an integral part of the agreements that the Trustee

reached with Lynx regarding the treatment of Lynx's secured claims under the Plan and Lynx's

agreement to permit a portion of its recovery to be used to fund the Plan Administrator's work in

completing the liquidation of the estate.  There is no indication in the record that any valid claims

are being released, and substantial consideration has been provided in exchange for the releases.

**P.      Exculpation**.  The definition of the term "Exculpated Parties" in section 1.45 of

the Plan is hereby deemed to have been modified and replaced by the following definition:

1.45  "Exculpated Party" means, collectively, and in each case in its capacity as such: (i) the Trustee; (ii) Togut, Segal & Segal LLP; (iii) Vinay Agarwal, CPA, LLC; (iv) Phillips Nizer LLP; (v) Sotheby's International Realty; (vi) Brown Harris Stevens Residential Sales, LLC; (vii) Preferred Construction Management Co. Inc.; (viii) Fairview Adjuster Company, Inc.; (ix) Roland Antiques Gallery, Inc.; (x) Lynx; (xi) the Successful Bidder; and (xii) with respect to each of the forgoing clauses (i)–(xi), to the fullest extent permitted by law, such Person's or Entities' Related Parties, solely to the extent that such Related Parties are asserted to be have liability by reason of things done by or for the benefit of the relevant Exculpated Party in connection with the negotiation, execution, and implementation of any transactions approved by the Bankruptcy Court in the Chapter 11 Case.

The exculpation provision in Section 9.4 of the Plan is hereby deemed to have been modified and

to have been replaced by the following language:

9.4 Exculpation. Pursuant to sections 1123(b) and 105(a) of the Bankruptcy Code, to the fullest extent permitted by applicable law, and except as otherwise specifically provided for in this Plan or Confirmation Order, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is exculpated from any Cause of Action for any claim based on the formulation, preparation, marketing, dissemination, negotiation, filing, or pursuit of approval, confirmation, or consummation of agreements and transactions that have been approved by the Court in this chapter 11 case, including without limitation the Post-Petition Financing Facility, the Post-Petition Financing Documents, the Transaction, the Stalking Horse Agreement, the Back-Up Agreement, this Plan (including the Plan Supplement), and the Disclosure Statement; ***provided, however,*** *that no exculpation shall be provided* for claims based on any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, gross negligence, or a criminal act.  For the avoidance of doubt, the foregoing exculpation is temporally limited claims based on actions taken during the period between the commencement of the Chapter 11 Case and the Effective Date of the Plan. The foregoing exculpation shall not be deemed to release, affect, or limit any of the rights and obligations of the Exculpated Parties from, or exculpate the Exculpated Parties with respect to, any of the Exculpated Parties' post-Effective Date obligations or covenants arising pursuant to this Plan, the Confirmation Order, or any contracts, instruments, releases, or other agreements or documents delivered or that survive under or in connection with this Plan.

The Exculpation provisions were proposed in good faith.  As modified above, they are

appropriate and consistent with prior rulings by this Court and in this District regarding the

protection of court-approved fiduciaries and regarding the protection of court-approved

transactions and agreements from later second-guessing or improper collateral attack.  To the

extent that the objection to the exculpation provisions filed by the Office of the United States

Trustee have not been resolved by the changes set forth above, such objection is overruled.

The record in the Chapter 11 Case and at the Confirmation Hearing fully supports the

exculpation provisions, and such provisions are appropriately tailored to protect the Exculpated

Parties from inappropriate litigation while excluding actions determined by Final Order to have

constituted actual fraud, gross negligence or willful misconduct.

     **Q.**     **Injunction**.  The injunction set forth in Section 9.2 of the Plan is hereby deemed

to have been modified and to have been replaced by the following language:

>   9.2  <u>Injunction</u>.  Except as otherwise expressly provided in the Plan, the
> assets of the estate shall be used only for the purposes and in the manner
> specified in the Plan and pursuant to the transactions approved in the Plan,
> and all entities that have, hold, or may hold claims against the Debtor or the
> estate are permanently enjoined from taking any action that would divert such
> assts to any other purposes or that would interfere with the application of
> such assets in the manner specified in the Plan.

The injunction, as modified, is necessary and appropriate to implement, preserve, and enforce the

Plan Administrator's ability to administer the assets of the estate in accordance with the Plan,

and such injunction is narrowly tailored to achieve such purpose.

     **R.**     **Settlement and Compromise.**  The settlements and comprises set forth in the

Plan, including the settlements included in the Plan Supplement pursuant to Section 5.12 of the

Plan, constitute good faith compromises and settlements.

     **S.**     **Plan Supplement**.  The filing and notice of the Plan Supplement, and any

amendments, modifications or supplements thereto, was proper and in accordance with the Plan,

the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, and no other or further

notice is or shall be required.

     **T.**     **Modifications to the Plan**.  Disclosure of the Modifications [Docket Nos. 903,

959], and on the record at the Confirmation Hearing constitutes due and sufficient notice of any

and all Modifications.  The Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  The Modifications do not materially and adversely affect or change the treatment of any Claims or Equity Interests without the consent of the affected holders of such Claims or Equity Interests, and no parties in interest or party that previously voted on the Plan raised an objection or concern with respect to any Modifications.

U.    **Implementation**.  All documents necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of the documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

V.    **Satisfaction of Confirmation Requirements**.  The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

W.    **Approval of Sale Transaction**.  Pursuant to the Sale Order, the Sale Transaction and all of the conditions and transactions contemplated by the Purchase Agreement were authorized and approved pursuant to sections 105(a) and 363 of the Bankruptcy Code.

X.    **Certain Definitions**.  The term "Purchaser" as used in this Order, shall mean the Stalking Horse Bidder or the Back-Up Bidder, as applicable, with which the Sale Transaction is ultimately consummated.  The term "Sale Transaction Documents" as used in this Order shall mean the Stalking Horse Agreement or the Back-Up Agreement, including any and all related agreements and schedules in connection therewith, pursuant to which the Trustee ultimately consummates the Sale Transaction with the Purchaser, and shall include the Plan.

**Y.**     **Back-Up Bid**.  Pursuant to Section 5.13(e) of the Plan and Paragraph Q of the

Sale Order, if the parties are unable to consummate the Sale Transaction pursuant to the Stalking

Horse Agreement following the entry of the Sale Order, the Trustee may file a notice with the

Court designating the Back-Up Bid as the "Successful Bid" (the "Back-Up Bid Implementation

Notice") on the docket of the Chapter 11 Case and seek, subject to entry of this Order, to

consummate the Sale Transaction pursuant to the Back-Up Agreement.[2]  Following the filing of

the Back-Up Bid Implementation Notice, the Back-Up Agreement and the Back-Up Bidder shall

be treated as the "Purchase Agreement" and the "Purchaser", respectively, for all purposes under

this Order.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED
THAT:**

1.     **Adequacy of the Disclosure Statement**.  The Disclosure Statement is approved

on a final basis as having adequate information as contemplated by section 1125(a)(1) of the

Bankruptcy Code and sufficient information of a kind necessary to satisfy the disclosure

requirements of any applicable non-bankruptcy laws, rules, and regulations.

2.     **Confirmation of Plan;  Approval of Sale Transaction**.  The Plan and each of its

provisions and exhibits, and the transactions contemplated therein, including the Sale

Transaction, is confirmed pursuant to section 1129 of the Bankruptcy Code in all respects.  The

documents contained the Plan Supplement and the exhibits thereto are incorporated by reference

and are an integral part of this Order.

---

[2]     For the avoidance of doubt, nothing in this Order shall be construed to approve or authorize
the bidding protections provided in Section 19.04 of the Back-Up Agreement.

3.      **Objections Overruled**.  Any objections, including the Objections, that have not

been consensually resolved or withdrawn are hereby denied and overruled on the merits, with

prejudice.

4.      **Implementation of Plan and Sale Transaction**.

a.      The Debtor, the Trustee, and the Plan Administrator, as applicable, are

authorized to take all reasonable actions required under the Plan and Plan Supplement,

including the Sale Transaction Documents, that are necessary or appropriate to effectuate

the Plan and the transactions contemplated therein, including the Sale Transaction.  The

Debtor, Marianne Nestor (a/k/a Marianne Nestor Cassini, "M. Nestor"), the Trustee, and

the Plan Administrator and each of their respective Related Parties are hereby directed to

cooperate in good faith to implement and consummate the Plan, including the Sale

Transaction.  All actions contemplated by the Plan, including actions taken in anticipation

of the Closing and the Effective Date, are hereby authorized and approved in all respects

(subject to the provisions of the Plan, the Sale Order, and this Order).

b.      In connection with actions taken pursuant to this Paragraph 4 and all other

actions required by the Plan, the Sale Order, and this Order to effectuate, implement, or

consummate the Plan and the transactions contemplated therein (including the Sale

Transaction), the Debtor and M. Nestor are hereby authorized and directed not to take

any actions inconsistent with the Plan, the Sale Order.  For the avoidance of doubt,

nothing in this paragraph shall bar any appeal from the Orders this Court has entered.

c.      The Plan Administrator shall have the authority and right to carry out and

implement all provisions of the Plan, as provided in Section 5.5 of the Plan.  The Trustee

and the Plan Administrator, as applicable, shall be authorized and empowered to execute,

deliver, file, or record such contracts, instruments, releases, and other agreements or

documents and take such actions as are necessary to consummate the Plan.  The Trustee

or the Plan Administrator, as applicable, are hereby authorized to make Distributions and

other payments in accordance with the Plan.

          d.      Each federal, state, commonwealth, local, foreign, or other governmental

agency is directed and authorized to accept for filing and/or recording any and all

documents, mortgages, and instruments necessary or appropriate to effectuate,

implement, or consummate the transactions contemplated by the Plan, the Sale

Transaction, and this Order.

5.      **Plan Supplement;  Effectiveness**. The terms of the Plan and the Plan

Supplement, including the Sale Transaction Documents, and all exhibits thereto, and all other

relevant and necessary documents executed or to be executed in connection with the transactions

contemplated by the Plan and the Sale Transaction Documents shall be effective and binding as

of the Effective Date.  Subject to the terms of the Plan, the Trustee may alter, amend, update, or

modify the Plan Supplement before the Effective Date, *provided* that no material modifications

may be made without Court approval; and *provided further*, that such agreements as the Trustee

has made with secured creditors regarding the possible pursuit of claims under sections 506(c)

and/or 363(j) of the Bankruptcy Code, as described by the Trustee during the Confirmation

Hearing, shall be documented and filed but shall not be considered to be material modifications

to the Plan for purposes of this paragraph.  The failure to specifically include or refer to any

particular article, section, or provision of the Plan, the Plan Supplement, or any related document

in this Order does not diminish or impair the effectiveness or enforceability of such article,

section, or provision.

6.      **Modifications**.  The amendments and Modifications to the Solicitation Plan since the filing and solicitation thereof and incorporated into the Plan are approved in accordance with section 1127(a) of the Bankruptcy Code and Rule 3019(a) of the Bankruptcy Rules.

7.      **Release; Exculpation; Injunction; Discharge; Settlements**.  The Release, Exculpation, Injunction and Discharge provisions in the Plan (including Sections 9.1, 9.2, 9.3 and  9.4), as modified in this Order, are reasonable and appropriate and are approved.  All settlements incorporated into the Plan, including the settlements included in the Plan Supplement pursuant to Section 5.12 of the Plan, are approved and will be effective immediately and binding on all parties in interest on the Effective Date without further order or action by the Court, any of the affected parties, or any other Persons or Entities.

8.      **Direction to Release Liens**. As of the Effective Date and subject to the occurrence of the Closing, except as otherwise set forth in the Plan or the Sale Transaction Documents, each of the Debtor's creditors and any holder of a Lien, is authorized and directed to execute such documents and take all other actions as may be necessary to release its or their Lien on or against the Assets (including the Townhouse), if any, as such Lien may have been recorded or may otherwise exist.  If any Person or Entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens on or against the Townhouse has not delivered to the Trustee prior to the Effective Date in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or, as appropriate, releases of all such Liens (collectively, the "Release Documents"), each of the Purchaser, the Trustee, and the Plan Administrator, as applicable, (i) is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of such Liens;  and (ii)

14

may seek in this Court or any other court to compel appropriate persons to execute the appropriate Release Documents; *provided*, *that*, notwithstanding anything in this Order or the Sale Transaction Documents to the contrary, the provisions of this Order shall be self-executing, and none of the Trustee, the Plan Administrator, or the Purchaser shall be required to execute or file any Release Documents in order to effectuate, consummate, and implement the provisions of this Order, although if necessary, they may do so.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county, or local government agency, court, department or office.

9.      **Direction to Government Agencies**.  This Order is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrar of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Townhouse (all such entities being referred to as "Recording Officers").  Each Recording Officer is authorized, from and after the Effective Date, to strike all recorded Liens on or against the Townhouse from their records, official or otherwise, without further order of the Court or act of any Person or Entity, in accordance with the Plan, the Sale Transaction Documents, the Sale Order, and this Order.  Each Recording Officer is authorized and directed to file, record and/or register any and all documents and instruments presented to consummate or memorialize the Sale Transaction.

10.    **Vesting of Assets.**  On the Effective Date, pursuant to Section 5.6 of the Plan and

sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's Estate and not sold

pursuant to the Sale Transaction, including all Retained Causes of Action, shall vest in the Plan

Administrator free and clear of all claims, Liens, encumbrances, charges, and other interests,

except as may be provided pursuant to the Plan or this Order.  On and after the Effective Date,

except as otherwise provided in the Plan or herein, the Plan Administrator may use, acquire, or

dispose of property and maintain, prosecute, abandon, compromise or settle any Claims, Equity

Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free

of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those

restrictions expressly imposed by the Plan or this Order, as well as the documents and

instruments executed and delivered in connection therewith, including the documents, exhibits,

instruments, and other materials comprising the Plan Supplement.

11.    **Exemption from Transfer Taxes.**  To the maximum extent permitted by section

1146(a) of the Bankruptcy Code, the Sale Transaction and Asset transfers consummated by the

Trustee and approved by this Court, on or after the Confirmation Date through and including the

Effective Date, shall constitute "transfer under a plan" within the purview of section 1146 of the

Bankruptcy Code, and shall not be subject to any document recording tax, stamp tax, conveyance

fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform

Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or

other similar tax or governmental assessment.

12.    **Executory Contracts and Unexpired Leases.**  In accordance with Section 8.1 of

the Plan, on the Effective Date, except as otherwise provided in the Plan, each Executory

Contract and Unexpired Lease shall be deemed automatically rejected on the Effective Date

16

pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or

Unexpired Lease (a) has previously been assumed, or assumed and assigned by, order of the

Bankruptcy Court prior to the Confirmation Date (which order may be this Order);  (b) is the

subject of a motion to assume filed on or before the Confirmation Date;  or (c) is identified on

the schedule of assumed Executory Contracts or Unexpired Leases in the Plan Supplement.

13.     **Payment of Professionals After the Effective Date**.  The Plan Administrator is

authorized to pay compensation for services rendered or reimbursement of expenses incurred

after the Effective Date in the ordinary course without the need for Court approval.  Allowed

Professional Fee Claims shall be paid in Cash by the Plan Administrator to Case Professionals

from the funds held in the Post-Confirmation Fund when such Professional Fee Claims are

Allowed by an order of the Bankruptcy Court;  *provided, that*, Allowed Professional Fee Claims

will be paid to the extent possible whereby each Holder of a Professional Fee Claim shall receive

its *pro rata* share of the remaining funds in the Post-Confirmation Fund as determined by the

Trustee or as otherwise agreed;  *provided*, *further*, *that*, that when the receives additional

proceeds from the liquidation of Assets after the Effective Date, Case Professionals shall receive

additional payments on account of such Case Professionals pre-Effective Date fees and expenses

until such fees can be fully satisfied.

14.     **Confirmation Notice**.  The Trustee shall cause to be served a notice of the entry

of this Order, the occurrence of the Effective Date, the Administrative Claims Bar Date, and the

deadline to file Claims for damages, if any, resulting from the Trustee's rejection of an

Executory Contract or Unexpired Lease as provided in the Plan, upon all parties in interest no

later than three (3) business days after the Effective Date, or as soon as reasonably practicable

thereafter.  Such notice is hereby approved in all respects and shall be deemed good and

sufficient notice of entry of this Order pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c).

15.    **Conditions to Effective Date**.  The Plan shall not become effective unless and

until all conditions set forth in Section 10.2 of the Plan have been satisfied or waived pursuant to

Section 10.3 of the Plan.

16.    **Retention of Jurisdiction.**  Pursuant to sections 105(a) and 1142 of the

Bankruptcy Code, this Court shall retain exclusive jurisdiction with respect to all matters arising

from or related to the Chapter 11 Case, the Plan, the Sale Transaction, the Sale Order, and the

implementation of this Order, including, without limitation, those matters set forth in Article XII

of the Plan and all Retained Causes of Action.

17.    **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to

be substantially consummated pursuant to sections 1101 and 1127(b) of the Bankruptcy Code.

18.    **Severability.**  This Order shall constitute a judicial determination and shall

provide that each term and provision of the Plan, as it may be amended in accordance with

Section 13.1 of the Plan, is (a) valid and enforceable pursuant to its terms;  (b) integral to the

Plan and may not be deleted or amended other than in accordance with Section 13.1 of the Plan;

and (c) non-severable and mutually dependent.

19.    **Immediate Binding Effect.**  Pursuant to section 1141, as applicable, and the

other applicable provisions of the Bankruptcy Code, on or after entry of this Order and subject to

the occurrence of the Effective Date, the terms of the Plan (including all documents and

agreements executed pursuant thereto or in connection therewith), the Plan Supplement, and this

Order shall be immediately effective and enforceable and shall bind the Trustee, the Debtor, M.

Nestor, the Exculpated Parties, Released Parties, all Holders of Claims and Equity Interests

(irrespective of whether such Claims or Equity Interests are Impaired under the Plan or whether

the Holders of such Claims or Equity Interests accepted or are deemed to have accepted the Plan

or rejected or are deemed to have rejected the Plan), any other person giving, acquiring, or

receiving property under the Plan, any and all non-Debtor parties to Executory Contracts and

Unexpired Leases with the Debtor, and other party in interest in the Chapter 11 Case, and the

respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

On the Effective Date, waivers, discharges, exculpations, and injunctions set forth in the Plan

shall be effective and binding on Persons or Entity who may have had standing to assert any

settled, compromised, waived, discharged, exculpated, or enjoined Causes of Action after the

Effective Date.

20.    **Inconsistency**.  In the event of a conflict between this Order, on the one hand, and

the Plan, the Plan Supplement, the Sale Transaction Documents, or any other instrument or

document created or executed pursuant to the Plan or any order (other than this Order)

referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to

any of the foregoing), on the other hand, this Order shall govern and control in all respects;

*provided*, *however*, that the Sale Order shall control and take precedence in the event of any

inconsistency between the Sale Order, the Order, any provision of the Plan, and any of the

foregoing documents.

21.    **Reversal/Stay/Modification/Vacatur of Order**.  Except as otherwise provided

in this Order, and to the fullest extent provided in the Bankruptcy Code, if any or all of the

provisions of this Order are hereafter reversed, modified, vacated, or stayed by a subsequent

order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not

affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien

incurred or undertaken by the Debtor, the Trustee, the Plan Administrator, as applicable, prior to

the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such

reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or

undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal,

modification, or vacatur shall be governed in all respects by the provisions of this Order, the

Plan, the Plan Supplement, and any amendments or modifications to the foregoing.

22.  **Payment of Statutory Fees**.  On the Effective Date, the Trustee shall pay all

accrued and outstanding U.S. Trustee Fees, if any.  All U.S. Trustee Fees payable after the

Effective Date, if any, shall be paid by the Plan Administrator until the earlier of the conversion,

dismissal, or closure of the Chapter 11 Case.

23.  **Post-Confirmation Reporting**.  The Plan Administrator shall file post-

confirmation reports until the Chapter 11 Case is converted, dismissed, or closed by entry of a

final decree.

24.  **Agreements re 506(c) Charges;  363(j) Charges**.

a.  **Emigrant Mortgage Claim**.  Upon the Closing, the Trustee shall pay

Emigrant in full satisfaction of the Emigrant Mortgage Claim, $3,521,637.17, *plus* fees and

expenses of $22,057.50, *plus* all accrued post-petition interest of $546,937.72, as required under

the loan documents in support of Emigrant Mortgage Claim, for an agreed initial pay-off amount

of $4,090,632.39 through the Closing, *less* $75,000.00, which the Trustee shall retain for the

Estate, for a net pay-off amount of $4,015,632.39 (the "Emigrant Payoff Amount"), with such

Emigrant Payoff Amount to be paid at the Closing pursuant to wire instruction to be provided by

Emigrant; *provided*, in the event the Closing occurs after March 17, 2026, the Emigrant Payoff

Amount shall increase by $505.41 per diem;  *provided*, *further*, *that*, payment of the Emigrant

Payoff Amount shall resolve any applicable 506(c) Charges and/or 363(j) Charges under the Plan and Emigrant's objection [Docket No. 899].

        b.      **Katz Judgment Lien**.  Upon the Closing, the Trustee shall pay Michael Katz ("Katz") in full satisfaction of Katz Judgment Lien, $421,506.83, *plus* all post-judgment interest of $61,112.70 as required by the NYCPLR, for an agreed initial pay-off amount of $482,919.53 through the Closing, *less* $17,500.00, which the Trustee shall retain for the Estate, for a net pay-off amount of $465,119.53 (the "Katz Payoff Amount"), with such Katz Payoff Amount to be paid at the Closing pursuant to wire instruction to be provided by Katz;  *provided*, in the event the Closing occurs after March 17, 2026, the Katz Payoff Amount shall increase by $103.93318 per diem;  *provided*, *further*, *that*, payment of the Katz Payoff Amount shall resolve any applicable 363(j) Charges or 506(c) Charges under the Plan.

Dated:  New York, New York
       March 12, 2026

                    /s/ **Michael E. Wiles**
                    Honorable Michael E. Wiles
                    United States Bankruptcy Judge

## **Exhibit A**

**Plan**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
                                     :

In re:                               :      Chapter 11
                                       :

PEGGY NESTOR,                    :      Case No. 23-10627 (MEW)
                                       :

                     Debtor.       :
-------------------------------------------------------------------- x

## <u>AMENDED CHAPTER 11 TRUSTEE'S PLAN</u>

Brian F. Moore, Esq.
Martha E. Martir, Esq.
TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

*Counsel for Albert Togut,*
*not individually but solely in*
*his capacity as Chapter 11 Trustee*

**Dated: March 9, 2026**

## TABLE OF CONTENTS

**ARTICLE I DEFINITIONS** ..............................................................................................1

**ARTICLE II DESIGNATION AND TREATMENT OF UNCLASSIFIED CLAIMS**....13

    2.1   Administrative Claims. ...................................................................................13

    2.2   Professional Fee Claims. ...............................................................................13

    2.3   Priority Tax Claim. ........................................................................................14

    2.4   Post-Petition Financing Claim. .....................................................................14

    2.5   U.S. Trustee Fees. .........................................................................................14

**ARTICLE III DESIGNATION OF CLASSIFIED CLAIMS AND INTERESTS** ...........14

    3.1   Classification of Claims. ...............................................................................14

    3.2   Classes. ..........................................................................................................15

**ARTICLE IV TREATMENT OF CLASSES UNDER THE PLAN**...................................15

    4.1   **Class 1: Priority Non-Tax Claim** .............................................................15

    4.2   **Class 2:  Emigrant Mortgage Claim.**......................................................16

    4.3   **Class 3:  Allowed Lynx Secured Claim.**.................................................16

    4.4   **Class 4:  Prime Plus Mortgages Claims.** ...............................................17

    4.5   **Class 5:  Attachment Lien Claims.** .........................................................17

    4.6   **Class 6:  Wenig Saltiel Claim** .................................................................18

    4.7   **Class 7:  Other Secured Claims.** .............................................................18

    4.8   **Class 8:  General Unsecured Claims.** .....................................................19

    4.9   **Class 9:  Equity Interests.** .......................................................................19

    4.10  Reservation of Rights Regarding Claims, Interests, and Liens. ...................19

**ARTICLE V MEANS FOR IMPLEMENTATION AND EXECUTION**...........................20

    5.1   Plan Funding. .................................................................................................20

    5.2   Distributions on Account of Assets.................................................................21

    5.3   Tax Exemption**.**...........................................................................................21

5.4   Closing of the Chapter 11 Case.................................................................22

5.5   Powers and Duties of the Plan Administrator Under the Plan. ............................22

5.6   Vesting of Assets.......................................................................................24

5.7   No Liability...............................................................................................24

5.8   Payment of Case Professionals for Post-Effective Date Services and
        Reimbursement of Expenses.....................................................................24

5.9   Direction to Parties. ...................................................................................25

5.10  Exemptions...............................................................................................25

5.11  Insurance..................................................................................................25

5.12  Settlements...............................................................................................25

5.13  Closing the Transaction, and Sections 363(i), 363(j), and 1146(a). .........................26

5.14  General Settlement of Claims and Interests...................................................26

**ARTICLE VI DISTRIBUTIONS UNDER THE PLAN** .................................................27

6.1   Distributions..............................................................................................27

6.2   Manner of Payment Under the Plan. ...........................................................27

6.3   Payment Dates. .........................................................................................27

6.4   *De Minimis* Distributions. ..........................................................................27

6.5   Unclaimed Distributions and Property. ........................................................27

6.6   Distributions Free and Clear. ......................................................................28

**ARTICLE VII RESOLUTION OF DISPUTED CLAIMS** ..............................................28

7.1   Objections.................................................................................................28

7.2   Amendment of Claims.................................................................................28

7.3   Reserve for Disputed Claims and Disputed Liens..........................................28

7.4   Claim Procedures Not Exclusive. ................................................................29

**ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES**.................29

8.1   Assumption or Rejection of Executory Contracts and Unexpired Leases.............29

8.2    Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases. ................................................................................................29

8.3    Bar Date for Proofs of Claim Relating to Rejected Executory Contracts and Unexpired Leases. ..............................................................................30

8.4    Reservation of Rights. ............................................................................30

**ARTICLE IX EFFECT OF THE CONFIRMATION DATE, AND, SURRENDER AND CANCELLATION OF CLAIMS**................................................................30

9.1    Discharge. ..............................................................................................30

9.2    Confirmation Date Injunction. ................................................................30

9.3    Releases by the Trustee and the Estate. .................................................31

9.4    Exculpation. ...........................................................................................32

9.5    Release of Liens. ....................................................................................32

**ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION DATE AND EFFECTIVE DATE OF THE PLAN** ......................................................32

10.1   Conditions to the Occurrence of the Confirmation Date. .........................32

10.2   Conditions to the Occurrence of the Effective Date. ...............................33

10.3   Non-Occurrence of the Effective Date;  Non-Waiver of Conditions. ..........34

10.4   Substantial Consummation. ....................................................................34

**ARTICLE XI [RESERVED]** ...............................................................................34

**ARTICLE XII RETENTION OF JURISDICTION** ...............................................34

**ARTICLE XIII GENERAL AND MISCELLANEOUS PROVISIONS**............................36

13.1   Modification of the Plan. .........................................................................36

13.2   Notices. ..................................................................................................37

13.3   Enforceability. ........................................................................................37

13.4   Applicable Law. ......................................................................................37

13.5   Successors and Assigns. .........................................................................37

13.6   Reservation of Rights. .............................................................................37

13.7   Continuation of Bankruptcy Stays. ..........................................................37

13.8  Prior Orders.................................................................................................................38

Prior to the Chapter 11 Trustee's appointment, Peggy Nestor, the Debtor, proposed her own plan [Docket No. 62], which provided that in the event she was unable to obtain financing to address the many claims against her and liens asserted against her assets, she would sell the property that is the primary asset of this estate, a townhouse located at 15 East 63rd Street in Manhattan.  Although she retained a real estate broker, she did not take actions in furtherance of a sale.  Lynx Asset Services, LLC, a pre-petition secured creditor,  moved for the appointment of a Chapter 11 trustee which is why the trustee herein was appointed.

Albert Togut, not individually but solely in his capacity as trustee of the Chapter 11 estate of Peggy Nestor, by and through his attorneys, Togut, Segal & Segal LLP, hereby proposes the following amended plan pursuant to the provisions of Chapter 11 of the Bankruptcy Code (as defined below).  This Plan supersedes and replaces the prior plans that were proposed by the Debtor [Docket No. 62] and the Trustee [Docket Nos. 327, 840, 855, 865, 870, 902].

**ARTICLE I**
**DEFINITIONS**

For the purposes of this Plan and the accompanying Disclosure Statement, the following terms shall have the respective meanings set forth below:

*1.1*    "363(j) Charge" means, pursuant to section 363(j) of the Bankruptcy Code, any amounts that are recoverable by the Estate from the secured interests of any owners of the Townhouse from the sale proceeds of the Transaction, which includes, among other things, the costs and expenses of the sale of the Townhouse, including the Transaction.  For the avoidance of doubt, no 363(j) Charge will be assessed against the Post-Petition Financing Claim and/or the Allowed Lynx Secured Claim or the Liens securing the Post-Petition Financing Claim and/or the Allowed Lynx Secured Claim.

*1.2*    "506(c) Charge" means, pursuant to section 506(c) of the Bankruptcy Code, any amounts that are recoverable from the secured interests from the sale proceeds of the Transaction, which includes, among other things (i) the reasonable and necessary costs, commissions, compensation, and other expenses incurred by the Trustee and his retained professionals in the sale of the Townhouse and confirmation of a Chapter 11 plan including customary closing expenses and taxes associated with the sale of the Townhouse, and sums needed for confirmation of a Chapter 11 plan;  and (ii) the amounts necessary to satisfy in full the Priority  Claims which have been asserted against the Estate in the Chapter 11 Case, and which must be satisfied in connection with confirmation of a Chapter 11 plan.  For the avoidance of doubt, no 506(c) Charge will be assessed against the Post-Petition Financing Claim and/or the Allowed Lynx Secured Claim or the Liens securing the Post-Petition Financing Claim and/or the Allowed Lynx Secured Claim.

*1.3*    "Administrative Claim" means, except as otherwise set forth in this Plan, all or that portion of a Claim for any cost or expense of administration in connection with the Chapter 11 Case, including, without limitation, any actual, necessary costs and expenses of preserving the Estate and the Assets, and all fees and charges assessed against the Estate, pursuant to 28 U.S.C. § 1930.  The term "Administrative Claim" does

not include Professional Fee Claims, Post-Petition Financing Claims, or U.S. Trustee Fees, which are treated separately in this Plan.

1.4    "*Administrative Claims Bar Date*" means (i) December 5, 2024, for Administrative Claims arising on or after the Petition Date through October 31, 2024, pursuant to the Bankruptcy Court's Order, dated October 30, 2024 [Docket No. 391] and (ii) the date that is thirty (30) days after the date of the Effective Date, for Administrative Claims incurred on or after November 1, 2024 through the Effective Date.

1.5    "*Allowed*" means, with reference to any Claim (including any Administrative Claim) that portion of a Claim:  (i) which has been allowed by a Final Order;  (ii) which is allowed under the terms of this Plan;  or (iii) (a) which has been scheduled by the Debtor as not disputed, not contingent and not unliquidated, or (b) for which a proof of claim was timely and otherwise properly filed on or before the Bar Date with the Bankruptcy Court, and with respect to Claims described in this clause (iii) as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, the Plan, the Bankruptcy Rules or an order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim or any portion thereof. Except as otherwise specifically set forth in this Plan, each Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the Bankruptcy Code and applicable law.

1.6    "*Allowed Lynx Secured Claim*" means any outstanding Claim arising from or related to the Amended Judgment of Foreclosure and Sale entered on October 12, 2022 in the foreclosure action in the Supreme Court of the State of New York, New York County, bearing Index No. 85019/2019, in an aggregate outstanding principal amount of not less than $17,251,881.48, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) through the Transaction Closing Date, as provided or modified in the Bankruptcy Court's (i) Post-Petition Financing Order (including the Post-Petition Financing Stipulation); (ii) *Order Fixing and Allowing the Amount of Lynx Asset Services, LLC's Secured Claim* [Docket No. 521];  (iii) the *Order (A) Authorizing the Chapter 11 Trustee to Enter into Amendment of Insurance Premium Financing Agreement and (B) Authorizing Lynx Asset Services, LLP to Make Payments Thereunder* [Docket No. 722];  and (iv) the *Stipulation and Order Regarding Emergency Advances by Lynx Aset Services, LLC to the Estate* [Docket No. 770].

1.7    "*Approval Order*" means the Bankruptcy Court's Order approving the sale of the Townhouse under the Plan and/or section 363 of the Bankruptcy Code.

1.8    "*Assets*" mean all property of the Debtor, including, but not limited to, non-exempt property pursuant to section 522(b) of the Bankruptcy Code and property included in the Estate pursuant to section 1115 of the Bankruptcy Code, of any nature whatsoever, including, without limitation, the Townhouse, Causes of Action, any Transaction Proceeds, accounts receivable, tax refunds, claims of rights, interests and property, real and personal, tangible and intangible, and proceeds of all of the foregoing, as they exist as of the Effective Date and any Disposable Income.

1.9     *"Attachment Lien Claims"* means any outstanding Claim arising from or relating to the June 26, 2020 Ex Parte Order of Attachment entered by the Nassau County Surrogate's Court, establishing a pre-judgment attachment Lien asserted against the Debtor's interest in the Townhouse.

1.10    *"Attachment Liens"*  means any pre-judgment attachment Liens relating to the June 26, 2020 Ex Parte Order of Attachment entered by the Nassau County Surrogate's Court, establishing a pre-judgment attachment Lien asserted against the Debtor's and/or M. Nestor's interest in the Townhouse, including the Lien securing the Attachment Lien Claims.  For the avoidance of doubt, Holders of Attachment Liens shall be entitled to vote solely on account of and to the extent of such Holder's Attachment Lien Claim.

1.11    *"Avoidance Actions"* mean any cause of action assertable under sections 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or similar non-bankruptcy law.

1.12    *"Back-Up Agreement"* means that certain *Contract*, executed on January 7, 2026, by and between the Trustee and the Back-Up Bidder, for the sale of the Townhouse, a copy of which is included in the Plan Supplement, together with all exhibits, appendices, supplements, documents, and agreements ancillary thereto, in each case as amended, supplemented, or modified from time to time.

1.13    *"Back-Up Bid Implementation Notice"* means, if the parties are unable or fail to consummate the Transaction pursuant to the Stalking Horse APA, a notice filed by the Trustee on the docket of the Chapter 11 Case designating the Back-Up Bidder as the Successful Bidder and the Back-Up Agreement as the Successful Bid.

1.14    *"Back-Up Bidder"* means Yingkai Xu.

1.15    *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§101, et seq., as in effect on the Petition Date.

1.16    *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of New York, Manhattan Division.

1.17    *"Bankruptcy Rules"* mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, including the Local Rules of the Bankruptcy Court.

1.18    *"Bar Date"* means (i)(a) July 11, 2023, as the Claims bar date for all pre-petition Claims and (b) October 23, 2023 as the Claims bar date for all pre-petition Claims held by governmental units, pursuant to the Bankruptcy Court's Order, dated May 16, 2023 [Docket No. 25]; and (ii) the Administrative Claims Bar Date.

1.19    *"Business Day"* means any day on which commercial banks are open for business in the City of New York other than a Saturday, Sunday or legal holiday in the State of New York.

*1.20*    "*Case Professionals*" mean all Persons or entities retained pursuant to a Final Order of the Bankruptcy Court who are to be compensated pursuant to sections 326, 327, 328, 330, and 1103 of the Bankruptcy Code.

*1.21*    "*Cash*" means the legal tender of the United States of America or its equivalent.

*1.22*    "*Causes of Action*" means, without limitation, (i) all pending suits and adversary proceedings to which the Debtor and/or the Trustee is a party, whether as plaintiff or defendant, as of the date the Confirmation Order becomes a Final Order, and (ii) any and all other actions, proceedings, causes of action, liabilities, obligations, suits, accounts, controversies, agreements, rights to legal remedies, rights to equitable remedies, rights to payment and claims, damages, judgments, claims and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, existing or hereafter arising, to which the Debtor, the Trustee and/or the Estate had any rights or obligations whatsoever, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case (including through the Effective Date), including, without limitation, all Avoidance Actions and Insurance Claims.

*1.23*    "*Chapter 11 Case*" means the above-captioned case commenced by the filing of a voluntary petition by the Debtor seeking relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date.

*1.24*    "*Claim*" means a claim as defined in section 101(5) of the Bankruptcy Code; including, without limitation, claims arising under section 502 of the Bankruptcy Code.

*1.25*    "*Class*" means a class of Holders of Claims described in Article III of this Plan.

*1.26*    "*Confirmation Date*" means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

*1.27*    "*Confirmation Order*" means the order of the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code confirming the Plan.

*1.28*    "*Contempt Payments*" means Cash paid or payable by M. Nestor to the Trustee or the Plan Administrator, as applicable, pursuant to the Bankruptcy Court's *Order Holding Marianne Nestor Cassini a/k/a Marianne Nestor in Contempt and Imposing Coercive Civil Sanctions* [Docket No. 386].

*1.29*    "*Debtor*" means Peggy Nestor (a/k/a Margaret Nestor).

*1.30*    "*Disallowed*" means any Claim, or any portion thereof, that (i) has been disallowed by Final Order or settlement; (ii) is scheduled at zero or as contingent, disputed, or unliquidated on the Schedules and as to which a Bar Date has been

established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the orders establishing the Bar Date, or otherwise deemed timely filed under applicable law;  or (iii) is not scheduled on the Schedules and as to which a Bar Date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the orders establishing the Bar Date, or otherwise deemed timely filed under applicable law.

1.31    *"Disclosure Statement"* means the disclosure statement filed in accordance with section 1125 of the Bankruptcy Code and relating to this Plan.

1.32    *"Disposable Income"* means the Debtor's *"disposable income"* as that term is defined in section 1325(b)(2) of the Bankruptcy Code projected to be received during the five (5) year period beginning on the Effective Date.

1.33    *"Disputed"* means, with respect to a Claim, any Claim that is not yet Allowed or Disallowed.

1.34    *"Disputed Claim Reserve"* means the reserve established pursuant to Section 7.3 of this Plan.

1.35    *"Disputed Lien"* means, with respect to a Lien, any Lien that (i) the validity, priority or extent has not been determined by, as applicable, the Trustee, Plan Administrator, or the Bankruptcy Court to be a Valid Lien and/or (ii) is awaiting determination of the applicable 363(j) Charge and/or 506(c) Charge by, as applicable, the Trustee, Plan Administrator, or the Bankruptcy Court.

1.36    *"Distribution"* means the distribution or distributions on account of Allowed Claims to be made by the Trustee or the Plan Administrator, as applicable, in accordance with the terms and conditions of the Plan.

1.37    *"Distributable Assets"* means (i) the Debtor's unrestricted Cash on hand, including any Disposable Income;  (ii) the Transaction Proceeds, if any, and (iii) proceeds from the liquidation of any other Assets of the Estate, if any, including Causes of Action, Avoidance Actions and Insurance Claims, and (iv) the Contempt Payments.

1.38    *"Effective Date"* means the first Business Day that is one (1) Business Day after the date upon which the Confirmation Order becomes a Final Order and the conditions precedent set forth in Article X of this Plan have either been duly satisfied or waived.

1.39    *"Emigrant"* means Emigrant Bank, as successor by merger with Emigrant Savings Bank-Manhattan.

1.40    *"Emigrant Mortgage"* means Mortgage and Adjustable Rate Note in favor of Emigrant executed on or about August 30, 2010.  The Emigrant Mortgage is secured

by a Lien against the Townhouse under which $3,559,407.76 was outstanding as of the Petition Date.

1.41    *"Emigrant Mortgage Claim"* means any outstanding Claim arising from or relating to the Emigrant Mortgage.

1.42    *"Entity"* means an *"entity"* as that term is defined in section 101(15) of the Bankruptcy Code.

1.43    *"Equity Interests"* means any interest in the Debtor.

1.44    *"Estate"* means the estate of the Debtor created on the Petition Date by the commencement of the Chapter 11 Case as provided for in Bankruptcy Code section 541.

1.45    *"Exculpated Party"* means, collectively, and in each case in its capacity as such: (i) the Trustee; (ii) Togut, Segal & Segal LLP; (iii) Vinay Agarwal, CPA, LLC; (iv) Phillips Nizer LLP; (v) Sotheby's International Realty; (vi) Brown Harris Stevens Residential Sales, LLC; (vii) Preferred Construction Management Co. Inc.; (viii) Fairview Adjuster Company, Inc.; (ix) Roland Antiques Gallery, Inc.; (x) Lynx; (xi) the Successful Bidder; and (xii) with respect to each of the forgoing clauses (i)–(xi), to the fullest extent permitted by law, such Person's or Entities' Related Parties, solely with respect to work performed on behalf of the applicable Related Party in connection with the negotiation, execution, and implementation of any transactions approved by the Bankruptcy Court in the Chapter 11 Case.

1.46    *"Executory Contract"* means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code. For the avoidance of doubt, the Stalking Horse Agreement and the Back-Up Agreement are not Executory Contracts.

1.47    *"First Prime Plus Mortgage"* means the promissory note and mortgage in favor of Prime Plus under which $2,311,454.12 was asserted as outstanding as of the Petition Date. The First Prime Plus Mortgage is secured by a Lien against the Townhouse that is subordinate to the Emigrant Mortgage Claim and the Allowed Lynx Secured Claim.

1.48    *"First Prime Plus Mortgage Claim"* means any outstanding Claim arising from or related to the First Prime Plus Mortgage in favor of Prime Plus under which $2,311,454.12 was asserted as outstanding as of the Petition Date.

1.49    *"Final Order"* means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal or move for reargument or for a rehearing or for leave to appeal has expired, or (b) if an appeal has been sought, no stay (temporary or otherwise) pending appeal has been obtained.

1.50    *"Gemeaux"* means Gemeaux LLC.

1.51     *"General Unsecured Claim"* means any Claim against the Debtor, which is not an Administrative Claim, Professional Fee Claim, U.S. Trustee Fees, Secured Claim, Priority Claim or Post-Petition Financing Claim, or Other Secured Claims, as of the Petition Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court; <u>provided</u>, any Allowed Secured Creditor Deficiency Claim shall be deemed to be a General Unsecured Claim.

1.52     *"Holder"* means any Person or Entity holding a Claim, Equity Interest, or Lien against, as applicable, the Estate or Asset of the Estate.

1.53     *"Impaired"* means a Claim, interest,  Class of Claims, or Class of interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.54     *"Insurance Claims"* means any Claim or portion of a Claim that is, or may be, insured under any of the Insurance Policies, including, but not limited to, the Water Leak Claim.

1.55     *"Insurance Policies"* means any insurance policy issued at any time to the Debtor, M. Nestor and/or the Trustee or under which the Debtor and/or the Trustee has sought or may seek coverage, and all agreements, documents, or instruments relating thereto.

1.56     *"Insurance Stipulation"* means the *Stipulation and Order Regarding Primary Insurance Policy* [Adv. Pro. No. 25-01133 (MEW), Docket No. 21].

1.57     *"Judgment Liens"* means, collectively, (i) the Katz Judgment Lien and (ii) the Public Administrator Judgment Lien.  For the avoidance of doubt, Holders of Judgment Liens shall not be entitled to vote in favor of or against the Plan.

1.58     *"Katz Judgment Lien"* means a judgment Lien in favor of Christina Cassini and against M. Nestor, which, on or about September 10, 2014, was recorded against the Townhouse, which judgment is now held by Michael Katz, and on August 6, 2024 was renewed by the Supreme Court of the State of New York, Nassau County, Index No. 601835/2024 (Katz v. Nestor Cassini) in the amount of $421,506.83.

1.59     *"Lien"* shall have the meaning set forth in, as applicable, sections 101(37) and 101(36) of the Bankruptcy Code.  For the avoidance of doubt, the term "Lien" includes the Attachment Liens, the Judgment Liens,  the liens securing the Secured Claims, and the liens asserted against M. Nestor's interest in the Townhouse.

1.60     *"Lynx"* means Lynx Asset Services, LLC.

1.61     *"M. Nestor"* means Marianne Nestor (a/k/a Marianne Nestor Cassini), the Debtor's sister.

1.62     *"Next Highest Bid"* means a bid to purchase the Townhouse that is approved by the Bankruptcy Court as the second highest or best bid for the sale of the Townhouse pursuant to the Sale Procedures Order and/or Approval Order.

1.63    *"Next Highest Bidder"* means the Person or Entity submitting the Next Highest Bid for the Sale of the Townhouse.

1.64    *"Other Secured Claim"* means any Secured Claim other than the Emigrant Mortgage Claim, Allowed Lynx Secured Claim, Prime Plus Mortgage Claims, Attachment Lien Claims, and Wenig Saltiel Claim.

1.65    *"Petition Date"* means April 25, 2023.

1.66    *"Person"* means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity.

1.67    *"Plan"* means this amended plan and any amendments and supplements hereto or modifications hereof made in accordance with the requirements of the Post-Petition Financing Order, the provisions of the Bankruptcy Code and orders of the Bankruptcy Court.

1.68    *"Plan Administrator"* means Albert Togut, not individually but solely in his capacity as plan administer pursuant to the provisions of this Plan and as designated by the Confirmation Order, who shall have all powers and authorities set forth in Section 5.5 of the Plan.

1.69    *"Plan Supplement"* means a supplemental appendix to the Plan containing among other things, forms of applicable documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court, including, but not limited to, the following: (a) the Stalking Horse Agreement, (b) the Back-Up Agreement, (c) Retained Causes of Action, (d) schedule of Executory Contracts and Unexpired Leases to be assumed, and (e) settlements described in Section 5.12 of the Plan (if any); provided, that, through the Effective Date, the Trustee shall have the right to amend the documents contained in the Plan Supplement in accordance with the terms of the Plan.

1.70    *"Post-Confirmation Fund"* means the fund established and maintained by the Plan Administrator, which is comprised of: (i) the Distributable Assets, (ii) the Post-Confirmation Reserve, and (iii) the Disputed Claim Reserve.  For the avoidance of doubt, the foregoing amounts need not be deposited in the same bank account.

1.71    *"Post-Confirmation Reserve"* means Cash (i) that is transferred from the Distributable Assets for any future Distributions on account of Allowed Administrative Claims, Professional Fee Claims, or U.S. Trustee Fees and (ii) from the proceeds of (A) any 506(c) Charge, (B) 363(j) Charge, or (C) Carve-Out from the Second Draw under the Post-Petition Financing Order or the Second Look Carve-Out under the Post-Petition Financing Order, for the reasonable and necessary costs, commissions, compensation and other expenses incurred by the Trustee and any Case Professionals in connection with the Chapter 11 Case, including preservation of the Townhouse pending the Sale Process, and the sale of the Townhouse and any future Distributions on account of Allowed Professional Fee Claims.

1.72    *"Post-Petition Financing Claim"* means the Claim of Lynx as the lender pursuant to the Post-Petition Financing Order, the Post-Petition Financing Documents and section 364(c) of the Bankruptcy Code.

1.73    *"Post-Petition Financing Documents"* means those certain loan documents as between the Trustee and Lynx and approved by the Post-Petition Financing Order, which include, but are not limited to that certain Post-Petition Mortgage and Post-Petition Loan Agreement, each as defined in the Post-Petition Financing Order, and entered into between the Trustee, on behalf of the Estate, and Lynx.

1.74    *"Post-Petition Financing Facility"* means the facility provided for under the Post-Petition Financing Documents and Post-Petition Financing Order.

1.75    *"Post-Petition Financing Order"* means, collectively, the *Final Order (A) Authorizing The Trustee To Obtain Post-Petition Financing, (B) Granting A First Priority Senior Mortgage Lien To Dip Lender, And (C) Granting Other Related Relief In Aid Of Sale Pursuant To 11 U.S.C. § 364*, dated July 26, 2024 [Docket No. 264], as modified or amended from time to time [Docket Nos. 579, 617, 681, 784] and the Post-Petition Financing Stipulation.

1.76    *"Post-Petition Financing Stipulation"* means the *Stipulation and Order Modifying and Amending the Post-Petition Financing Order and Post-Petition Loan* [Docket No. 850] between the Trustee and Lynx.

1.77    *"Prime Plus"* means Prime Plus, LLC.

1.78    *"Prime Plus Mortgages"* means the First Prime Plus Mortgage together with the Second Prime Plus Mortgage.

1.79    *"Prime Plus Mortgages Claims"* means any outstanding Claim arising from or related to the First Prime Plus Mortgage and Second Prime Plus Mortgage.

1.80    *"Priority Claims"* means Priority Tax Claims and Priority Non-Tax Claims.

1.81    *"Priority Non-Tax Claim"* means any Claim, other than an Administrative Claim, Professional Fee Claim, General Unsecured Claim, Priority Tax Claim, Post-Petition Financing Claim, Secured Claim, or Other Secured Claim, that is entitled to priority under section 507 of the Bankruptcy Code.

1.82    *"Priority Tax Claim"* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code.

1.83    *"Professional Fee Claim"* means a Claim by any Case Professional and the Trustee for compensation for legal and other services rendered and for reimbursement of expenses incurred, as such amounts may be Allowed or awarded under Bankruptcy Code sections 326, 327, 328, 330(a), 331 or 506(c).

1.84    *"Public Administrator"* means the Public Administrator of Nassau County as administrator C.T.A. of the estate of Oleg Cassini.

1.85    *"Public Administrator Judgment Lien"* means a judgment Lien in favor of the Public Administrator, and against M. Nestor, which, on or about November 5, 2015, was recorded against the Townhouse, and on April 28, 2025 was renewed by the Surrogate's Court of the State of New York, File No. 343100/G (*Matter of Oleg Cassini*), and on or about November 10, 2025 the renewal was recorded in the principal amount of $1,041,336.00.

1.86    *"Receiver"* means Rosalia Baiamonte, the court-appointed receiver for Oleg Cassini, Inc. and Cassini Parfums, Inc.

1.87    *"Reinstate", "Reinstated"* or *"Reinstatement"* means leaving a Claim Unimpaired under the Plan.

1.88    *"Related Party"* means, collectively, with respect to any Entity or Person, in each case solely in its capacity as such with respect to such Entity or Person (and not independently thereof), such Entity's or Person's former and current officers, directors, employees managers, equity holders (regardless of whether such interests are held directly or indirectly), successors, assigns, affiliates, partners, principals, members, agents, financial advisors, attorneys, accountants, and representatives.

1.89    *"Released Party"* means (i) Lynx;  and (ii) Lynx's Related Parties.

1.90    *"Removal Order"* means the Bankruptcy Court's *Order: (I) Permitting the Chapter 11 Trustee to Intervene as a Necessary Party;  (II) Dismissing the Removed Action; (III) Enjoining Marianne Nestor Cassini a/k/a Marianne Nestor or Marianne Cassini from Commencing Further Actions Against the Trustee or His Representatives in Any Court Other Than This Court (Or in Any Appellate Court to this Court) Except With This Court's Prior Approval* [Adv. Pro. No. 24-04021 (MEW), Docket No. 15].

1.91    *"Retained Causes of Action"* means the Causes of Action identified in the schedule included in the Plan Supplement.

1.92    *"Sale Procedures Order"* means the order entered by the Bankruptcy Court December 15, 2023, [Docket No. 78] and as amended by further order [Docket Nos. 261 and 851], approving the procedures for the bidding and sale of the Townhouse.

1.93    *"Schedules"* mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor [Docket Nos. 21 and 38] as they may be modified or amended, as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007.

1.94    *"Second Look Carve-Out"* means the sum of up to $500,000 less the amount of funds available to the Estate from assets other than from the sale of the Townhouse and any carve-out monies received by the Trustee from sources other than Lynx as provided under Post-Petition Financing Order.

1.95    *"Second Prime Plus Mortgage"* the promissory note and mortgage in favor of Prime Plus, under which $1,699,131.90 was asserted as outstanding as of the Petition Date.  The Second Prime Plus Mortgage is secured by a Lien against the Townhouse

10

that is subordinate to the First Prime Plus Mortgage, the Emigrant Mortgage and the Allowed Lynx Secured Claim.

1.96    *"Second Prime Plus Mortgage Claims"* means any outstanding Claim arising from or related to the Second Prime Plus Mortgage.

1.97    *"Section 363(i) Rights"* means the rights of a non-debtor co-owner, if any, of the Townhouse pursuant to section 363(i) of the Bankruptcy Code.  For the avoidance of doubt, M. Nestor is estopped from asserting any Section 363(i) Rights [Docket Nos. 153, 156, 160, 162, 185].

1.98    *"Secured Claim"* means any Claim other than a Claim which is an Administrative Expense Claim, a Priority Claim, a Professional Fee Claim, or a General Unsecured Claim, that is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or 1129(b) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.  For the avoidance of doubt, the term "Secured Claim" includes the Emigrant Mortgage Claim, Allowed Lynx Secured Claim, Attachment Lien Claims, Prime Plus Mortgages Claims, Wenig Saltiel Claim and Other Secured Claims.

1.99    *"Secured Creditor Deficiency Claim"* means that portion of any Allowed Claim held by the Holder of a Secured Claim that exceeds the value of the Townhouse or proceeds from the sale of the Townhouse, if any, or any assets securing such Allowed Claim.

1.100    *"Stalking Horse Agreement"* means that certain *Contract*, executed on December 29, 2025, and amended on January 9, 2026, by and between the Trustee and the Stalking Horse Bidder, for the sale of the Townhouse, a copy of which is included in the Plan Supplement, together with all exhibits, appendices, supplements, documents, and agreements ancillary thereto, in each case as amended, supplemented, or modified from time to time.

1.101    *"Stalking Horse Bidder"* means 63rd St Townhouse LLC.

1.102    *"Successful Bid"* means a bid to purchase the Townhouse that is approved by the Bankruptcy Court as the highest or best bid for the Sale of the Townhouse pursuant to the Sale Procedures Order and/or Approval Order, which as set forth in Section 5.13(e) may be the Back-Up Bid if the highest or best bid is not consummated and the Trustee files the Back-Up Bid Implementation Notice.

1.103    *"Successful Bidder"* means the Person or Entity submitting the Successful Bid for the sale of the Townhouse.

1.104    *"Transaction"* means the sale of the Townhouse in accordance with the terms of the Sale Procedures Order and the Post-Petition Financing Order, the proceeds of which sale, if any, will be used to implement the Plan as provided for herein.

*1.105* *"Transaction Closing Date"* means the date upon which the Transaction is consummated.

*1.106* *"Transaction Proceeds"* mean the Cash purchase price paid by the Successful Bidder in connection with the Transaction after payment (or reservation) of: (i) the actual and customary closing adjustments and other transaction costs required to be paid at the Transaction Closing Date (i.e. brokers' commissions, real estate taxes); (ii) the Post-Petition Financing Claim; (iii) the Emigrant Mortgage Claim; (iv) the Judgment Liens; and (v) the Allowed Lynx Secured Claim, if any.

*1.107* *"Trustee"* means Albert Togut, not individually but solely in his capacity as Chapter 11 trustee of the Estate of the Debtor.

*1.108* *"Trustee Professionals"* means those Case Professionals retained in the Chapter 11 Case after the Trustee's appointment, including, but not limited to: (i) Togut, Segal & Segal LLP; (ii) Vinay Agarwal, CPA, LLC; (iii) Phillips Nizer LLP; (iv) Sotheby's International Realty; (v) Brown Harris Stevens Residential Sales, LLC; (vi) Preferred Construction Management Co. Inc.; (vii) Fairview Adjuster Company, Inc.; and (viii) Roland Antiques Gallery, Inc., as well as professionals, if any, providing post-Effective Date services to the Plan Administrator.

*1.109* *"Townhouse"* means the real property and building located at 15 East 63rd Street, New York, New York 10065.

*1.110* *"Unexpired Lease"* means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

*1.111* *"Unimpaired"* means a Claim or Class of Claims that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

*1.112* *"U.S. Trustee Fees"* means fees arising under section 1930(a)(6) of title 28 of the United States Code and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

*1.113* *"Valid Lien"* means any Lien that (i) the validity, priority or extent has been determined to be valid by, as applicable, the Trustee, Plan Administrator, or the Bankruptcy Court and (ii) determination of the applicable 363(j) Charge and/or 506(c) Charge by, as applicable, the Trustee, Plan Administrator, or the Bankruptcy Court has occurred.

*1.114* *"Water Leak Claim"* means the Insurance Claim (Claim No. GPAR03572501) made under the Debtor's and M. Nestor's insurance policy (Policy No. BAN1015892-00) with Argonaut Insurance Company related to a water leak discovered in the Townhouse on August 2, 2025.

*1.115* *"Wenig Saltiel Claim"* means a judgment Lien against the Debtor and M. Nestor in the amount of $128,077.18 obtained by Wenig Saltiel LLP.

*1.116* <u>Rules of Interpretation; Application of Definitions and Rules Construction</u>. Unless otherwise specified, all section or exhibit references in this Plan

12

are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings  when used in the Plan, unless a different definition is ascribed in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under the Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

## ARTICLE II
## DESIGNATION AND TREATMENT OF UNCLASSIFIED CLAIMS

2.1     Administrative Claims. Except to the extent that any Person or Entity entitled to payment of an Allowed Administrative Claim agrees to a different treatment, each Holder of an Allowed Administrative Claim shall receive a Distribution in Cash in an amount equal to such Holder's Allowed Administrative Claim on the Effective Date or as soon as practicable after the date such Administrative Claim becomes an Allowed Administrative Claim.

Each Holder of an Administrative Claim is required to file a proof of Administrative Claim no later than the Administrative Claims Bar Date. Nothing herein extends any Bar Date previously established by the Bankruptcy Court. Any request for payment of an Administrative Claim that is not timely filed as set forth above shall be forever barred, and Holders of such Claims shall not be able to assert such Claims in any manner against the Debtor, the Estate, the Trustee, Trustee Professionals or any of the foregoing parties' accountants, advisors, agents, attorneys, consultants, directors, employees, members, officers, representatives.

The Plan Administrator shall have ninety (90) days after the Effective Date to file objections, if any, to Administrative Claims, and serve such objections upon the Holder of the affected Claim. The Plan Administrator shall have the right to seek authority from the Bankruptcy Court to extend the dates for filing and serving the objections to the Holders of such Claims.

2.2     Professional Fee Claims. All Case Professionals seeking an allowance of their Professional Fee Claim for services rendered and expenses incurred through and including the Effective Date under sections 330, 331, and/or 506(c) of the Bankruptcy Code shall file their respective applications for allowance of their Professional Fee Claim by not later than the date which is thirty (30) days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court, for services rendered through

the Effective Date.  If granted, Allowed Professional Fee Claims shall be paid in Cash by the Plan Administrator to such Case Professionals from the funds held in the Post-Confirmation Fund when such Claims are Allowed by an order of the Bankruptcy Court;  provided, that, Allowed Professional Fee Claims will be paid to the extent possible whereby each Holder of a Professional Fee Claim shall receive its *pro rata* share of the remaining funds in the Post-Confirmation Fund as determined by the Trustee or as otherwise agreed;  provided, further, that, that when the receives additional proceeds from the liquidation of Assets after the Effective Date, Case Professionals shall receive additional payments on account of such Case Professionals pre-Effective Date fees and expenses until such fees can be fully satisfied.

2.3    Priority Tax Claim.  Except to the extent a Holder of an Allowed Priority Tax Claim has been satisfied prior to the Effective Date or agrees to less favorable treatment, on the Effective Date or as soon as reasonably practicable after the date such Priority Tax Claim becomes Allowed, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, release, and settlement of such Claim, a Distribution in Cash in the Allowed amount of its Claim with interest if required by the Bankruptcy Code or this Plan.

2.4    Post-Petition Financing Claim.  The Post-Petition Financing Claim shall be paid in accordance with the terms and conditions of the Post-Petition Financing Order, as amended by the Post-Petition Financing Stipulation.  No 506(c) Charge or 363(j) Charge will be assessed against the Post-Petition Financing Claim or the Liens securing the Post-Petition Financing Claim.

The Trustee shall receive the Carve-Out from the Second Draw as defined in the Post-Petition Financing Order, as amended by the Post-Petitioning Financing Stipulation, or in the event that any of the Second Draw Conditions Precedent are not satisfied, Lynx as lender, shall make the Second Look Carve-Out available.

2.5    U.S. Trustee Fees.  On the Effective Date or as soon thereafter as reasonably practicable, the Plan Administrator shall pay all U.S. Trustee Fees that are due and payable on the Effective Date.  Following the Effective Date, the Plan Administrator shall (a) pay the U.S. Trustee Fees as such fees are assessed and come due for the Chapter 11 Case for each quarter (including any fraction thereof) and (b) file quarterly reports in a form reasonably acceptable to the United States Trustee.  The Plan Administrator shall remain obligated to pay U.S. Trustee Fees to the United States Trustee and to file quarterly reports until the earliest of the Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III
## DESIGNATION OF CLASSIFIED CLAIMS AND INTERESTS

3.1    Classification of Claims.  Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and interests against the Debtor.  A Claim or interest is placed in a particular Class only to the extent that the Claim or interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or interest falls within the description of such other Classes.  A Claim or interest is also placed in a particular Class for the purpose of

receiving Distributions pursuant to this Plan only to the extent that such Claim or interest is an Allowed Claim or interest in that Class and such Claim or interest has not been paid, released, or otherwise settled prior to the Effective Date.

3.2    <u>Classes</u>.  Other than Administrative Claims, Professional Fee Claims, U.S. Trustee Fees, Priority Tax Claims, and Post-Petition Financing Claim, Claims and interests are classified as set forth below:

| <u>Class Number</u> | <u>Class</u> | <u>Impairment</u> | <u>Entitled to Vote</u> |
|---|---|---|---|
| 1. | Priority Non-Tax Claim | Unimpaired | No |
| 2. | Emigrant Mortgage Claim | Unimpaired | No |
| 3. | Allowed Lynx Secured Claim | Impaired | Yes |
| 4. | Prime Plus Mortgages Claims | Impaired | Yes |
| 5. | Attachment Lien Claims | Impaired | Yes |
| 6. | Wenig Saltiel Claim | Impaired | Yes |
| 7. | Other Secured Claims | Unimpaired | No |
| 8. | General Unsecured Claims | Impaired | Yes |
| 9. | Equity Interests | Impaired | No |

**ARTICLE IV**
**TREATMENT OF CLASSES UNDER THE PLAN**

4.1    **Class 1: Priority Non-Tax Claim**

(a)    <u>Classification</u>:  Class 1 consists of Holders of Priority Non-Tax Claims.

(b)    <u>Treatment</u>:  Except to the extent a Holder of an Allowed Priority Non-Tax Claim has been satisfied prior to the Effective Date or agrees to less favorable treatment, on the Effective Date or as soon as practicable after the date such Priority Non-Tax Claim becomes Allowed, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction, release and settlement of such Claim, at the option of the Trustee or Plan Administrator, as applicable, (a) a Distribution in Cash in the Allowed amount of its Claim, or (b) on the Effective Date, such Holder's Priority Non-Tax Claim shall be Reinstated.

(c)    <u>Impairment</u>:  Class 1 is Unimpaired under the Plan and, therefore, the Holder in Class 1 is deemed to accept the Plan.

4.2    **Class 2:  Emigrant Mortgage Claim.**

(a)    <u>Classification</u>:  Class 2 consists of Holders of Emigrant Mortgage Claims.

(b)    <u>Treatment</u>:  Except to the extent that the Holder of the Allowed Emigrant Mortgage Claim agrees to different treatment, subject to section 5.1 of the Plan, on the Effective Date, or as soon thereafter as is reasonably practicable, the Holder shall receive, in full satisfaction, release and settlement of the Emigrant Mortgage Claim, Cash in an amount equal to the Allowed amount of such Claim, *less* any applicable 506(c) Charge and/or 363(j) Charge; <u>provided</u>, <u>however</u>, <u>that</u>, nothing in the Plan shall limit the Trustee's ability to sell the Townhouse and consummate the Transaction free and clear of all Liens, claims and encumbrances pursuant to the Sale Procedures Order and/or Bankruptcy Code section 363(f).  Distributions on account of this Section 4.2 shall be subject to repayment or reservation in full of the Post-Petition Financing Claim.

(c)    <u>Impairment</u>:  Class 2 is Unimpaired under the Plan and, therefore, the Holder in Class 2 is deemed to accept the Plan.

4.3    **Class 3:  Allowed Lynx Secured Claim.**

(a)    <u>Classification</u>:  Class 3 consists of Holder of the Allowed Lynx Secured Claim.

(b)    <u>Treatment</u>:  Except to the extent that the Holder of the Allowed Lynx Secured Claim agrees to different treatment, the Holder of the Allowed Lynx Secured Claim shall be paid in accordance with the terms and conditions of the Post-Petition Financing Order, as amended by the Post-Petition Financing Stipulation.  No 506(c) Charge or 363(j) Charge will be assessed against the Allowed Lynx Secured Claim or the Liens securing the Allowed Lynx Secured Claim.

(c)    <u>Impairment</u>:  Class 3 is Impaired under the Plan and is entitled to vote on this Plan.

4.4    **Class 4:  Prime Plus Mortgages Claims.**

(a)    <u>Classification</u>:  Class 4 consists of Holders of Prime Plus Mortgages Claims.

(b)    <u>Treatment</u>:  Except to the extent that a Holder of an Allowed Prime Plus Mortgages Claim agrees to different treatment, subject to section 5.1 of the Plan, on the Effective Date, or as soon thereafter as is reasonably practicable, the Holder shall receive, in full satisfaction, release and settlement of such the Prime Plus Mortgages Claims, Cash in an amount equal to the Allowed amount of such Claim *less* any applicable 506(c) Charge and/or 363(j) Charge; <u>provided</u>, <u>however</u>, <u>that</u>, nothing in the Plan shall limit the Trustee's ability to sell the Townhouse and consummate the Transaction free and clear of all Liens, claims, and encumbrances pursuant to the Sale Procedures Order and/or Bankruptcy Code section 363(f); <u>provided</u>, <u>further</u>, the Holder of the Prime Plus Mortgages Claim shall be entitled to a Secured Creditor Deficiency Claim to the extent the applicable Allowed Claim exceeds the value of the Townhouse or Transaction Proceeds securing such Claim; <u>provided</u>, <u>further</u>, <u>that</u>, Distributions on account of this Section 4.4 shall be subject to repayment or reservation in full of (i) the Post-Petition Financing Claim, (ii) the Emigrant Mortgage Claim, (iii) the Judgment Liens, and (iv) the Allowed Lynx Secured Claim, and to the extent that the Transaction Proceeds are insufficient, the Holder of the Prime Plus Mortgages Claim shall be entitled to a Secured Creditor Deficiency Claim and treatment as a General Unsecured Claim.

(c)    <u>Impairment</u>:  Class 4 is Impaired under the Plan and is entitled to vote on this Plan.

4.5    **Class 5:  Attachment Lien Claims.**

(a)    <u>Classification</u>:  Class 5 consists of Holders of Attachment Lien Claims.

(b)    <u>Treatment</u>:  Except to the extent that a Holder of the Allowed Attachment Lien Claim agrees to different treatment, subject to section 5.1 of the Plan, on the Effective Date, or as soon thereafter as is reasonably practicable, the Holder shall receive, in full satisfaction, release and settlement of the Attachment Lien Claim, Cash in an amount equal to the Allowed amount of such Claim *less* any applicable 506(c) Charge and/or 363(j) Charge; <u>provided</u>, <u>however</u>, <u>that</u>, nothing in the Plan shall limit the Trustee's ability to sell the Townhouse and consummate the Transaction free and clear of all Liens, claims, and encumbrances pursuant to the Sale Procedures Order and/or Bankruptcy Code section 363(f); <u>provided</u>, <u>further</u>, the Holder of the Attachment Lien Claim shall be entitled to a Secured Creditor Deficiency Claim to the extent the applicable Allowed Claim exceeds the value of the Townhouse or Transaction Proceeds securing such Claim; <u>provided</u>, <u>further</u>, <u>that</u>, Distributions on account of this Section 4.5 shall be subject to repayment or reservation in full of (i) the Post-Petition Financing Claim, (ii) the Emigrant Mortgage Claim, (iii) the Judgment Liens, (iv) the Allowed Lynx Secured Claim, and (v) the Prime Plus Mortgage Claims, and to the extent that the Transaction Proceeds are insufficient, the Holder of the

Attachment Lien Claim shall be entitled to a Secured Creditor Deficiency Claim and treatment as a General Unsecured Claim.

(c)      Impairment:  Class 5 is Impaired under the Plan and is entitled to vote on this Plan.

4.6    **Class 6:  Wenig Saltiel Claim**.

(a)      Classification:  Class 6 consists of the Holder of the Wenig Saltiel Claim.

(b)      Treatment:  Except to the extent that a Holder of an Allowed Wenig Saltiel Claim agrees to different treatment, subject to section 5.1 of the Plan, on the Effective Date, or as soon thereafter as is reasonably practicable, the Holder shall receive, in full satisfaction, release and settlement of the Wenig Saltiel Claim, (i) Cash in an amount equal to the Allowed amount of such Claim *less* any applicable 506(c) Charge and/or 363(j) Charge;  provided, however, that, nothing in the Plan shall limit the Trustee's ability to sell the Townhouse and consummate the Transaction free and clear of all Liens, claims, and encumbrances pursuant to the Sale Procedures Order and/or Bankruptcy Code section 363(f);  provided, further, the Holder of the Wenig Saltiel Claim shall be entitled to a Secured Creditor Deficiency Claim to the extent the applicable Allowed Claim exceeds the value of the Townhouse or Transaction Proceeds securing such Claim;  provided, further, that, Distributions on account of this Section 4.5 shall be subject to repayment or reservation in full of (i) the Post-Petition Financing Claim, (ii) the Emigrant Mortgage Claim, (iii) the Judgment Liens, (iv) the Allowed Lynx Secured Claim, (v) the Prime Plus Mortgage Claims, (vi) the Attachment Lien Claims, and (vii) the Attachment Liens, and to the extent that the Transaction Proceeds are insufficient, the Holder of the Wenig Saltiel Claim shall be entitled to a Secured Creditor Deficiency Claim and treatment as a General Unsecured Claim.

(c)      Impairment:  Class 6 is Impaired under the Plan and is entitled to vote on this Plan.

4.7    **Class 7:  Other Secured Claims**.

(d)      Classification:  Class 7 consists of Holders of Other Secured Claims.

(e)      Treatment:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to different treatment, subject to section 5.1 of the Plan, on the Effective Date, or as soon thereafter as is reasonably practicable, the Holder shall receive, in full satisfaction, release and settlement of the Other Secured Claim, (i) Cash in an amount equal to the Allowed amount of such Claim *less* any applicable 506(c) Charge and/or 363(j) Charge;  (ii) Reinstatement of such Allowed Other Secured Claim; (iii) property securing such Allowed Other Secured Claim, with any deficiency to result in an General Unsecured Claim;  or (iv) to the extent applicable, treatment as permitted under Bankruptcy Code section 1129(a)(9)(D);  provided, payments made pursuant to Bankruptcy Code section 1129(a)(9)(D) shall be made prior to five (5) years after the date of the order for relief under sections 301 and 302 of the Bankruptcy Code;  provided, further, that, nothing in the Plan shall limit the Trustee's ability to sell the

Townhouse and consummate the Transaction free and clear of all Liens, claims, and encumbrances pursuant to the Sale Procedures Order and/or Bankruptcy Code section 363(f); provided, further, the Holder of an Other Secured Claim shall be entitled to assert a Secured Creditor Deficiency Claim to the extent the applicable Allowed Claim exceeds the value of the Townhouse or Transaction Proceeds securing such Claim.

(f)    Impairment:  Class 7 is Unimpaired under the Plan and, therefore, the Holder in Class 7 is deemed to accept the Plan.

4.8    **Class 8:  General Unsecured Claims**.

(a)    Classification:  Class 8 consists of Holders of General Unsecured Claims.

(b)    Treatment:  Each Holder of an Allowed General Unsecured Claim, which shall include any Allowed Secured Creditor Deficiency Claims, shall neither receive nor retain any Distribution, property, or interest in property on account of such Claim;  provided, that, in the event all Administrative Claims, all Claims that are senior to Allowed General Unsecured Claims, and Valid Liens have been satisfied, Holders of Allowed General Unsecured Claims, including Allowed Secured Creditor Deficiency Claims, may receive a Distribution of any remaining Assets of the Estate, in full satisfaction, release and settlement of such General Unsecured Claims.

(c)    Impairment:  Class 8 is Impaired under the Plan and is entitled to vote on this Plan.

4.9    **Class 9:  Equity Interests**.

(a)    Classification:  Class 9 consists of Holders of Equity Interests.

(b)    Treatment:  On the Effective Date, all Equity Interests shall be canceled, released, eliminated and extinguished and be of no further force or effect, and no payments on account of Equity Interests shall be made, absent further Bankruptcy Court order.

(c)    Impairment: Class 9 is Impaired under the Plan and is deemed to reject the Plan pursuant to section 1126 of the Bankruptcy Code and is therefore not entitled to vote for or against this Plan.

4.10    Reservation of Rights Regarding Claims, Interests, and Liens.  Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtor's, the Trustee's or the Plan Administrator's rights and defenses, both legal and equitable, with respect to any Claims, interests, or Liens including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

19

# ARTICLE V
## MEANS FOR IMPLEMENTATION AND EXECUTION

5.1    <u>Plan Funding</u>.  The Plan shall be funded by (i) unrestricted Cash on hand on the Effective Date, including any Disposable Income, (ii) the Transaction Proceeds, if any, less any 506(c) Charges and/or 363(j) Charges, (iii) Avoidance Action proceeds, if any, (iv) Insurance Claims proceeds, if any, (v) Retained Causes of Action proceeds, if any, (vi) the proceeds from the liquidation of any other available Assets of the Estate, and (vii) the Contempt Payments.

(a)    <u>The Transaction</u>.  Pursuant to the Approval Order, after the Confirmation Date, but in no event later than the Effective Date, the Trustee shall consummate the Transaction contemplated by the Successful Bid in accordance with the terms of the Stalking Horse Agreement or the Back-Up Agreement, as applicable, free and clear of all Liens, claims, interests, and encumbrances asserted or recorded against the Townhouse.  As soon as reasonably practicable after the Transaction is consummated, the Transaction Proceeds will be transferred to the Post-Confirmation Fund and will be used to satisfy obligations under this Plan in accordance with the terms and conditions of this Plan, the Approval Order, and the Confirmation Order.

(b)    <u>506(c) Charges</u>.  The 506(c) Charges shall be used to fully fund, among other things, the Allowed Administrative Claims, the Allowed Professional Fee Claims, the Allowed Priority Claims, and any other amounts that are necessary to confirm the Plan.  The amount of any 506(c) Charge shall be determined either (i) pursuant to a settlement among such parties and, as applicable, the Trustee or the Plan Administrator, or (ii) by adjudication by the Bankruptcy Court; <u>provided</u>, for the avoidance of doubt, upon determination of the amount of the 506(c) Charge, if any, chargeable against a Holder of an Allowed Secured Claim, the Trustee or Plan Administrator, as applicable, may issue a Distribution to such Holder on or as reasonably practicable after the Effective Date.  Until the specific amount of any 506(c) Charges that are recoverable from any of the Holders of Secured Claims is resolved: (A) the Secured Claims shall be deemed Disputed;  (B) no Distributions shall be made to the Holder of a Secured Claim on account of such Holder's Secured Claim;  (C) no interest shall accrue on and such Disputed Claims;  and (D) the Plan Administrator and Trustee Professionals shall be entitled to seek compensation from amounts maintained in the Disputed Claim Reserve on account of the Secured Claims for fees and expenses (if any) in connection with resolving such 506(c) Charges and resolving the allowance of such Disputed Secured Claims; <u>provided</u>, to the extent the Transaction Proceeds result in a deficiency, the Trustee will not seek a 506(c) Charge on account of such deficient Secured Claim.  Nothing herein shall preclude the Plan Administrator from objecting to the Secured Claims on any other basis.  For the avoidance of doubt, no 506(c) Charge will be assessed against the Post-Petition Financing Claim and/or the Allowed Lynx Secured Claim or the Liens securing the Post-Petition Financing Claim and/or the Allowed Lynx Secured Claim.

(c)    <u>363(j) Charges</u>.  The 363(j) Charges shall be used to fully fund, among other things, the Allowed Administrative Claims, the Allowed Professional Fee Claims, the Allowed Priority Claims, and any other amounts that are necessary to confirm the Plan.  The amount of any 363(j) Charge shall be determined either

(i) pursuant to a settlement among such parties and, as applicable, the Trustee or the Plan Administrator, or (ii) by adjudication by the Bankruptcy Court; <u>provided</u>, for the avoidance of doubt, upon determination of the amount of the 363(j) Charge, if any, chargeable against a Holder of an Allowed Secured Claim and/or Valid Lien, the Trustee or Plan Administrator, as applicable, may issue a Distribution or payment to such Holder on or as reasonably practicable after the Effective Date.  Until the specific amount of any 363(j) Charges that are recoverable from any of the Holders of Valid Liens is resolved:  (A) the Secured Claims and Liens shall be deemed Disputed Claims and/or Disputed Liens, as applicable;  (B) no Distributions or payments shall be made to the Holder, as applicable, of a Secured Claims on account of such Holder's Secured Claim or Holder of a Lien on account of such Holder's Valid Lien;  (C) no interest shall accrue on and such Disputed Claims;  and (D) the Plan Administrator and Trustee Professionals shall be entitled to seek compensation from amounts maintained in the Disputed Claim Reserve on account of the  Secured Claims for fees and expenses (if any) in connection with resolving such 363(j) Charges;  <u>provided</u>, to the extent the Transaction Proceeds result in a deficiency, the Trustee will not seek a 363(j) Charge on account of such deficient Secured Claim or Valid Lien.  Nothing herein shall preclude the Plan Administrator from objecting to the Secured Claims and Liens on any other basis.  For the avoidance of doubt, no 363(j) Charge will be assessed against the Post-Petition Financing Claim and/or the Allowed Lynx Secured Claim or the Liens securing the Post-Petition Financing Claim and/or the Allowed Lynx Secured Claim.

5.2    <u>Distributions on Account of Assets</u>.  The Plan Administrator shall establish, maintain, and administer the Post-Confirmation Fund and make Distributions therefrom in accordance with the following procedures:

(i)    First, to make Distributions as necessary to satisfy Allowed Administrative Claims, Allowed Professional Fee Claims, the Allowed Priority Claims, and the Allowed Post-Petition Financing Claim (the latter of which is to be paid in full in Cash on the Transaction Closing Date as required under the Post-Petition Financing Order) as set forth in Article II of the Plan, and to retain an amount of Cash to establish the Post-Confirmation Reserve.

(ii)    Second, to make Distributions as necessary to satisfy the Allowed Claims in Classes 1-8 and the Valid Liens, pursuant to the terms of this Plan in the order of priority as set forth in the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, and to retain an amount of Cash to fund the Disputed Claim Reserve in accordance with the terms and conditions of the Plan.

5.3    <u>Tax Exemption</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to this Plan, including but not limited to a Transaction involving the Townhouse, shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (a) the Transaction;  (b) the creation of any mortgage, deed of trust, lien, pledge or

other security interest by the Trustee or Plan Administrator; (c) the making or assignment of any contract, lease or sublease; or (d) the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan or the Transaction. All such transfers, assignments and sales will not be subject to any stamp tax, or other similar tax held to be a stamp tax or other similar tax by applicable non-bankruptcy law.

5.4    <u>Closing of the Chapter 11 Case</u>. After all Disputed Claims filed against the Debtor have become Allowed Claims or have been Disallowed, and all Assets have been liquidated and converted into Cash (other than those Assets that have been or may be abandoned), and such Cash has been distributed in accordance with the Plan, or at such earlier time as the Plan Administrator deems appropriate, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

5.5    <u>Powers and Duties of the Plan Administrator Under the Plan</u>. The Trustee shall be discharged on the Effective Date, and on the Effective Date, the Confirmation Order shall approve the appointment of the Plan Administrator. The Plan Administrator shall have all the powers, authority and responsibilities necessary and appropriate to implement this Plan and the other transactions contemplated by this Plan and all contracts, instruments, releases, and other agreements or documents entered into or delivered in connection with this Plan, including without limitation the powers and authority of a trustee under sections 704 and 1106 of the Bankruptcy Code. The compensation for the Plan Administrator shall be based upon his customary hourly billing rate. The Plan Administrator will act in accordance with the terms and conditions of this Plan and shall make and effectuate all Distributions to Holders of Allowed Claims required under this Plan, shall have the exclusive right to settle or compromise any Disputed Claim and be responsible for the reserve to be established hereunder for Disputed Claims, if any. In addition to the duties and rights described above, the powers and duties of the Plan Administrators shall also include, without limitation:

(a)    making Distributions to Holders of Allowed Claims and paying taxes and other obligations owed by the Estate or incurred by the Plan Administrator in connection with winding down the Estate, subject to the terms of this Plan;

(b)    engaging or retaining, without any further order of the Bankruptcy Court, attorneys, consultants, agents, employees, and any other professional Persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

(c)    executing and delivering all documents and taking all actions necessary to consummate the Plan, the Transaction and wind up of the Estate;

(d)    coordinating the turnover of Estate property, if any;

(e)    coordinating the storage, maintenance, abandonment, and destruction of the books and records of the Estate;

(f)        overseeing compliance with the accounting, finance, and reporting obligations of the Estate;

(g)        preparing financial statements and United States Trustee post-Effective Date quarterly reports, until such time a final decree has been entered;

(h)        overseeing the filing of final tax returns of the Estate, refund requests, audits, and other corporate dissolution documents, as required;

(i)        performing any additional corporate actions as necessary to carry out the wind up and liquidation of the Estate;

(j)        paying the fees and expenses of the Case Professionals and the attorneys, consultants, agents, employees, and other professional Persons retained by the Plan Administrator and the Trustee and to pay all other expenses for winding down the affairs of the Debtor and the Estate, subject to the terms of this Plan;

(k)        disposing of, and delivering title to others of, or otherwise realizing the value of, all the remaining Assets (including, without limitation, litigation of the Retained Causes of Action, which may include prosecution, settlement, abandonment, or dismissal of any such Causes of Action, without further order of the Bankruptcy Court or consent of any other party, except as provided herein);

(l)        obtain and pay for, out of the Assets, all reasonably necessary insurance coverage for the Plan Administrator and his designees, employees, agents, representatives, or professionals;

(m)        objecting to, prosecuting, compromising, and settling Claims;

(n)        prosecuting, compromising, and settling of any Retained Causes of Action, including the Avoidance Actions or the Insurance Claims;

(o)        prosecuting, compromising, and settling Avoidance Actions;

(p)        objecting to, prosecuting, compromising, and settling the validity, priority or extent of Liens;

(q)        objecting to, prosecuting, compromising, and settling exemptions asserted by the Debtor;

(r)        asserting, prosecuting, compromising, and settling claims under Bankruptcy Code section 506(c) and 363(j);

(s)        acting on behalf of the Estate, the Trustee and the post-Effective Date Debtor in all adversary proceedings, appeals and contested matters (including, without limitation, any Causes of Action) pending on the Effective Date, if any, and to settle, retain, enforce, dispute, or adjust any Claim and otherwise pursue actions

involving the Estate's Assets that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in this Plan;

(t)    establish or release appropriate reserves for administration of the Chapter 11 Case;

(u)    implementing and/or enforcing all provisions of this Plan;  and

(v)    such other powers as may be vested in or assumed by the Plan Administrator pursuant to this Plan or other order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of this Plan.

5.6    <u>Vesting of Assets</u>.  After the Effective Date, the Debtor shall have no interest in the Assets and the Plan Administrator and all Assets, including the Retained Causes of Action, shall be managed and distributed by the Plan Administrator pursuant to the terms of the Plan and Confirmation Order, and shall be held in the name of the Plan Administrator free and clear of all Claims and interests except for rights to such Distributions provided to Holders of Allowed Claims, as provided in the Plan; <u>provided</u>, that, except as otherwise provided in this Plan and the Confirmation Order, and after all Distributions in accordance with Section 5 of this Plan have been made, Assets, if any, remaining shall vest in the Debtor pursuant to section 1141(b) of the Bankruptcy Code, in each case free and clear of all Claims, Liens and interests.

On the Effective Date, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) of the Debtor and Trustee shall vest in the Plan Administrator and his representatives (and the Plan Administrator and his representatives shall be deemed to be successors in interest with respect to such privileges), and the Debtor, Trustee, and Plan Administrator are authorized and directed to take all necessary actions to effectuate transfer of such privileges.

5.7    <u>No Liability</u>.  The Plan Administrator shall not be liable for any actions taken, or not taken, and Distributions made in accordance with this Plan and Confirmation Order.  Unless otherwise ordered by a Final Order of the Bankruptcy Court or otherwise provided in this Plan, the record date for Distributions shall be the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.  The Plan Administrator shall not be liable to the Debtor, M. Nestor, Gemeaux, the Successful Bidder, any Holder or any other Person, firm or corporation, for any error of judgment or for any mistake of law or fact or any act done, caused to be done, or omitted to be done, by the Plan Administrator or any of his agents, except for acts of willful misconduct, gross negligence or breach of fiduciary duty by itself or such agents.

5.8    <u>Payment of Case Professionals for Post-Effective Date Services and Reimbursement of Expenses</u>.  The Plan Administrator is further authorized to retain such Case Professionals that the Plan Administrator in his discretion believes are necessary to carry out the terms of this Plan, including retaining the same Case Professionals that were retained to represent the Trustee and the Estate in the Chapter 11 Case, without any further notice to or action, order, or approval of the Bankruptcy

Court.  The fact that such Case Professionals may have represented the Trustee or the Estate during the Chapter 11 Case shall not disqualify those Case Professionals from continuing to provide services to the Plan Administrator, or impact their disinterestedness, or give rise to a conflict of interest that would preclude such representation, provided, however, no Professional shall be entitled to compensation from the Plan Administrator or the Estate for services rendered to the Debtor or Trustee after the Effective Date without the express written consent of the Plan Administrator. The reasonable compensation and out-of-pocket expenses incurred after the Effective Date by Case Professionals retained by the Plan Administrator, including the Plan Administrator, for post-Effective Date services and shall be paid by the Plan Administrator within thirty (30) days after presentation of invoices for such professional services to the Plan Administrator without any further order of the Bankruptcy Court;  provided, however, that if the Plan Administrator and any Case Professional cannot agree on the amount of post-Effective Date fees and expenses to be paid to such Case Professionals, such amount shall be determined by the Bankruptcy Court.

5.9     Direction to Parties.  From and after the Effective Date, the Plan Administrator may apply to the Bankruptcy Court for an order directing any necessary party or entity to execute or deliver, or to join in the execution or delivery of, any instrument required to perform any act that is necessary for the consummation of the Plan, pursuant to section 1142(b) of the Bankruptcy Code.

5.10    Exemptions.  Any state and/or federal exemption asserted by the Debtor in Schedule C of the Schedules or otherwise is Disputed and shall be subject to further order of the Bankruptcy Court.

5.11    Insurance.  Notwithstanding any other provision of the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code and in accordance with the terms of the Plan, the Insurance Policies shall be treated as an Executory Contract to the extent applicable and permitted by law, unless any Insurance Policy was previously assumed, assumed and assigned, or rejected by the Debtor or the Trustee, as applicable, pursuant to a Bankruptcy Court order or is the subject of a motion to assume or motion to reject pending on the Effective Date.

Nothing in the Plan shall affect, impair or prejudice the rights of the insurance carriers, insureds, the Debtor, the Trustee, and the Plan Administrator, as applicable, under the Insurance Policies (including, but not limited to, with respect to the Insurance Claims and the Insurance Stipulation) in any manner, and such insurance carriers, insureds, the Debtor, the Trustee, the Plan Administrator, as applicable, shall retain all rights and defenses under such Insurance Policies, and such Insurance Policies shall apply to, and be enforceable by and against, the insureds, the Trustee, and the Plan Administrator in the same manner and according to the same terms and practices applicable to the Debtor and the Trustee, as existed prior to the Effective Date, as modified by the Insurance Stipulation.

5.12    Settlements.  To the extent the Trustee is able to reach settlements with Holders of Secured Claims and/or Liens, such settlements will be incorporated into the Plan, and a copy of such settlements will be provided in the Plan Supplement.

5.13    Closing the Transaction, and Sections 363(i), 363(j), and 1146(a).

(a)    Section 363(i).

(i)    Pursuant to the prior orders of the Bankruptcy Court, M. Nestor is estopped from asserting an ownership interest in the Townhouse.

(ii)    A holder of Section 363(i) Rights, if any, shall be deemed to have waived and relinquished all rights and interests of such holder pursuant to section 363(i) of the Bankruptcy Code, and such holder shall be forever barred from seeking to exercise or enforce any such rights or interests if the following is not submitted within one (1) business day following the Bankruptcy Court's entry of the Confirmation Order:  (A) a bid at or exceeding the purchase price provided in the Successful Bid, and (B) sufficient financial information that demonstrates, to the Trustee's satisfaction, the ability to close the Transaction on or prior to March 15, 2026;  provided, in the event that such showing is not made by a holder of Section 363(i) Rights within one (1) business day following the entry of the Confirmation Order, then the Trustee is authorized to close the Transaction pursuant to the terms of the Successful Bid, the Approval Order, and the Confirmation Order.

(b)    Section 363(j).  Distributions, if any, pursuant to Section 363(j) of the Bankruptcy Code, shall be subject to further order of the Bankruptcy Court.

(c)    Authorization to Close the Transaction.  The Trustee is authorized, but not required, to close the Transaction prior to the Effective Date.

(d)    Section 1146(a).  The Transaction is pursuant to the Plan and as a result, the provisions of section 1146(a) of the Bankruptcy Code apply to the Transaction.

(e)    Plan Implementation.  The Trustee conducted a marketing process in accordance with the Sale Procedures Order to determine the Successful Bidder and the Next Highest Bidder.  Following completion of the marketing process, the Trustee designated (i) the Stalking Horse Agreement as the Successful Bid and the Stalking Horse Bidder as the Successful Bidder and (ii) the Back-Up Agreement as the Next Highest Bid and the Back-Up Bidder as the Next Highest Bidder.  The Trustee shall seek to consummate the Transaction with the Stalking Horse Bidder.  If however, the Trustee is unable to consummate the Transaction with the Stalking Horse Bidder, the Trustee may file the Back-Up Bid Implementation Notice on the docket in the Chapter 11 Case designating the Back-Up Bidder as the Successful Bidder and seek to consummate the Transaction pursuant to such newly designated Successful Bid.  Following the filing of the Back-Up Bid Implementation Notice, the Back-Up Agreement shall be treated as the Successful Bid for all purposes under the Plan.

5.14    General Settlement of Claims and Interests.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, interests, and controversies released, settled,

26

compromised, discharged or otherwise resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of all such compromises and/or settlements under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such compromises and/or settlements are in the best interest of the Debtor, the Estate and Holders of Claims, Liens and interests and are fair, equitable and reasonable.

**ARTICLE VI**
**DISTRIBUTIONS UNDER THE PLAN**

6.1     <u>Distributions</u>.  The Trustee or Plan Administrator, as applicable, shall make all Distributions from the Post-Confirmation Fund.  Whenever any Distribution shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the day immediately succeeding a Business Day, but shall be deemed to have been made on the date due.  For federal income tax purposes, a Distribution will be allocated to the principal amount of a Claim first and then to the extent the Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest, to the extent applicable.

6.2     <u>Manner of Payment Under the Plan</u>.  Unless the Person receiving a payment agrees otherwise, any payment in Cash made by the Plan Administrator shall be made by check drawn on a domestic bank, wire transfer  or by automated clearing house transfer.

6.3     <u>Payment Dates</u>.  If any payment or act under the Plan is required to be made, or falls, on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such payment or performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed timely.

6.4     <u>*De Minimis* Distributions</u>.  The Plan Administrator  shall not be required to make any Cash payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to the Plan Administrator on or before twenty (20) days after the Effective Date.  Any de minimis distributions not subject to a timely request for payment shall be forfeited and deposited into either the Disputed Claim Reserve or the Post-Confirmation Reserve, at the discretion of the Plan Administrator.

6.5     <u>Unclaimed Distributions and Property</u>.  Except as otherwise provided herein, in the event any Holder fails to claim by a writing delivered to the Plan Administrator and negotiate any Distribution within ninety (90) days from the date of such Distribution, such claimant shall forfeit all rights thereto and to any and all future payments, and thereafter the Allowed Claim for which such Cash was distributed shall be treated as a Disallowed Claim or interest as the case may be.  Distributions to claimants entitled thereto shall be sent to their last known address set forth on the most recent proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing to, as applicable, the Trustee or the Plan Administrator;  <u>provided</u>, the Trustee will take reasonable efforts to locate Holders.  All unclaimed Cash shall be distributed or remitted in accordance with the terms and conditions of this Plan.

6.6     Distributions Free and Clear.  Except as otherwise provided herein, Distributions to Holders of Allowed Claims under the Plan shall be free and clear of any Liens, claims and encumbrances otherwise pledged against the Estate, and no other Entity shall have any interest (legal, beneficial or otherwise) in such Distribution.

## ARTICLE VII
## RESOLUTION OF DISPUTED CLAIMS

7.1     Objections.  An objection to either the allowance of a Claim or an amendment to the Schedules shall be in writing and may either be filed with the Bankruptcy Court or pursued and resolved by other means by, as applicable, the Trustee or the Plan Administrator, at any time within ninety (90) days after the Effective Date, or within such other time period as may be fixed by the Bankruptcy Court for cause, without prejudice to, as applicable, the Trustee or the Plan Administrator's right to seek an extension of such deadline.  The Plan Administrator may object to, and settle, any Claims and may settle, compromise or prosecute all Claim objections in accordance with this Plan.

7.2     Amendment of Claims.  A Claim may be amended prior to the Effective Date only as agreed upon by the Trustee and the Holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.  After the Effective Date, a Claim may be amended as agreed upon by the Holder thereof and the Plan Administrator only to decrease, but not increase, the face amount thereof.

7.3     Reserve for Disputed Claims and Disputed Liens.

(a) As soon as practicable after the Effective Date, the Plan Administrator shall establish, fund, and maintain a reserve account for Holders of Disputed Claims and Disputed Liens with Cash that would otherwise be distributable to such Holder on the Effective Date if such Disputed Claim or Disputed Lien were an Allowed Claim or Valid Lien on the Effective Date, after deduction for any 506(c) Charge and/or 363(j) Charge, or such other amount as either:  (i) the Holder of such Disputed Claim or Disputed Lien and the Plan Administrator or Trustee, as applicable, may agree upon; or (ii) as may be fixed by an order of the Bankruptcy Court;  provided, to the extent the Transaction Proceeds result in a deficiency, Holders of the applicable Secured Claim shall receive a Secured Creditor Deficiency Claim and treatment as a General Unsecured Claim;  provided, further, that to the extent the Transaction Proceeds result in a deficiency, the Trustee will not seek a 506(c) Charge and/or 363(j) Charge on account of such deficient Secured Claim or Lien.

(b) The Cash so reserved for such Holder, to the extent such Disputed Claim is Allowed or such Disputed Lien is a Valid Lien, and only after such Disputed Claim or Disputed Lien becomes a subsequently Allowed Claim or Valid Lien, as applicable, shall thereafter be distributed to such Holder.

(c) Until the specific amount of a 506(c) Charge and/or 363(j) Charge from each of the Holders of Allowed Secured Claims and/or Valid Liens is resolved:  (i) the Secured Claims and Liens shall be deemed Disputed Claims and/or Disputed Liens, as

28

applicable;  (ii) no Distributions shall be made to the Holders of Allowed Secured Claims on account of such Holder's Secured Claim and no payment shall be made to the Holders of Valid Liens on account of such Liens;  (iii) no interest shall accrue on such Secured Claim(s);  and (iv) the Plan Administrator and his professionals shall be entitled to seek compensation from amounts maintained in the Disputed Claim Reserve on account of the Secured Claims, for fees and expenses (if any) in connection with resolving the 506(c) Charge, the 363(j) Charge, and resolving the allowance of the Allowed Secured Claims;  provided, to the extent the Transaction Proceeds result in a deficiency, the Trustee will not seek a 506(c) Charge and/or 363(j) Charge on account of such deficient Secured Claim or Valid Lien.

(d) The Holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed amount of its Claim, regardless of when Distribution thereon is made to or received by such Holder.

(e) In the event there is any excess Cash held in the Disputed Claim Reserve following resolution of the Disputed Claims and Disputed Liens, such excess Cash will be distributed pursuant to the terms and conditions under the Plan.

7.4    Claim Procedures Not Exclusive.  All of the aforementioned Claims procedures are cumulative and not necessarily exclusive of one another.  On and after the Effective Date, Claims which were previously Disputed may subsequently be compromised, settled, withdrawn, or otherwise resolved by the Plan Administrator pursuant to further order of the Bankruptcy Court.

**ARTICLE VIII**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

8.1    Assumption or Rejection of Executory Contracts and Unexpired Leases. Effective on the Confirmation Date, except as expressly provided herein, all Executory Contracts and Unexpired Leases, to the extent such exist, are hereby specifically deemed rejected, except for any Executory Contract or Unexpired Lease (a) that has been specifically assumed, or assumed and assigned, by the Debtor or Trustee on or before the Confirmation Date with the approval of the Bankruptcy Court, (b) in respect of which a motion for assumption or assumption and assignment has been filed with the Bankruptcy Court on or before the Confirmation Date, or (c) that is specifically designated as a contract to be assumed on a schedule to be included as part of the Plan Supplement.

8.2    Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.  Entry of the Confirmation Order, but subject to the occurrence of the Effective Date, shall constitute (a) the approval pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code of the assumption, or assumption and assignment, of the Executory Contracts and/or Unexpired Leases assumed, or assumed and assigned, in accordance with Section 8.1 of the Plan, and (b) the approval pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code of the rejection of the Executory Contracts and/or Unexpired Leases rejected in accordance with Section 8.1 of the Plan.

8.3     <u>Bar Date for Proofs of Claim Relating to Rejected Executory Contracts and Unexpired Leases.</u>  Claims against the Debtor arising out of the rejection of Executory Contracts and/or Unexpired Leases pursuant to the Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the later of service of (a) notice of entry of an order approving the rejection of such Executory Contract and/or Unexpired Lease which Order may be the Confirmation Order, and (b) notice of occurrence of the Effective Date.  Any such Claims not filed within such time shall be forever barred from assertion against the Estate, and any and all of the Assets of the Estate.

8.4     <u>Reservation of Rights</u>.  Neither the inclusion of any Executory Contract or Unexpired Lease on the Schedules, the schedule of Executory Contracts and Unexpired Leases in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Trustee that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Estate has any liability thereunder.

**ARTICLE IX**
**EFFECT OF THE CONFIRMATION DATE,**
**<u>AND, SURRENDER AND CANCELLATION OF CLAIMS</u>**

9.1     <u>Discharge</u>.  The Debtor shall not be entitled to a discharge of any debt unless the Bankruptcy Court approves a motion of the Trustee or the Plan Administrator, as applicable, in which the Trustee certifies that (a) all Trustee expenses have been paid or reserved for, (b) the Debtor has fully complied with all of the terms and conditions of this Plan, Confirmation Order, and all orders entered in the Chapter 11 Case that require the Debtor to act or otherwise perform an obligation, (c) all Distributions required to be made under this Plan are made, including payments made to Holders of Allowed Claims, and (d) all of the Debtor's non-exempt property, including any Disposable Income, of the Estate is turned over to, as applicable, the Trustee or the Plan Administrator.  No discharge granted to the Debtor shall be inconsistent with the terms of any Order of the Bankruptcy Court determining that any debt is nondischargeable, or with the provisions of sections 1141(d)(2) or (d)(6) of the Bankruptcy Code.

Notwithstanding anything to the contrary in this Article IX, except as may otherwise be prohibited by the provisions of the Bankruptcy Code, nothing herein shall preclude a holder of an Allowed Claim, which Allowed Claim has been determined by order of the Court to be nondischargeable, from enforcing, levying, attaching or otherwise recovering, by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, from any assets or property of the Debtor which are not the Assets of the Estate, including any Disposable Income.

9.2     <u>Confirmation Date Injunction</u>.  **Effective upon the Confirmation Date, all Persons who have held, hold or may hold Claims or interests are enjoined from taking any of the following actions against or affecting the Debtor's, the Trustee's or the Plan Administrator's administration of the Plan on account of or in connection with any Claims or interests, except as otherwise set forth in the Plan and the Confirmation Order (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any):**

(a)    Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Debtor, the Trustee, the Trustee Professionals, the Plan Administrator, or the Townhouse, the Assets, on account of or in connection with any Claims or interests;

(b)    Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Townhouse, the Assets, the Trustee, or the Plan Administrator;

(c)    Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Townhouse, the Assets, the Trustee, the Plan Administrator, or the Successful Bidder;

(d)    Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against the Debtor, the Trustee, or the Plan Administrator;

(e)    Commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or interests released, settled or discharged pursuant to the Plan;

(f)    Proceeding or acting in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan, the Confirmation Order or any other Order of the Bankruptcy Code;  and

(g)    Challenging the Successful Bidder's ownership (in accordance with the Approval Order) of the Townhouse, or in any manner whatsoever interfering with the Successful Bidder's quiet enjoyment of the Townhouse.

9.3    <u>Releases by the Trustee and the Estate</u>.  **Except for the right to enforce this Plan, or as otherwise provided herein, the Estate, and the Trustee shall, effective upon occurrence of the Effective Date, be deemed to forever release, waive and discharge each Released Party of and from any and all Claims, demands, Causes of Action and the like, existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise; <u>provided</u>, <u>however</u>, such release, waiver and discharge shall not operate as a release, waiver or discharge of any Released Party in respect of any express contractual obligation of any such party effective from and after the Effective Date;  <u>provided</u>, <u>further</u>, that notwithstanding the foregoing or any other provision of the Plan, nothing in the Plan, any Plan Supplement, or any order confirming the Plan shall affect any Causes of Action, Claims, or counter-Claims that may be asserted by the Trustee in connection with an objection to a Claim that has not been Allowed, in each case as determined by the Bankruptcy Court; <u>provided</u>, <u>further</u>, that nothing herein shall prohibit the Trustee and the Trustee Professionals from enforcing their rights under the Plan;  <u>provided</u>, <u>further</u>, that such release shall not operate as a release of Claims or obligations determined by a final order to have arisen from bad faith, willful misconduct, gross negligence,**

breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts.

9.4    <u>Exculpation</u>.  **Pursuant to sections 1123(b) and 105(a) of the Bankruptcy Code, to the fullest extent permitted by applicable law, and except as otherwise specifically provided for in this Plan or Confirmation Order, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is exculpated from any Cause of Action for any claim related to, any act or omission in connection with, related to, or arising out of the Chapter 11 Case, the formulation, preparation, marketing, dissemination, negotiation, filing, or pursuit of approval, confirmation, or consummation of the Post-Petition Financing Facility, the Post-Petition Financing Documents, the Transaction, the Stalking Horse Agreement, the Back-Up Agreement, this Plan (including the Plan Supplement), the Disclosure Statement, any settlement, contract, instrument, release, or other agreement or document created or entered into in connection therewith or in the Chapter 11 Case, and any other act taken or omitted to be taken in connection with, the liquidation of the Debtor, or the administration of, or property to be distributed under, this Plan, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, gross negligence, or a criminal act; <u>provided</u>, <u>however</u>, that (i) the scope of claims subject to exculpation pursuant to this Section 9.4 is temporally limited to claims arising during the period between the commencement of the Chapter 11 Case and the Effective Date, (ii) each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel concerning its duties and responsibilities pursuant to, or in connection with, this Plan, to the extent permitted by and under applicable law, and (iii) the foregoing exculpation shall not be deemed to release, affect, or limit any of the rights and obligations of the Exculpated Parties from, or exculpate the Exculpated Parties with respect to, any of the Exculpated Parties' post-Effective Date obligations or covenants arising pursuant to this Plan, the Confirmation Order, or any contracts, instruments, releases, or other agreements or documents delivered or that survive under or in connection with this Plan.**

9.5    <u>Release of Liens</u>.  Except as otherwise provided in the Plan, the Confirmation Order, or any instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Trustee or the Plan Administrator, as applicable.

**ARTICLE X
CONDITIONS PRECEDENT TO CONFIRMATION
<u>DATE AND EFFECTIVE DATE OF THE PLAN</u>**

10.1    <u>Conditions to the Occurrence of the Confirmation Date</u>.  The following are conditions precedent to the occurrence of the Confirmation Date:

(a)      The Confirmation Order is in form and substance reasonably satisfactory to the Trustee.

(b)      The Confirmation Order shall approve the terms and conditions of the Plan.

(c)      The Confirmation Order shall approve the appointment of the Plan Administrator and authorize him to take all actions necessary or appropriate to implement the Plan and the other transactions contemplated by the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, and the Approval Order.

(d)      The Plan shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with the terms of this Plan.

(e)      All exhibits and schedules to the Plan are in form and substance reasonably satisfactory to the Trustee.

(f)      The Approval Order is in form and substance reasonably satisfactory to the Trustee.

10.2   <u>Conditions to the Occurrence of the Effective Date</u>.  The following are conditions precedent to the occurrence of the Effective Date of the Plan:

(a)      The Bankruptcy Court shall have entered the Confirmation Order, which shall grant final approval of the Plan and the exculpation contained therein;

(b)      No stay of the Confirmation Order shall then be in effect, unless the Plan shall have been substantially consummated before entry of any stay.

(d)      The Plan and the Plan Supplement, and any exhibits and schedules thereto, shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with the Plan.

(e)      The Transaction shall have been consummated and not be subject to any stay.

(f)      The Bankruptcy Court shall have entered the Approval Order.

<u>provided</u>, <u>that</u>, notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously with the other conditions precedent to the Effective Date; <u>provided</u>, <u>further</u>, that to the extent a condition precedent (a "<u>Prerequisite Condition</u>") may be required to occur prior to another condition precedent (a "<u>Subsequent Condition</u>") then, for purposes of the Plan, the Prerequisite Condition shall be deemed

to have occurred immediately prior to the Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

10.3    <u>Non-Occurrence of the Effective Date;  Non-Waiver of Conditions</u>.  In the event that:  (a) the Trustee determines that the conditions to the Effective Date set forth in Section 10.2 of this Plan cannot be satisfied;  or (b) the Effective Date has not occurred within ninety (90) days of the Confirmation Date, this Plan shall, at the Trustee's election in his sole discretion, be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by the Debtor or Trustee or Claims against the Debtor; (ii) prejudice in any manner the rights of the Debtor, the Trustee, any Holders of a Claim or interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, the Trustee, any Holders, or any other Entity in any respect.  The Trustee may propose a new plan, may modify this Plan as permitted by law, or may request other relief.

10.4    <u>Substantial Consummation</u>.  "Substantial consummation" of the Plan, as defined by section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

**ARTICLE XI**
**[RESERVED]**

[Reserved].

**ARTICLE XII**
**RETENTION OF JURISDICTION**

Pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, the Transaction, and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    Allow, Disallow, determine, subordinate, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or interest (whether filed before or after the Effective Date and whether or not contingent, Disputed, or unliquidated or for contribution, indemnification, or reimbursement), including the compromise, settlement, and resolution of any request for payment of any Claims or interests, the resolution of any objections to the allowance or priority of Claims or interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or interest to the extent permitted under applicable law;  <u>provided</u>, <u>that</u>, for the avoidance of doubt, the Bankruptcy Court's retention of jurisdiction with respect to such matters shall not preclude the Trustee or the Plan Administrator, as applicable, from seeking relief from any other court, tribunal, or other legal forum of competent jurisdiction with respect to such matters;

34

(b)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider an act upon the compromise and settlement of any Claim or interest, or Cause of Action;

(d)     determine and resolve the amount(s) and allocation(s) with respect to any claims under Bankruptcy Code sections 506(c) and 363(j);

(e)     determine and resolve exemptions asserted by the Debtor;

(f)     determine and resolve matters concerning Liens, including, without limitation, the validity, priority, and extent of Liens;

(g)     determine and resolve any matters related to (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine, and, if necessary, liquidate any Claims arising therefrom, and (ii) any dispute regarding whether a contract or lease is or was executory or unexpired;

(h)     ensure that all Distributions to Holders of Allowed Claims under the Plan and the performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

(i)     construe, take any action, and issue such orders, prior to and following the Confirmation Date and consistent with Bankruptcy Code section 1142, as may be necessary for the enforcement, implementation, execution, and consummation of the Plan and all contracts, instruments, releases, other agreements, or documents created in connection with the Plan, including, without limitation, the Approval Order and the Confirmation Order, for the maintenance of the integrity of the Plan in accordance with Bankruptcy Code sections 524 and 1141 following the occurrence of the Effective Date;

(j)     determine and resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation of the Plan or interpretation, implementation, or enforcement of the Plan (and all exhibits and schedules to the Plan) or the Confirmation Order, including the releases and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

(k)    modify this Plan or the Confirmation Order before or after the Effective Date, pursuant to Bankruptcy Code section 1127, as well as any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

(l)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation of the Plan or implementation or enforcement of the Plan or the Confirmation Order;

(m)    enter and implement such orders as are necessary or appropriate if the Approval Order or Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(n)    determine any other matters that may arise in connection with or relating to the Plan, the Approval Order, the Confirmation Order, the Transaction, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order;

(o)    determine such other matters and for such other purposes as may be provided in the Approval Order or the Confirmation Order;

(p)    hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(q)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(r)    determine and resolve controversies related to the Estate, the Debtor, the Trustee, and the Plan Administrator, from and after the Effective Date;

(s)    hear and determine any other matter relating to this Plan;  and

(t)    enter a final decree closing the Chapter 11 Case.

## ARTICLE XIII
## GENERAL AND MISCELLANEOUS PROVISIONS

13.1    <u>Modification of the Plan</u>.  The Trustee reserves the right, in accordance with section 1127(a) of the Bankruptcy Code, to amend or modify the Plan prior to the

Confirmation Date.  After the Confirmation Date, the Trustee may, upon order of the Bankruptcy Court in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile and inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.  The Trustee may withdraw or revoke the Plan prior to the Confirmation Date.  If such a withdrawal or revocation occurs, or if the Confirmation Date does not occur, the Plan will be null and void.  In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by, or against, the Debtor or Trustee or any other Person, or to prejudice in any manner the rights of the Debtor or the Trustee or any other Person in any further proceedings involving the Debtor or this Chapter 11 Case.

13.2    <u>Notices</u>.  Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid;  electronic mail; or by overnight mail or hand delivery, addressed as follows:

(1)    <u>Attorneys for the Trustee and Plan Administrator</u>
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Attn:  Brian F. Moore and Martha E. Martir
Email: bmoore@teamtogut.com;  mmartir@teamtogut.com.

The above notice parties may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt.  Any payment required under the Plan shall be deemed to have been paid on the date when such payment is received.

13.3    <u>Enforceability</u>.  Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

13.4    <u>Applicable Law</u>.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the law of the State of New York.

13.5    <u>Successors and Assigns</u>.  The rights and obligations of any Person or Entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such Person or Entity.

13.6    <u>Reservation of Rights</u>.  Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest.  In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 Case.

13.7    <u>Continuation of Bankruptcy Stays</u>.  All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan, the Approval Order, the Removal Order or the Confirmation Order), shall

remain in full force and effect until the Closing of the Chapter 11 Case.  All injunctions or stays contained in the Plan, the Approval Order, the Removal Order or the Confirmation Order shall remain in full force and effect in accordance with their terms.

13.8    <u>Prior Orders</u>.  All prior orders of the Bankruptcy Court in the Chapter 11 Case and any related adversary proceeding shall be incorporated into the Confirmation Order, including, without limitation, the Approval Order and the Removal Order, and entry of the Confirmation Order shall in no way impair or otherwise affect the ability of the Bankruptcy Court, the United States Trustee, and the United States Marshal's Service from enforcing all such prior orders.

Dated:   New York, New York
         March 9, 2026

                                    ALBERT TOGUT, not individually but solely
                                    in his capacity as Chapter 11 Trustee,
                                    By His Attorneys,
                                    TOGUT, SEGAL & SEGAL LLP
                                    By:

                                    <u>/s/ Brian F. Moore</u>
                                    BRIAN F. MOORE
                                    MARTHA E. MARTIR
                                    One Penn Plaza
                                    New York, New York 10119
                                    (212) 594-5000